ORIGINAL ●                         ●

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam  96932-5027
Tel. No. (671) 472-6813

Attorneys for Plaintiff
Americopters, LLC



**FILED**
DISTRICT COURT OF GUAM
FEB 1 8 2003
MARY L. M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| AMERICOPTERS, LLC, | ) | CIVIL CASE NO. CV**03-00005** |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| FEDERAL AVIATION ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff alleges the following:

1.      The Court has original and exclusive jurisdiction of this action pursuant to 28 U.S.C. § 1331, there being federal and constitutional law questions for this Court to resolve.

2.      Americopters, LLC is a corporation organized and existing according to law.

3.      The Federal Aviation Administration is an agency of the United States government, that pursuant to the Federal Aviation Act of 1958, as amended, regulates aircraft.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events on which the claims in this Complaint are based occurred in the Territory of Guam.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

5. On February 14, 2002, Honolulu Flight Standards District Office (FSDO) conducted pilot checkrides and an inspection of Americopters' operation at Chucks Steakhouse in Upper Tumon, Guam. Principal Operations Inspector Mr. Clarence Kanae of Honolulu FSDO conducted the checkride and the inspection.

6. At that time, Mr. Kanae verbally described what he considered to be deficiencies at the Chucks site and requested improvements to the site. Mr. Kanae did not state his concerns in writing, nor did he subsequently do so despite repeated requests by Americopters.

7. As a result, on February 18, 2002, to confirm the site improvements Mr. Kanae had requested, Americopters wrote to Mr. Kanae. See Ex. A. Mr. Kanae did not respond in any way.

8. As a result, on March 3, 2002, Americopters re-faxed the letter to Mr. Kanae. Again, Mr. Kanae did not respond in any way.

9. This annoying and unprofessional pattern of "no response" from Mr. Kanae and Honolulu FSDO continued until April 2, 2002 when, for the *fifth* time, Americopters again faxed its February 18th letter to Mr. Kanae. See handwritten notations on Ex. A. Even then, neither Mr. Kanae nor Honolulu FSDO responded in any way.

10. Nonetheless, on June 24, 2002, Mr. Kanae, without authority, legal cause, other justification or prior notice, acted outside the scope of his employment and issued an illegal cease and desist order directing Americopters to "immediately cease the use of the Chucks Steakhouse rooftop for all flight operations." See Ex. B. Mr. Kanae did not however, provide

Americopters "with notice prior to issuance" of the order, even though such notice is mandatory under 14 C.F.R. 13.20(b).

11.     Mr. Kanae's unauthorized cease and desist order had equivalent effect of an authorized and legal cease and desist order issued under 14 C.F.R. 13.20. That is to say, Americopters' office, reservations center, retail outlet and operations were shut down. This caused Americopters to lose business goodwill, revenue and profit, future business, and incur substantial expenses as a result of having to move to and conduct its flights from another location on Guam.

12.     As a result, on August 4, 2002 Americopters wrote a letter of protest to Mr. Peter Beckner, Manager, Honolulu FSDO (Mr. Kanae's boss). See Ex. C. Americopters also followed up with a phone call to Mr. Beckner, only to be told that neither Mr. Beckner nor Mr. Kanae "were available to take the call," nor could the person who did take the call comment on Americopters' August 4, 2002 letter.

13.     As a result of the events described above, especially being shut down without prior notice and the opportunity to respond, on August 13, 2002, pursuant to 14 C.F.R. 13.35, Americopters requested a hearing. Ex. D.

14.     On September 19, 2002, the Office of the Regional Counsel denied Americopters' request for a hearing on quintessential "catch 22" grounds: since Mr. Kanae had "no authority" to issue the §13.20 cease and desist order, it is "not really an order" under 14 C.F.R. 13.20, and therefore, Americopters is not entitled to the hearing provided for by 14 C.F.R. 13.35. (See Exh. E). In other words, Mr. Kanae is unauthorized cop, judge and jury and enforcer, and Americopters has no right to be heard or to a remedy.

15. On September 23, 2002, Americopters filed a formal complaint with the Federal Aviation Administration under 14 C.F.R. 13.5 for an order to rescind the cease and desist order. The complaint sought an investigation pursuant to 14 C.F.R., Subpart A, a letter of correction pursuant to Part 13.11(b)(2) to immediately rescind the unauthorized June 24, 2002 cease and desist order, assessment of civil penalties pursuant to Parts 13.15 and 13.16 according to proof, actual and consequential damages according to proof, and attorneys fees and costs.

16. To the date of this Complaint, Americopters has not received a response from the Federal Aviation Administration to its September 23, 2002 complaint.

## COUNT I: VIOLATION OF 14 C.F.R. § 13.20(b)

17. Paragraphs 1 through 16 are incorporated herein by reference.

18. The purpose of 14 C.F.R. 13.20(b) is to provide the person subject to a cease and desist order prior notice and an opportunity to respond. Section 13.20(b) states:

> Unless the *Administrator* determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order *shall be provided with notice prior to issuance.*

19. Here, the Administrator neither determined that an emergency existed nor that safety in air commerce required the immediate issuance of Mr. Kanae's order.

20. Mr. Kanae did not provide Americopters with the mandatory notice prior to issuing his cease and desist order on June 24, 2002.

21. Mr. Kanae's personal acts and omissions constitute a violation of 14 C.F.R. 13.20(b) and a violation within the meaning of 14. C.F.R. 13.1.

22.     Mr. Kanae's unauthorized cease and desist order dated June 24, 2002 constitutes a violation of 14 C.F.R. 13.20(b) and a violation within the meaning of 14. C.F.R. 13.1.

## COUNT II:  VIOLATION OF DUE PROCESS

23.     Paragraphs 1 through 22 are incorporated herein by reference.

24.     Mr. Kanae's unauthorized cease and desist order dated June 24, 2002 constitutes a violation of the due process requirement imposed by 14 C.F.R. 13.20(b) and therefore, an illegal taking of Americopters' property.

## COUNT III:  VIOLATION OF DUE PROCESS

25.     Paragraphs 1 through 24 are incorporated herein by reference.

26.     Mr. Kanae's unauthorized cease and desist order dated June 24, 2002 constitutes a violation of due process under Amendment V to the United States Constitution and therefore, an illegal taking of Americopters' property.

27.     By its complete failure to respond to Americopters' 14 C.F.R §13.5 complaint,  Defendant has violated Americopters' due process rights under Amendment V to the United States Constitution and therefore, illegally taken Americopters' property.

WHEREFORE, Americopters prays for the following relief:

1.     Judgment in favor of Americopters and against the Federal Aviation Administration, ordering rescission of the June 24, 2002 cease and desist order.

2.     Assessment of civil penalties pursuant to Parts 13.15 and 13.16 according to proof.

3.     Actual and consequential damages according to proof.

4.     Attorneys fees and costs.

5. Such other and further relief as the Court deems proper.

Dated this 18th day of February 2003.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
Americopters, LLC

# EXHIBIT "A"

*STILL NO RESPONSE REFAXED -3/7/0*   *NO RESPONSE, REFAXED 3/3/02*   *FAXED 2/18/02*



# Americopters

### *An FAA Approved Air Carrier & Air Ambulance*
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

| | | | |
|---|---|---|---|
| **To:** | Clarence K. Kanae / Principal Ops. Inspector | **From:** | Rufus Crowe |
| **Co:** | FAA | **Page:** | 1 of 1 |
| **Re:** | Chuck's Heliport | **Date:** | February 18, 2002 |

Dear Clarence:

Thank you for your assistance in getting our checkrides taken care of. I wish you had more time to spend with us and could make it out more frequently.

I would like to clarify and confirm with you all of the changes that you would like us to make to the Chuck's Heliports. As per my notes they are as follows:

### East Heliport (where the Enstrom parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Move heliport so that it hangs 4' over the lower roof towards the east, away from the West Heliport (where the 500 parks).
3. Add safety netting along the East side of the heliport and along the rear of the heliport areas that are accessible to passengers.

### West Heliport (where the 500 parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Raise the West Heliport to the same height as that of the East Heliport so as to avoid the air-conditioning ducts on the South end of the building.
3. Move heliport so that it hangs 4' over the lower roof towards the west, away from the East Heliport (where the Enstrom parks) and extend it 4' to the North towards the parking lot.
4. Add safety netting along the North and West sides of the heliport and along the rear of the heliport areas that are accessible to passengers.

*REFAXED 3/28/02 NO RESPONSE*          *REFAXED 4/2/02 NO RESPONSE*

Miscellaneous

1. Add big red balls to the wires South East of the East Heliport.
2. Add windsock to the telephone pole located to the South East of the East Heliport.
3. Add light to illuminate the windsock.
4. Add reflective material to the boundaries of both heliports.
5. Produce supporting engineering documentation for the building and heliports.

I believe that the above constitutes the changes requested by you on February 14, 2002 (happy belated Valentines day, by the way). Please let me know if you agree with all of the above and that you have no further changes or additions as we would like to have the construction completed before your next trip to Guam.

Sincerely,

Rufus Crowe

# EXHIBIT "B"



U.S. Department
of Transportation

**Federal Aviation
Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

June 24, 2002

**Certified-Return Receipt**

Micronesian Aviation Corporation
DBA Americopters
Attn: Mr. Kenneth R. Crowe
P.O. Box 9099
Tamuning, GU 96931

Dear Mr. Crowe:

This letter is to inform you that the use of the roof top as a helicopter-pad, at Chuck's Steak House, is considered unsafe, and does not meet the Federal Aviation Administration Advisory Circular 150-5390-2A Heliport Design requirements. This AC is Advisory in nature; however, this office feels that FAR 91.13 will apply to this operation if the AC is not followed. Therefore, this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations.

If you have any further questions I may be reached at (808) 837-8311.

Sincerely,

Don Hamiwn For CKK

Clarence K. Kanae
Principal Operations Inspector

**EXHIBIT** B

# EXHIBIT "C"



# Americopters

### *An FAA Approved Air Carrier & Air Ambulance*
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

August 4, 2002

Mr. Peter E. Beckner
Manager
Honolulu FSDO 13
135 Nakolo Place
Honolulu, Hawaii 96819-1850

Dear Mr. Beckner:

We have a serious predicament on our hands that could easily escalate into some very serious, far reaching, and long lasting legal and political entanglements and cause people on Guam to lose jobs, which certainly are hard enough to find already.

After a spending a month in the U. S. and a lot of money looking for assets to improve our business, I returned to Guam yesterday, August 3rd, only to find a disheartening letter from Mr. Clarence K. Kanae dated June 24, 2002, stating that "this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations." In other words, Mr. Kanae wants to shut our business down and put people out of work. For this families would ultimately suffer. For so-called justification, Mr. Kanae mistakenly believes that we are violating FAR 91.13, the old Careless or Reckless catch-all regulation. Our legal counsel, Mr. David Ledger, sees Inspector Kanae's position on this matter as wrong, his reliance on 91.13 misplaced and his decision arbitrary and capricious. I believe Clarence is well acquainted with Mr. Ledger from prior legal proceedings on Guam. Americopters has already put Mr. Ledger on stand-by to assist in continuing lawful operations.

After inspecting our heliport on february 14, 2002, Mr. Kanae recommended improvements to make aircraft operations safer. Although I did not completely agree with Mr. Kanae's safety assessment of our heliports, I did, nevertheless, agree 100% to *each* and *every* change he requested.

**EXHIBIT** C

Just four days later, on February 18, 2002, I faxed and mailed a letter to Mr. Kanae which specified and confirmed each change he requested. Unbelievably, Mr. Kanae never responded. I also made many phone calls to Inspector Kanae requesting him to provide me with *any* type of written documentation that confirmed the verbal changes he requested on February 14, 2002. Again, I have not received *any* correspondence or reply from Mr. Kanae, except, of course, for his surprising letter telling us to shut down operations and to quietly go out of business. In light of all the circumstances, Mr. Kanae's actions can not be justified by far 91.13. Indeed, any sustainable motivation for this action is highly questionable.

For example, if Honolulu FSDO would have taken just a couple minutes to give us even the shortest of e-mails to confirm Mr. Kanae's requested changes to our heliport, the changes would have been completed over five months ago! *FIVE MONTHS!* **It is not unreasonable for Americopters to request written confirmation of an inspector's verbal recommendations before spending thousands of dollars to comply.** If Mr. Kanae were truly concerned about safety, then why couldn't he write one single sentence confirming that my written interpretation of his verbal changes was accurate and acceptable?

What's more, Americopters and its legal counsel believe the Honolulu FSDO is not only exceeding it's authority in this matter, but is also attempting to manipulate the local government's aviation policies and cause Americopters and other small aviation companies undue financial and administrative burdens. As an example, I know for a fact that you yourself were trying to persuade local politicians into enacting legislation which limited "off airport" heliports - just like in Hawaii.

Americopters will aggressively and publically pursue every legal and political avenue available to us. We also will seek compensation for loss of business damages from the FAA and, to the extent possible, from each and every individual responsible for unlawful schemes to put Americopters out of business.

Under the circumstances, Americopters believes it is in everyone's best interest if Honolulu FSDO modified it's "immediate" stance on our heliport in order to allow us reasonable time to make the changes Mr. Kanae recommended. Before doing this, all we ask is simple confirmation that a project that will cost thousands of dollars will, in the end, comply with the recommendations. I look forward to your reply by letter, email or phone call.

Sincerely,

K. Rufus Crowe
Director of Operations

# EXHIBIT "D"

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÁTÑA, GUAM 96932-5027
TELEPHONE (671) 472-6813   FAX (671) 477-4375
WWW.CARLSMITH.COM

August 13, 2002

**VIA FACSIMILE [(310) 725-6816]**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
P.O. Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

> Re:   <u>Americopters, LLC; June 24, 2002 cease operations order regarding
> heli-port at Guam; Request For Hearing under 14 CFR § 13.35.</u>

Dear Regional Counsel:

We are legal counsel for Americopters, LLC, a limited liability company
operating on Guam. Americopters provides helicopters rides to tourists and operates from its
own heliport located at Chucks Steakhouse, Upper Tumon, Guam.

On June 24, 2002, Honolulu Flight Standards Office issued a cease operations
directive to Americopters, a copy of which is attached hereto as Exh. A. Pursuant to 14 CFR §
13.20(c), Americopters hereby contests the directive and, if it proves necessary, requests a
hearing on the matter.

1.     <u>Background</u>

On February 14, 2002, Honolulu FSDO conducted pilot checkrides and an
inspection of Americopters' heliport. Principal Operations Inspector Clarence Kanae verbally
noted what he considered to be deficiencies at the heliport. At the time, Mr. Kanae did not put

anything in writing, nor did he do so later despite repeated requests. As a result, on February 18, 2002, in order to confirm the heliport improvements Mr. Kanae had requested, Americopters wrote to Mr. Kanae (Exh. B). By March 3, 2002, about two weeks later, Mr. Kanae had not responded, and so Americopters re-faxed the letter. Again, Mr. Kanae did not respond. This "no response" pattern from Honolulu FSDO continued until April 2, 2002, (and continues to this day) when Americopters again faxed its February 18th letter to Mr. Kanae, for the *fifth* time (see handwritten notations on Exh. B). Even then Honolulu FSDO did not respond with even the simplest of letters either confirming the heliport improvements it had requested or not. Then, in early June 2002, Americopters' two owners and pilots went to the U.S. Mainland to look for additional aircraft to purchase (See Declarations of Jon Walker and Rufus Crowe attached hereto). Even by then, months after the initial enquiry from Americopters, Honolulu FSDO had not replied to Americopters' February 18th letter. Mr. Walker and Mr. Crowe returned to Guam July 30, 2002 and on July 31st read, for the first time, Exh. A (see Walker and Crowe Declarations).

  2.  FSDO's June 24th 2002 cease operations letter (Exh. A)

    As stated in their Declarations, Mr. Walker and Mr. Crowe returned to Guam on July 30, 2002, on July 31st found and read Exh. A and immediately referred it to legal counsel. Americopters also wrote a letter of protest to Mr. Peter Beckner, Manager, Honolulu FSDO, and on August 5th couriered and faxed the letter to Mr. Beckner (Exh. (C). Shortly thereafter, Americopters followed up with a phone call to Mr. Beckner, only to be told that neither Mr. Beckner nor Mr. Kanae were available to take the call, nor could the person who did take the call comment on Americopters August 4, 2002 letter. As of the date of this letter, Honolulu FSDO has not responded to Americopters, and Americopters' heliport remains illegally shut down.

  3.  The June 24th cease operations order violates 14 CFR § 13.20(b) and must be rescinded.

    The purpose of §13.20(b) is to provide the person subject to an order under § 13.20 prior notice and an opportunity to respond, that is to say, *due process of law*. Specifically, 13.20(b) states:

    (b)  Unless the *Administrator* determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order *shall be* provided with notice prior to issuance.

Section 13.20(b) makes prior notice non-discretionary - prior notice *shall be* provided . What's more, a finding of an emergency in air commerce which warrants a cease and desist order

without prior notice is a right reserved to the *Administrator*, not field inspectors. Here, even though the Administrator did not declare an emergency in air commerce, no prior notice of the cease and desist order was given to Americopters. In the circumstances, Americopters was denied due process of law, the June 24th cease and desist order arbitrarily and capriciously violates the law, and therefore must be rescinded.

4.    <u>Conclusion & relief requested</u>.

As explained in Americopters' February 18, 2002 letter, Americopters has always stood ready to make improvements to its heliport, without more demonstrating the purpose underlying the prior notice provision of § 13.20(b). The simple fact is that had Honolulu FSDO followed the law, we wouldn't be here.

In the same vein, before making such capital improvements to the heliport, Americopters only, and understandably, requested confirmation that once made, the requested improvements would in fact be sufficient to meet Mr. Kanae's view of what is required for safe flight operations and, more importantly, to have the heliport deemed in compliance with Federal Aviation Advisory Circular No. 150-5390-2A for heliport design. However, Honolulu FSDO disregarded due process and instead chose to arbitrarily and capriciously refuse to communicate with Americopters, shut down the heliport and ignore the consequences.

Americopters requests the following relief:

1.    Immediate recission of the illegal June 24, 2002 cease operations letter and an opportunity to respond to Honolulu FSDO's verbal request for heliport improvements.

2.    Written confirmation from Honolulu FSDO, or the appropriate authority, that once agreed upon and made, the heliport improvements will be sufficient to have the heliport deemed in compliance with Federal Aviation Advisory Circular No. 150-5390-2A for heliport design and enable Americopters to continue uninterrupted operations from the heliport.

3.    Once the required heliport improvements are identified and confirmed in writing, Americopters would have 90 days to install the improvements.

4.   In the alternative, Americopters requests a hearing on the earliest possible
     date.

                              Respectfully submitted,

                              David Ledger
                              Attorney for Americopters LLC

DPL:jmc
3144146.1.051998-00034



U.S. Department
of Transportation
**Federal Aviation
Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

June 24, 2002

**Certified-Return Receipt**

Micronesian Aviation Corporation
DBA Americopters
Attn:  Mr. Kenneth R. Crowe
P.O. Box 9099
Tamuning, GU  96931

Dear Mr. Crowe:

This letter is to inform you that the use of the roof top as a helicopter-pad, at
Chuck's Steak House, is considered unsafe, and does not meet the Federal
Aviation Administration Advisory Circular 150-5390-2A Heliport Design
requirements. This AC is Advisory in nature; however, this office feels that FAR
91.13 will apply to this operation if the AC is not followed. Therefore, this office
is requiring that your company immediately cease use of the Chuck's Steak
House rooftop for all flight operations.

If you have any further questions I may be reached at (808) 837-8311.

Sincerely,

Don Hamilton for CKK

Clarence K. Kanae
Principal Operations Inspector

**EXHIBIT A**



# Americopters

**An FAA Approved Air Carrier & Air Ambulance**
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

| | |
|---|---|
| **To:** Clarence K. Kanae / Principal Ops. Inspector | **From:** Rufus Crowe |
| **Co:** FAA | **Page:** 1 of 1 |
| **Re:** Chuck's Heliport | **Date:** February 18, 2002 |

Dear Clarence:

Thank you for your assistance in getting our checkrides taken care of. I wish you had more time to spend with us and could make it out more frequently.

I would like to clarify and confirm with you all of the changes that you would like us to make to the Chuck's Heliports. As per my notes they are as follows:

## East Heliport (where the Enstrom parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Move heliport so that it hangs 4' over the lower roof towards the east, away from the West Heliport (where the 500 parks).
3. Add safety netting along the East side of the heliport and along the rear of the heliport areas that are accessible to passengers.

## West Heliport (where the 500 parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Raise the West Heliport to the same height as that of the East Heliport so as to avoid the air-conditioning ducts on the South end of the building.
3. Move heliport so that it hangs 4' over the lower roof towards the west, away from the East Heliport (where the Enstrom parks) and extend it 4' to the North towards the parking lot.
4. Add safety netting along the North and West sides of the heliport and along the rear of the heliport areas that are accessible to passengers.

REFAXED 3/28/02
NO RESPONSE

**EXHIBIT B**

REFAXED 4/2/02
NO RESPONSE

Miscellaneous

1. Add big red balls to the wires South East of the East Heliport.
2. Add windsock to the telephone pole located to the South East of the East Heliport.
3. Add light to illuminate the windsock.
4. Add reflective material to the boundaries of both heliports.
5. Produce supporting engineering documentation for the building and heliports.

I believe that the above constitutes the changes requested by you on February 14, 2002 (happy belated Valentines day, by the way). Please let me know if you agree with all of the above and that you have no further changes or additions as we would like to have the construction completed before your next trip to Guam.

Sincerely,

Rufus Crowe

CARLSMITH BALL LLP

DAVID LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Americopters LLC


## DECLARATION OF JON D. WALKER IN SUPPORT OF REQUEST FOR EXTENSION OF TIME TO REQUEST A HEARING

I, JON D. WALKER, hereby declare the following:

1.     I am one of two owners and the Managing Partner of Americopters LLC, a

Guam, U.S.A. limited liability company which provides helicopter rides to tourists.

Americopters' office and heli-port are located at Chuck's Steakhouse, Upper Tumon, Guam.

2.     Attached as Exhibit 1 is a true and correct copy of a letter dated June 24,

2002 from FAA Inspector Clarence Kanae directing Americopters to immediately cease flight

operations.  When this letter arrived at our place of business in Guam, I was on a business trip on

the U.S. Mainland and did not return to Guam until July 30, 2002, which is when I first saw Mr.

Kanae's letter.

3.     No person other than me or my partner in Americopters, Mr. Rufus

Crowe, who was with me on the U.S. Mainland and returned to Guam on the same date as I did,

would have had authority to open, or reply to, Mr. Kanae's letter after it was delivered to our

office.

3144141.1.051998-00034

4. Americopters forwarded Mr. Kanae's letter to its legal counsel just two days after Mr. Crowe and I returned to Guam and read the letter on July 31, 2002.

5. Americopters is requesting a hearing to contest Mr. Kanae's order to cease flight operations, and requests an extension of the 30 day time limit stated in 14 CFR § 13.30(c) to submit its Request For A Hearing to the Administrator.

6. This declaration is submitted pursuant to 28 U.S.C. § 1746(2). I declare under penalty of perjury that the foregoing is true and correct.

Dated this 13th day of August, 2002.

_____
JON D. WALKER

3144141.1.051998-00034

CARLSMITH BALL LLP

DAVID LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Americopters LLC

## DECLARATION OF RUFUS CROWE IN SUPPORT OF REQUEST FOR EXTENSION OF TIME TO REQUEST A HEARING

I, RUFUS CROWE, hereby declare the following:

1.      I am one of two owners and the chief pilot of Americopters LLC, a Guam,

U.S.A. limited liability company which provides helicopter rides to tourists. Americopters'

office and heli-port are located at Chuck's Steakhouse, Upper Tumon, Guam.

2.      Attached as Exhibit 1 is a true and correct copy of a letter dated June 24,

2002 from FAA Inspector Clarence Kanae directing Americopters to immediately cease flight

operations. When this letter arrived at our place of business in Guam, I was on a business trip on

the U.S. Mainland and did not return to Guam until July 30, 2002, which is when I first saw Mr.

Kanae's letter.

3.      No person other than me or my partner in Americopters, Mr. Jon D.

Walker, who was with me on the U.S. Mainland and returned to Guam on the same date as I did,

would have had authority to open, or reply to, Mr. Kanae's letter after it was delivered to our

office.

3144144.1.051998-00034

4.    Americopters forwarded Mr. Kanae's letter to its legal counsel just two

days after Mr. Walker and I returned to Guam on and read the letter on July 31, 2002.

5.    Americopters is requesting a hearing to contest Mr. Kanae's order to cease

flight operations, and requests an extension of the 30 day time limit stated in 14 CFR § 13.30(c)

to submit its Request For A Hearing to the Administrator.

6.    This declaration is submitted pursuant to 28 U.S.C. § 1746(2). I declare

under penalty of perjury that the foregoing is true and correct.

Dated this 13th day of August, 2002.

_____
RUFUS CROW

3144144.1.051998-00034



# Americopters

### *An FAA Approved Air Carrier & Air Ambulance*
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

August 4, 2002

Mr. Peter E. Beckner
Manager
Honolulu FSDO 13
135 Nakolo Place
Honolulu, Hawaii 96819-1850

Dear Mr. Beckner:

We have a serious predicament on our hands that could easily escalate into some very serious, far reaching, and long lasting legal and political entanglements and cause people on Guam to lose jobs, which certainly are hard enough to find already.

After a spending a month in the U. S. and a lot of money looking for assets to improve our business, I returned to Guam yesterday, August 3rd, only to find a disheartening letter from Mr. Clarence K. Kanae dated June 24, 2002, stating that "this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations." In other words, Mr. Kanae wants to shut our business down and put people out of work. For this families would ultimately suffer. For so-called justification, Mr. Kanae mistakenly believes that we are violating FAR 91.13, the old Careless or Reckless catch-all regulation. Our legal counsel, Mr. David Ledger, sees Inspector Kanae's position on this matter as wrong, his reliance on 91.13 misplaced and his decision arbitrary and capricious. I believe Clarence is well acquainted with Mr. Ledger from prior legal proceedings on Guam. Americopters has already put Mr. Ledger on stand-by to assist in continuing lawful operations.

After inspecting our heliport on february 14, 2002, Mr. Kanae recommended improvements to make aircraft operations safer. Although I did not completely agree with Mr. Kanae's safety assessment of our heliports, I did, nevertheless, agree 100% to *each* and *every* change he requested.

**EXHIBIT C**
Case 1:03-cv-00005    Document 1    Filed 02/18/2003    Page 28 of 34

Just four days later, on February 18, 2002, I faxed and mailed a letter to Mr. Kanae which specified and confirmed each change he requested. Unbelievably, Mr. Kanae never responded. I also made many phone calls to Inspector Kanae requesting him to provide me with *any* type of written documentation that confirmed the verbal changes he requested on February 14, 2002. Again, I have not received *any* correspondence or reply from Mr. Kanae, except, of course, for his surprising letter telling us to shut down operations and to quietly go out of business. In light of all the circumstances, Mr. Kanae's actions can not be justified by far 91.13. Indeed, any sustainable motivation for this action is highly questionable.

For example, if Honolulu FSDO would have taken just a couple minutes to give us even the shortest of e-mails to confirm Mr. Kanae's requested changes to our heliport, the changes would have been completed over five months ago! *FIVE MONTHS!* **It is not unreasonable for Americopters to request written confirmation of an inspector's verbal recommendations before spending thousands of dollars to comply.** If Mr. Kanae were truly concerned about safety, then why couldn't he write one single sentence confirming that my written interpretation of his verbal changes was accurate and acceptable?

What's more, Americopters and its legal counsel believe the Honolulu FSDO is not only exceeding it's authority in this matter, but is also attempting to manipulate the local government's aviation policies and cause Americopters and other small aviation companies undue financial and administrative burdens. As an example, I know for a fact that you yourself were trying to persuade local politicians into enacting legislation which limited "off airport" heliports - just like in Hawaii.

Americopters will aggressively and publically pursue every legal and political avenue available to us. We also will seek compensation for loss of business damages from the FAA and, to the extent possible, from each and every individual responsible for unlawful schemes to put Americopters out of business.

Under the circumstances, Americopters believes it is in everyone's best interest if Honolulu FSDO modified it's "immediate" stance on our heliport in order to allow us reasonable time to make the changes Mr. Kanae recommended. Before doing this, all we ask is simple confirmation that a project that will cost thousands of dollars will, in the end, comply with the recommendations. I look forward to your reply by letter, email or phone call.

Sincerely,

K. Rufus Crowe
Director of Operations

CARLSMITH BALL LLP

DAVID P. LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Americopters, LLC

## CERTIFICATE OF SERVICE

I, David P. Ledger, hereby certify and state that:

1. I am a United States citizen over the age of 18 years;

2. I am an Attorney of the law firm of Carlsmith Ball LLP.

3. On the 13th day of August 2002, I caused to be served, a copy of the Request

for Hearing, via regular and certified mail to the following:

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Hearing Docket, Room 924A
Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, D.C. 20591

Federal Aviation Administration
Don M. Hamilton
Clarence Kanae
Western Pacific Region
Honolulu Flight Standards District Office
135 Nakolo Place
Honolulu, Hawaii 96819-1845

Lewis I. Ziegler
Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

DATED this _13th_ day of August 2002.

DAVID P. LEDGER

3144197.1.051998-00034

# EXHIBIT "E"



Western-Pacific Region
Office of the Regional Counsel

P. O. Box 92007
Los Angeles, CA 90009-2007

U.S. Department
of Transportation
**Federal Aviation
Administration**

**SEP 19 2002**

David P. Ledger, Esq.
CARLSMITH BALL LLP
134 West Soledad Avenue, Suite
   401
P.O. Box BF
Hagatna, Guam 96932-5027

Dear Mr. Ledger:

                    Re:   Requests For Hearings

This is a final response to your requests that the Federal
Aviation Administration (FAA) convene hearings to resolve
the matters raised in your electronic mail (e-mail) to
Lewis Ziegler on August 9, 2002, regarding the operations
of the Philippine registered Caribou owned by your client,
Jans Helicopter Service and your letters to me dated
August 13, 2002, regarding the Caribou and raising another
matter, the letter issued by the Honolulu Flight Standards
District Office to another of your clients, Americopters
LLC, directing them to cease operating from the heliport
located on the roof of Chuck's Steakhouse in Upper Tumon,
Guam.

In support of your requests for hearings in these matters,
you cite to Federal Aviation Regulation (FAR) 13.20(b).
This FAR is part of Subpart C of Part 13.  Subpart C
applies to legal enforcement actions, and FAR 13.20 sets
forth the procedures for requesting a hearing where the
FAA has issued orders of compliance, cease and desist
orders, orders of denial, and other orders.  Only the
following individuals have authority to issue such orders,
the Chief Counsel, the Deputy Chief Counsel, and each
Assistant Chief Counsel (including Regional and Center
Counsels).  See FAA Order 2150.3A, para. 1209(b).  No such
orders were issued with respect to the operations of the
Caribou by Jans Helicopter Service or with respect to
Americopters flights using the Chuck's Steakhouse
heliport.

**EXHIBIT** E

Neither Mr. Ziegler's e-mail to the Guam International
Airport Authority nor Mr. Kanae's letter to Mr. Rufus
Crowe constitutes an order as that term is contemplated by
the Part 13, Subpart C. Therefore your requests are
denied.

If you consider filing a formal complaint under FAR 13.5,
you should be aware that that section does not apply to
complaints against the Administrator or complaints against
FAA employees acting within the scope of their employment.
FAR 13.5(a).

Sincerely,

Monroe P. Balton
Regional Counsel