# ORIGINAL ●

●



FILED
DISTRICT COURT OF GUAM
JUL 1 8 2003
MARY L. M. MORAN
CLERK OF COURT

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Plaintiff
Americopters, LLC

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| AMERICOPTERS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FEDERAL AVIATION ) <br> ADMINISTRATION, ) <br> ) <br> Defendant. ) <br> ) | CIVIL CASE NO. 03-00005 <br><br> **PLAINTIFF AMERICOPTERS, LLC'S OPPOSITION TO DEFENDANT FEDERAL AVIATION ADMINISTRATION'S MOTION TO DISMISS FOR LACK OF JURISDICTION; EXHIBITS A - F ; DECLARATION OF SERVICE** |

## I.    Introduction.

Defendant Federal Aviation Administration's Motion to Dismiss misconstrues a
federal jurisdiction statute, 49 U.S.C. § 46110, to preclude the present trier of fact – the District
Court of Guam – from reviewing this case. Despite the FAA's earlier and repeated contention that
its cease flying order issued to Americopters was not an "FAA-authorized final order," the FAA now
claims that the District Court lacks jurisdiction, because only the Ninth Circuit can review FAA
orders. The FAA cannot have it both ways.   In this Opposition, Americopters demonstrates that

3154208.2.051998-00034

section 46110 does not apply and that the District Court has jurisdiction over this case because, (1) as the FAA initially contended, no final FAA agency decision or order has been issued to Americopters triggering administrative procedures for review by the Ninth Circuit, (2) no administrative record has been developed for review by the Ninth Circuit, and (3) valid due process claims have been made. The Court should deny the FAA's Motion to Dismiss on those grounds and for the reasons stated below.

## II. Factual and Procedural Background.

On February 14, 2002, the FAA's Honolulu Flight Standards District Office (FSDO) conducted pilot checkrides and an inspection of Americopters' flight operations and facility at Chucks Steakhouse in Upper Tumon, Guam. Principal Operations Inspector Mr. Clarence Kanae of the Honolulu FSDO conducted the checkride and the inspection. At that time, Mr. Kanae verbally described what he considered to be deficiencies at the Chucks site and recommended improvements to the site. Mr. Kanae did not state his recommendations in writing, nor did he subsequently do so despite repeated requests by Americopters.

As a result, on February 18, 2002, to confirm the site improvements Mr. Kanae had recommended, Americopters wrote to Mr. Kanae. See Ex. A. Mr. Kanae did not respond in any way. Americopters attempted several more times to elicit a response from Mr. Kanae, however, he failed to respond in any way. See handwritten notations on Ex. A.

Nonetheless, on June 24, 2002, Mr. Kanae, without authority, legal cause, other justification, or prior notice, acted outside the scope of his employment and issued an illegal cease and desist order directing Americopters to "immediately cease the use of the Chuck's Steak House rooftop for all flight operations." See Ex. B. Mr. Kanae did not, however, provide Americopters "with notice prior to issuance" of the order, even though 14 C.F.R. 13.20(b) mandates such notice.

Even so, with respect to Americopters' flight operations, Mr. Kanae's unauthorized cease and desist order had equivalent effect of an authorized and legal cease and desist order issued under 14 C.F.R. 13.20. That is to say, Americopters' office, reservations center, retail outlet and operations were shut down. Its cessation of operations caused Americopters to lose business, goodwill, revenue and profit, and future business, and incur substantial expenses as a result of having to move to and conduct its flights from another location on Guam. As a result, on August 4, 2002 Americopters wrote a letter of protest to Mr. Peter Beckner, Manager of Honolulu FSDO (and Mr. Kanae's boss), but received no response. See Ex. C.

As a result of the events described above, especially being shut down without prior notice and the opportunity to respond, on August 13, 2002, pursuant to 14 C.F.R. 13.35, Americopters requested a hearing under the Code of Federal Regulations. See Ex. D. On September 19, 2002, the Office of the Regional Counsel denied Americopters' request for a hearing on quintessential "catch 22" grounds: since Mr. Kanae had "no authority" to issue the § 13.20 cease and desist order, it was "not really an order" under 14 C.F.R. 13.20, and therefore, Americopters was not entitled to the hearing provided for by 14 C.F.R. 13.35. See Ex. E.

On September 23, 2002, Americopters filed a formal complaint with the Federal Aviation Administration under 14 C.F.R. 13.5 for an order to rescind Mr. Kanae's cease and desist order. See Ex. F. The complaint sought an investigation pursuant to 14 C.F.R., Subpart A, a letter of correction pursuant to Part 13.11(b)(2) to immediately rescind the unauthorized June 24, 2002 cease and desist order, assessment of civil penalties pursuant to Parts 13.15 and 13.16 according to proof, actual and consequential damages according to proof, and attorneys fees and costs.

Case 1:03-cv-00005    Document 8    Filed 07/18/2003    Page 3 of 62

Americopters never received a response from the Federal Aviation Administration to its September 23, 2002 administrative complaint.

As a result, on February 18, 2003, Americopters filed a Complaint with the District Court of Guam, alleging violations of due process and the Code of Federal Regulations. Americopters also alleged that the District Court maintained jurisdiction over this action pursuant to 28 U.S.C. § 1331, there being federal and constitutional law questions for the Court to resolve. See Compl. filed Feb. 18, 2003.

On May 30, 2003, Defendant FAA filed a Motion to Dismiss on the basis that only the Ninth Circuit Court of Appeals has jurisdiction over final agency actions and decisions. Defendant claims that the lack of jurisdiction permits dismissal under Federal Rule of Civil Procedure 12(b)(1).

### III. Standard for Motion to Dismiss.

Ordinarily, a motion to dismiss is disfavored, and doubts should be resolved in favor of the pleader. Williams v. Gorton, 529 F.2d 668 (9th Cir. 1976). Moreover, when reviewing a motion attacking jurisdiction, the district court must accept well-pleaded allegations in complaint as true and draw all reasonable inferences in the plaintiff's favor. Villasenor v. Industrial Wire & Cable, Inc., 929 F. Supp. 310 (N.D. Ill. 1996).

### IV. Jurisdiction is Proper in the District Court.

In its Motion to Dismiss, Defendant Federal Aviation Administration purports that 49 U.S.C. § 46110, under which a court of appeals maintains exclusive jurisdiction to review final decisions and actions made by the FAA, precludes the instant action in the district court. Section 46100 states that

Case 1:03-cv-00005    Document 8    Filed 07/18/2003    Page 4 of 62

a person disclosing a substantial interest in an order issued by the Secretary of Transportation (. . . or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator) under this part may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C. § 46110(a).

However, not all "orders" and administrative proceedings qualify to bypass review at the district court level and instantly become prime for review by a court of appeals. Also, contrary to the FAA's assertion, the Ninth Circuit does not always have jurisdiction for all causes of action against the FAA. See Air Calif. v. United States Dept. of Transp., 654 F.2d 616, 619 (9th Cir. 1981) (Ninth Circuit is "a court of limited jurisdiction . . . empowered to hear only those cases which fall within the scope of a statutory grant of jurisdiction."). Instead, as discussed below, first, the agency order must be final; second, there must exist a reviewable administrative record; and third, courts of appeals deny to review claims that involve broad challenges to the constitutionality of agency actions. As the agency order and action complained of fulfills none of these criteria, the Ninth Circuit does not have jurisdiction over this case pursuant to section 46110.

### A. The FAA Never Issued a Final Order.

First, the Ninth Circuit's jurisdiction to review FAA orders extends only to *final* agency orders. See Air Calif., 654 F.2d at 620. A "final" order provides a definitive statement of the agency's position, has a "direct and immediate" effect on the day-to-day business of the party asserting wrongdoing, and envisions "immediate compliance with its terms." Mace v. Skinner, 34 F.3d 854, 857 (9th Cir. 1994). "By contrast, agency action lacking finality is more in the nature of a

'threshold determination that further inquiry is warranted.'" <u>Southern Cal. Aerial Advertisers' Ass'n</u> <u>v. FAA</u>, 881 F.2d 672, 676 (9th Cir. 1989).

There has been no final order issued in this case. The June 24, 2002 order was "advisory in nature," and did not provide a definitive statement of the agency's position. <u>See</u> Ex. A. The September 19, 2002 letter denying Americopters' request for a hearing did not address any of the issues raised in the August 4, 2002 letter of protest or August 13, 2002 request for a hearing. Rather, it only based the denial on the fact that the June 24, 2002 letter was not an authorized order issued by the FAA. <u>See</u> Ex. E.

The FAA's contrasting positions during the administrative phase and in its Motion to Dismiss are perplexing. On the one hand, the FAA's September 19, 2002 letter states that Mr. Kanae's letter was not an order under which the due process requirements of the Code of Federal Regulations apply. On the other hand, the FAA's Motion states that only the Ninth Circuit has jurisdiction in this case, citing a statute conferring jurisdiction only over *final orders*. The FAA cannot deny administrative review over a non-order, and yet here argue that the order is good enough to be reviewed directly by the Ninth Circuit. In other words, the FAA cannot have it both ways.

Furthermore, contrasted with other cases, it is evident that none of the FAA's orders or letters come anywhere close to what courts consider a "final order," that merits immediate review by a court of appeals, as opposed to a district court. In <u>Board of Supervisors of Fairfax County</u>, for example, the court found the Secretary of Transportation issued a final decision because the Secretary's decision was based upon an environmental impact statement prepared by the FAA Administrator, and a public hearing was held with written submissions of interested persons made part of the public record. 410 F. Supp. 1052, 1054 (D.D.C. 1976). Here, however, the "orders"

Case 1:03-cv-00005     Document 8     Filed 07/18/2003     Page 6 of 62

issued in this particular case did not endure any similar rigor of due process. The June 24, 2002 grounding order was issued without notice. Further, later communication by the FAA denied Americopters the opportunity to present its side at an administrative hearing, on the basis that the June 24, 2002 grounding order is not really an order. The FAA has ignored further appeals made by Americopters to review the June 24, 2002 order. In sum, the FAA has used procedural tactics to evade Americopters, to which the instant Motion to Dismiss is no exception.

The FAA has never issued a final order with respect to this case. Therefore the District Court retains jurisdiction.

### B. There Exists No Administrative Record upon which the Ninth Circuit can Review.

Second, because "judicial review must be limited to a context where it may be informed," there must exist a reviewable administrative record. City of Alexandria v. Helms, 728 F.2d 643, 646 (4th Cir. 1984); Southern Cal. Aerial Advertisers Ass'n, 881 F.2d at 676. The administrative record in this case lacks an adequate basis upon which the Ninth Circuit can evaluate Americopters' claims. In fact, not only is there no final order to review, there is no reviewable administrative record to transmit to the Ninth Circuit. Instead, the record consists of the June 24, 2002 cease and desist order, and September 19, 2002 letter denying Americopters' request for a hearing. There exists no investigative data, no conclusive findings made by the FAA, no hearing transcript or recordings of testimony. Compare Board of Supervisors of Fairfax City, 410 F. Supp. at 1055 (complete administrative record based on a final decision, hearing transcript and written decision of Secretary of Transportation, and parties' representatives' presentations at a hearing before the Secretary). In this case, in no sense would the Ninth Circuit be informed of the cause of

Case 1:03-cv-00005     Document 8     Filed 07/18/2003     Page 7 of 62

the June 24, 2002 order or the constitutional effect of the order upon Americopters, as there is simply no administrative record it can examine.

### C. This Case Deals with Due Process Claims, over which the District Court has Jurisdiction.

Lastly, courts consider whether the case "broadly challenges the constitutionality of the FAA's action - in which case the district court could have jurisdiction," or, in other words, is the case "'inescapably intertwined with a review of the procedures and merits surrounding the FAA's order?'" 728 F.2d at 646. For example, in Mace v. Skinner, 34 F.3d at 856, the plaintiff brought a complaint in the district court challenging the FAA's use of an emergency order to revoke the plaintiff's mechanics certificate, as well as the constitutionality of the ensuing administrative proceedings. The Ninth Circuit held that the district court erred in dismissing the plaintiff's claims on the basis of lack of jurisdiction, as such claims constituted broad constitutional challenges, jurisdiction over which belongs at the district court level. Id. at 859. "[A]ny examination of the constitutionality of the FAA's revocation power should logically take place in the district courts, as such an examination is neither peculiarly within the agency's 'special expertise' nor an integral part of its 'institutional competence.'" Id.

Since the grounding order was first issued in this case, Americopters has continuously argued that the order was unauthorized and illegal, being issued without mandatory notice requirements under the Code of Federal Regulations and the United States Constitution. See Exs. B, C, D, F; Compl. filed Feb. 18, 2003. The Complaint asserts broad constitutional challenges to the authority of the FAA's agent to issue the order and the lack of Americopters' due process rights. Such issues do not directly pertain to the merits of the order, because, as in Mace, Americopters'

Case 1:03-cv-00005    Document 8    Filed 07/18/2003    Page 8 of 62

Complaint could "not [have been] based on the merits of any particular . . . order," since the FAA never addressed the merits of any order. Id. at 858. As the FAA never addressed the merits of these issues, and because the Complaint challenges the constitutionality of the order, jurisdiction is proper in the district court.

## V.    Conclusion.

As no final order in this case has been issued and no administrative record has been developed, and valid due process claims have been asserted, section 46110 does not apply, and the District Court retains jurisdiction over this case. The Court should deny the FAA's Motion to Dismiss.

Dated this 18th day of July 2003.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
Americopters, LLC

REFAXED -3/7/02            3/3/02            FAXED 2/18/02

# Americopters

**An FAA Approved Air Carrier & Air Ambulance**
P. O. Box 9099 – Tamuning, Guam, 96931 – Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 – Koblerville, Saipan, MP 96950 ~ Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

| | |
|---|---|
| **To:** Clarence K. Kanae / Principal Ops. Inspector | **From:** Rufus Crowe |
| **Co:** FAA | **Page:** 1 of 1 |
| **Re:** Chuck's Heliport | **Date:** February 18, 2002 |

Dear Clarence:

Thank you for your assistance in getting our checkrides taken care of. I wish you had more time to spend with us and could make it out more frequently.

I would like to clarify and confirm with you all of the changes that you would like us to make to the Chuck's Heliports. As per my notes they are as follows:

### East Heliport (where the Enstrom parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Move heliport so that it hangs 4' over the lower roof towards the east, away from the West Heliport (where the 500 parks).
3. Add safety netting along the East side of the heliport and along the rear of the heliport areas that are accessible to passengers.

### West Heliport (where the 500 parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Raise the West Heliport to the same height as that of the East Heliport so as to avoid the air-conditioning ducts on the South end of the building.
3. Move heliport so that it hangs 4' over the lower roof towards the west, away from the East Heliport (where the Enstrom parks) and extend it 4' to the North towards the parking lot.
4. Add safety netting along the North and West sides of the heliport and along the rear of the heliport areas that are accessible to passengers.

REFAXED 3/28/02
NO RESPONSE

REFAXED 4/2/02
NO RESPONSE

**EXHIBIT A**

Page 2
C. Kanae,
February 18, 2001

## Miscellaneous

1. Add big red balls to the wires South East of the East Heliport.
2. Add windsock to the telephone pole located to the South East of the East Heliport.
3. Add light to illuminate the windsock.
4. Add reflective material to the boundaries of both heliports.
5. Produce supporting engineering documentation for the building and heliports.

I believe that the above constitutes the changes requested by you on February 14, 2002 (happy belated Valentines day, by the way). Please let me know if you agree with all of the above and that you have no further changes or additions as we would like to have the construction completed before your next trip to Guam.

Sincerely,

Rufus Crowe



**U.S. Department
of Transportation**
**Federal Aviation
Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

June 24, 2002

**Certified-Return Receipt**

Micronesian Aviation Corporation
DBA Americopters
Attn: Mr. Kenneth R. Crowe
P.O. Box 9099
Tamuning, GU 96931

Dear Mr. Crowe:

This letter is to inform you that the use of the roof top as a helicopter-pad, at Chuck's Steak House, is considered unsafe, and does not meet the Federal Aviation Administration Advisory Circular 150-5390-2A Heliport Design requirements. This AC is Advisory in nature; however, this office feels that FAR 91.13 will apply to this operation if the AC is not followed. Therefore, this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations.

If you have any further questions I may be reached at (808) 837-8311.

Sincerely,

Don Hamilton For CKK

Clarence K. Kanae
Principal Operations Inspector

**EXHIBIT** B



# Americopters

### An FAA Approved Air Carrier & Air Ambulance
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

August 4, 2002

Mr. Peter E. Beckner
Manager
Honolulu FSDO 13
135 Nakolo Place
Honolulu, Hawaii 96819-1850

Dear Mr. Beckner:

We have a serious predicament on our hands that could easily escalate into some very serious, far reaching, and long lasting legal and political entanglements and cause people on Guam to lose jobs, which certainly are hard enough to find already.

After a spending a month in the U. S. and a lot of money looking for assets to improve our business, I returned to Guam yesterday, August 3rd, only to find a disheartening letter from Mr. Clarence K. Kanae dated June 24, 2002, stating that "this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations." In other words, Mr. Kanae wants to shut our business down and put people out of work. For this families would ultimately suffer. For so-called justification, Mr. Kanae mistakenly believes that we are violating FAR 91.13, the old Careless or Reckless catch-all regulation. Our legal counsel, Mr. David Ledger, sees Inspector Kanae's position on this matter as wrong, his reliance on 91.13 misplaced and his decision arbitrary and capricious. I believe Clarence is well acquainted with Mr. Ledger from prior legal proceedings on Guam. Americopters has already put Mr. Ledger on stand-by to assist in continuing lawful operations.

After inspecting our heliport on february 14, 2002, Mr. Kanae recommended improvements to make aircraft operations safer. Although I did not completely agree with Mr. Kanae's safety assessment of our heliports, I did, nevertheless, agree 100% to *each* and *every* change he requested.

**EXHIBIT C**

Just four days later, on February 18, 2002, I faxed and mailed a letter to Mr. Kanae which specified and confirmed each change he requested. Unbelievably, Mr. Kanae never responded. I also made many phone calls to Inspector Kanae requesting him to provide me with *any* type of written documentation that confirmed the verbal changes he requested on February 14, 2002. Again, I have not received *any* correspondence or reply from Mr. Kanae, except, of course, for his surprising letter telling us to shut down operations and to quietly go out of business. In light of all the circumstances, Mr. Kanae's actions can not be justified by far 91.13. Indeed, any sustainable motivation for this action is highly questionable.

For example, if Honolulu FSDO would have taken just a couple minutes to give us even the shortest of e-mails to confirm Mr. Kanae's requested changes to our heliport, the changes would have been completed over five months ago! *FIVE MONTHS!* **It is not unreasonable for Americopters to request written confirmation of an inspector's verbal recommendations before spending thousands of dollars to comply.** If Mr. Kanae were truly concerned about safety, then why couldn't he write one single sentence confirming that my written interpretation of his verbal changes was accurate and acceptable?

What's more, Americopters and its legal counsel believe the Honolulu FSDO is not only exceeding it's authority in this matter, but is also attempting to manipulate the local government's aviation policies and cause Americopters and other small aviation companies undue financial and administrative burdens. As an example, I know for a fact that you yourself were trying to persuade local politicians into enacting legislation which limited "off airport" heliports - just like in Hawaii.

Americopters will aggressively and publically pursue every legal and political avenue available to us. We also will seek compensation for loss of business damages from the FAA and, to the extent possible, from each and every individual responsible for unlawful schemes to put Americopters out of business.

Under the circumstances, Americopters believes it is in everyone's best interest if Honolulu FSDO modified it's "immediate" stance on our heliport in order to allow us reasonable time to make the changes Mr. Kanae recommended. Before doing this, all we ask is simple confirmation that a project that will cost thousands of dollars will, in the end, comply with the recommendations. I look forward to your reply by letter, email or phone call.

Sincerely,

K. Rufus Crowe
Director of Operations

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÅTÑA, GUAM 96932-5027
TELEPHONE (671) 472-6813   FAX (671) 477-4375
WWW.CARLSMITH.COM

August 13, 2002

**VIA FACSIMILE [(310) 725-6816]**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
P.O. Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Re:   Americopters, LLC; June 24, 2002 cease operations order regarding
      heli-port at Guam; Request For Hearing under 14 CFR § 13.35.

Dear Regional Counsel:

         We are legal counsel for Americopters, LLC, a limited liability company
operating on Guam.  Americopters provides helicopters rides to tourists and operates from its
own heliport located at Chucks Steakhouse, Upper Tumon, Guam.

         On June 24, 2002, Honolulu Flight Standards Office issued a cease operations
directive to Americopters, a copy of which is attached hereto as Exh. A.  Pursuant to 14 CFR §
13.20(c), Americopters hereby contests the directive and, if it proves necessary, requests a
hearing on the matter.

1.    Background

         On February 14, 2002, Honolulu FSDO conducted pilot checkrides and an
inspection of Americopters' heliport.  Principal Operations Inspector Clarence Kanae verbally
noted what he considered to be deficiencies at the heliport.  At the time, Mr. Kanae did not put

anything in writing, nor did he do so later despite repeated requests. As a result, on February 18, 2002, in order to confirm the heliport improvements Mr. Kanae had requested, Americopters wrote to Mr. Kanae (Exh. B). By March 3, 2002, about two weeks later, Mr. Kanae had not responded, and so Americopters re-faxed the letter. Again, Mr. Kanae did not respond. This "no response" pattern from Honolulu FSDO continued until April 2, 2002, (and continues to this day) when Americopters again faxed its February 18th letter to Mr. Kanae, for the *fifth* time (see handwritten notations on Exh. B). Even then Honolulu FSDO did not respond with even the simplest of letters either confirming the heliport improvements it had requested or not. Then, in early June 2002, Americopters' two owners and pilots went to the U.S. Mainland to look for additional aircraft to purchase (See Declarations of Jon Walker and Rufus Crowe attached hereto). Even by then, months after the initial enquiry from Americopters, Honolulu FSDO had not replied to Americopters' February 18th letter. Mr. Walker and Mr. Crowe returned to Guam July 30, 2002 and on July 31st read, for the first time, Exh. A (see Walker and Crowe Declarations).

2.     FSDO's June 24th 2002 cease operations letter (Exh. A)

As stated in their Declarations, Mr. Walker and Mr. Crowe returned to Guam on July 30, 2002, on July 31st found and read Exh. A and immediately referred it to legal counsel. Americopters also wrote a letter of protest to Mr. Peter Beckner, Manager, Honolulu FSDO, and on August 5th couriered and faxed the letter to Mr. Beckner (Exh. C). Shortly thereafter, Americopters followed up with a phone call to Mr. Beckner, only to be told that neither Mr. Beckner nor Mr. Kanae were available to take the call, nor could the person who did take the call comment on Americopters August 4, 2002 letter. As of the date of this letter, Honolulu FSDO has not responded to Americopters, and Americopters' heliport remains illegally shut down.

3.     The June 24th cease operations order violates 14 CFR § 13.20(b) and must be rescinded.

The purpose of §13.20(b) is to provide the person subject to an order under § 13.20 prior notice and an opportunity to respond, that is to say, *due process of law*. Specifically, 13.20(b) states:

(b)     Unless the *Administrator* determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order *shall be* provided with notice prior to issuance.

Section 13.20(b) makes prior notice non-discretionary - prior notice *shall be* provided . What's more, a finding of an emergency in air commerce which warrants a cease and desist order

without prior notice is a right reserved to the *Administrator*, not field inspectors. Here, even though the Administrator did not declare an emergency in air commerce, no prior notice of the cease and desist order was given to Americopters. In the circumstances, Americopters was denied due process of law, the June 24th cease and desist order arbitrarily and capriciously violates the law, and therefore must be rescinded.

    4.    Conclusion & relief requested.

      As explained in Americopters' February 18, 2002 letter, Americopters has always stood ready to make improvements to its heliport, without more demonstrating the purpose underlying the prior notice provision of § 13.20(b). The simple fact is that had Honolulu FSDO followed the law, we wouldn't be here.

      In the same vein, before making such capital improvements to the heliport, Americopters only, and understandably, requested confirmation that once made, the requested improvements would in fact be sufficient to meet Mr. Kanae's view of what is required for safe flight operations and, more importantly, to have the heliport deemed in compliance with Federal Aviation Advisory Circular No. 150-5390-2A for heliport design. However, Honolulu FSDO disregarded due process and instead chose to arbitrarily and capriciously refuse to communicate with Americopters, shut down the heliport and ignore the consequences.

    Americopters requests the following relief:

    1.    Immediate recission of the illegal June 24, 2002 cease operations letter and an opportunity to respond to Honolulu FSDO's verbal request for heliport improvements.

    2.    Written confirmation from Honolulu FSDO, or the appropriate authority, that once agreed upon and made, the heliport improvements will be sufficient to have the heliport deemed in compliance with Federal Aviation Advisory Circular No. 150-5390-2A for heliport design and enable Americopters to continue uninterrupted operations from the heliport.

    3.    Once the required heliport improvements are identified and confirmed in writing, Americopters would have 90 days to install the improvements.

4.     In the alternative, Americopters requests a hearing on the earliest possible
       date.

                    Respectfully submitted,

                    David Ledger
                    Attorney for Americopters LLC

DPL:jmc
3144146.1.051998-00034



U.S. Department
of Transportation
**Federal Aviation
Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

June 24, 2002

**Certified-Return Receipt**

Micronesian Aviation Corporation
DBA Americopters
Attn: Mr. Kenneth R. Crowe
P.O. Box 9099
Tamuning, GU 96931

Dear Mr. Crowe:

This letter is to inform you that the use of the roof top as a helicopter-pad, at
Chuck's Steak House, is considered unsafe, and does not meet the Federal
Aviation Administration Advisory Circular 150-5390-2A Heliport Design
requirements. This AC is Advisory in nature; however, this office feels that FAR
91.13 will apply to this operation if the AC is not followed. Therefore, this office
is requiring that your company immediately cease use of the Chuck's Steak
House rooftop for all flight operations.

If you have any further questions I may be reached at (808) 837-8311.

Sincerely,

Don Hamilton for CKK

Clarence K. Kanae
Principal Operations Inspector

**EXHIBIT A**



# Americopters

***An FAA Approved Air Carrier & Air Ambulance***
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

| | |
|---|---|
| **To:** Clarence K. Kanae / Principal Ops. Inspector | **From:** Rufus Crowe |
| **Co:** FAA | **Page:** 1 of 1 |
| **Re:** Chuck's Heliport | **Date:** February 18, 2002 |

Dear Clarence:

Thank you for your assistance in getting our checkrides taken care of. I wish you had more time to spend with us and could make it out more frequently.

I would like to clarify and confirm with you all of the changes that you would like us to make to the Chuck's Heliports. As per my notes they are as follows:

East Heliport (where the Enstrom parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Move heliport so that it hangs 4' over the lower roof towards the east, away from the West Heliport (where the 500 parks).
3. Add safety netting along the East side of the heliport and along the rear of the heliport areas that are accessible to passengers.

West Heliport (where the 500 parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Raise the West Heliport to the same height as that of the East Heliport so as to avoid the air-conditioning ducts on the South end of the building.
3. Move heliport so that it hangs 4' over the lower roof towards the west, away from the East Heliport (where the Enstrom parks) and extend it 4' to the North towards the parking lot.
4. Add safety netting along the North and West sides of the heliport and along the rear of the heliport areas that are accessible to passengers.

REFAXED 3/28/02
NO RESPONSE

**EXHIBIT B**

REFAXED 4/2/02
NO RESPONSE

Miscellaneous

1. Add big red balls to the wires South East of the East Heliport.
2. Add windsock to the telephone pole located to the South East of the East Heliport.
3. Add light to illuminate the windsock.
4. Add reflective material to the boundaries of both heliports.
5. Produce supporting engineering documentation for the building and heliports.

I believe that the above constitutes the changes requested by you on February 14, 2002 (happy belated Valentines day, by the way). Please let me know if you agree with all of the above and that you have no further changes or additions as we would like to have the construction completed before your next trip to Guam.

Sincerely,

Rufus Crowe

CARLSMITH BALL LLP

DAVID LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Americopters LLC

## DECLARATION OF JON D. WALKER IN SUPPORT OF REQUEST FOR EXTENSION OF TIME TO REQUEST A HEARING

I, JON D. WALKER, hereby declare the following:

1. I am one of two owners and the Managing Partner of Americopters LLC, a Guam, U.S.A. limited liability company which provides helicopter rides to tourists. Americopters' office and heli-port are located at Chuck's Steakhouse, Upper Tumon, Guam.

2. Attached as Exhibit 1 is a true and correct copy of a letter dated June 24, 2002 from FAA Inspector Clarence Kanae directing Americopters to immediately cease flight operations. When this letter arrived at our place of business in Guam, I was on a business trip on the U.S. Mainland and did not return to Guam until July 30, 2002, which is when I first saw Mr. Kanae's letter.

3. No person other than me or my partner in Americopters, Mr. Rufus Crowe, who was with me on the U.S. Mainland and returned to Guam on the same date as I did, would have had authority to open, or reply to, Mr. Kanae's letter after it was delivered to our office.

3144141.1.051998-00034

4.    Americopters forwarded Mr. Kanae's letter to its legal counsel just two days after Mr. Crowe and I returned to Guam and read the letter on July 31, 2002.

5.    Americopters is requesting a hearing to contest Mr. Kanae's order to cease flight operations, and requests an extension of the 30 day time limit stated in 14 CFR § 13.30(c) to submit its Request For A Hearing to the Administrator.

6.    This declaration is submitted pursuant to 28 U.S.C. § 1746(2).  I declare under penalty of perjury that the foregoing is true and correct.

Dated this 13th day of August, 2002.

_____
JON D. WALKER

3144141.1.051998-00034

CARLSMITH BALL LLP

DAVID LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Americopters LLC

## DECLARATION OF RUFUS CROWE IN SUPPORT OF REQUEST FOR EXTENSION OF TIME TO REQUEST A HEARING

I, RUFUS CROWE, hereby declare the following:

1.      I am one of two owners and the chief pilot of Americopters LLC, a Guam,

U.S.A. limited liability company which provides helicopter rides to tourists. Americopters'

office and heli-port are located at Chuck's Steakhouse, Upper Tumon, Guam.

2.      Attached as Exhibit 1 is a true and correct copy of a letter dated June 24,

2002 from FAA Inspector Clarence Kanae directing Americopters to immediately cease flight

operations. When this letter arrived at our place of business in Guam, I was on a business trip on

the U.S. Mainland and did not return to Guam until July 30, 2002, which is when I first saw Mr.

Kanae's letter.

3.      No person other than me or my partner in Americopters, Mr. Jon D.

Walker, who was with me on the U.S. Mainland and returned to Guam on the same date as I did,

would have had authority to open, or reply to, Mr. Kanae's letter after it was delivered to our

office.

3144144.1.051998-00034

4.      Americopters forwarded Mr. Kanae's letter to its legal counsel just two days after Mr. Walker and I returned to Guam on and read the letter on July 31, 2002.

5.      Americopters is requesting a hearing to contest Mr. Kanae's order to cease flight operations, and requests an extension of the 30 day time limit stated in 14 CFR § 13.30(c) to submit its Request For A Hearing to the Administrator.

6.      This declaration is submitted pursuant to 28 U.S.C. § 1746(2). I declare under penalty of perjury that the foregoing is true and correct.

Dated this 13th day of August, 2002.

RUFUS CROW



# Americopters

### An FAA Approved Air Carrier & Air Ambulance
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

August 4, 2002

Mr. Peter E. Beckner
Manager
Honolulu FSDO 13
135 Nakolo Place
Honolulu, Hawaii 96819-1850

Dear Mr. Beckner:

We have a serious predicament on our hands that could easily escalate into some very serious, far reaching, and long lasting legal and political entanglements and cause people on Guam to lose jobs, which certainly are hard enough to find already.

After a spending a month in the U. S. and a lot of money looking for assets to improve our business, I returned to Guam yesterday, August 3rd, only to find a disheartening letter from Mr. Clarence K. Kanae dated June 24, 2002, stating that "this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations." In other words, Mr. Kanae wants to shut our business down and put people out of work. For this families would ultimately suffer. For so-called justification, Mr. Kanae mistakenly believes that we are violating FAR 91.13, the old Careless or Reckless catch-all regulation. Our legal counsel, Mr. David Ledger, sees Inspector Kanae's position on this matter as wrong, his reliance on 91.13 misplaced and his decision arbitrary and capricious. I believe Clarence is well acquainted with Mr. Ledger from prior legal proceedings on Guam. Americopters has already put Mr. Ledger on stand-by to assist in continuing lawful operations.

After inspecting our heliport on february 14, 2002, Mr. Kanae recommended improvements to make aircraft operations safer. Although I did not completely agree with Mr. Kanae's safety assessment of our heliports, I did, nevertheless, agree 100% to *each* and *every* change he requested.

**EXHIBIT C**

Just four days later, on February 18, 2002, I faxed and mailed a letter to Mr. Kanae which specified and confirmed each change he requested. Unbelievably, Mr. Kanae never responded. I also made many phone calls to Inspector Kanae requesting him to provide me with *any* type of written documentation that confirmed the verbal changes he requested on February 14, 2002. Again, I have not received *any* correspondence or reply from Mr. Kanae, except, of course, for his surprising letter telling us to shut down operations and to quietly go out of business. In light of all the circumstances, Mr. Kanae's actions can not be justified by far 91.13. Indeed, any sustainable motivation for this action is highly questionable.

For example, if Honolulu FSDO would have taken just a couple minutes to give us even the shortest of e-mails to confirm Mr. Kanae's requested changes to our heliport, the changes would have been completed over five months ago! *FIVE MONTHS!* **It is not unreasonable for Americopters to request written confirmation of an inspector's verbal recommendations before spending thousands of dollars to comply.** If Mr. Kanae were truly concerned about safety, then why couldn't he write one single sentence confirming that my written interpretation of his verbal changes was accurate and acceptable?

What's more, Americopters and its legal counsel believe the Honolulu FSDO is not only exceeding it's authority in this matter, but is also attempting to manipulate the local government's aviation policies and cause Americopters and other small aviation companies undue financial and administrative burdens. As an example, I know for a fact that you yourself were trying to persuade local politicians into enacting legislation which limited "off airport" heliports - just like in Hawaii.

Americopters will aggressively and publically pursue every legal and political avenue available to us. We also will seek compensation for loss of business damages from the FAA and, to the extent possible, from each and every individual responsible for unlawful schemes to put Americopters out of business.

Under the circumstances, Americopters believes it is in everyone's best interest if Honolulu FSDO modified it's "immediate" stance on our heliport in order to allow us reasonable time to make the changes Mr. Kanae recommended. Before doing this, all we ask is simple confirmation that a project that will cost thousands of dollars will, in the end, comply with the recommendations. I look forward to your reply by letter, email or phone call.

Sincerely,

K. Rufus Crowe
Director of Operations

CARLSMITH BALL LLP

DAVID P. LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Americopters, LLC

## CERTIFICATE OF SERVICE

I, David P. Ledger, hereby certify and state that:

1.      I am a United States citizen over the age of 18 years;

2.      I am an Attorney of the law firm of Carlsmith Ball LLP.

3.      On the 13th day of August 2002, I caused to be served, a copy of the Request

for Hearing, via regular and certified mail to the following:

| | |
|---|---|
| Federal Aviation Administration<br>Western Pacific Region<br>Office of the Regional Counsel<br>Post Office Box 92007<br>Worldway Postal Center<br>Los Angeles, California 90009-2007 | Hearing Docket, Room 924A<br>Federal Aviation Administration<br>800 Independence Avenue, S.W.<br>Washington, D.C. 20591 |
| Federal Aviation Administration<br>Don M. Hamilton<br>Clarence Kanae<br>Western Pacific Region<br>Honolulu Flight Standards District Office<br>135 Nakolo Place<br>Honolulu, Hawaii 96819-1845 | Lewis I. Ziegler<br>Federal Aviation Administration<br>Western Pacific Region<br>Office of the Regional Counsel<br>Post Office Box 92007<br>Worldway Postal Center<br>Los Angeles, California 90009-2007 |

DATED this _13th_ day of August 2002.

DAVID P. LEDGER

3144197.1.051998-00034



Western-Pacific Region
Office of the Regional Counsel

P. O. Box 92007
Los Angeles, CA 90009-2007

**U.S. Department
of Transportation**

**Federal Aviation
Administration**

**SEP 19 2002**

David P. Ledger, Esq.
CARLSMITH BALL LLP
134 West Soledad Avenue, Suite
  401
P.O. Box BF
Hagatna, Guam 96932-5027

Dear Mr. Ledger:

                    Re:   Requests For Hearings

This is a final response to your requests that the Federal
Aviation Administration (FAA) convene hearings to resolve
the matters raised in your electronic mail (e-mail) to
Lewis Ziegler on August 9, 2002, regarding the operations
of the Philippine registered Caribou owned by your client,
Jans Helicopter Service and your letters to me dated
August 13, 2002, regarding the Caribou and raising another
matter, the letter issued by the Honolulu Flight Standards
District Office to another of your clients, Americopters
LLC, directing them to cease operating from the heliport
located on the roof of Chuck's Steakhouse in Upper Tumon,
Guam.

In support of your requests for hearings in these matters,
you cite to Federal Aviation Regulation (FAR) 13.20(b).
This FAR is part of Subpart C of Part 13.  Subpart C
applies to legal enforcement actions, and FAR 13.20 sets
forth the procedures for requesting a hearing where the
FAA has issued orders of compliance, cease and desist
orders, orders of denial, and other orders.  Only the
following individuals have authority to issue such orders,
the Chief Counsel, the Deputy Chief Counsel, and each
Assistant Chief Counsel (including Regional and Center
Counsels).  See FAA Order 2150.3A, para. 1209(b).  No such
orders were issued with respect to the operations of the
Caribou by Jans Helicopter Service or with respect to
Americopters flights using the Chuck's Steakhouse
heliport.

**EXHIBIT**

Neither Mr. Ziegler's e-mail to the Guam International Airport Authority nor Mr. Kanae's letter to Mr. Rufus Crowe constitutes an order as that term is contemplated by the Part 13, Subpart C. Therefore your requests are denied.

If you consider filing a formal complaint under FAR 13.5, you should be aware that that section does not apply to complaints against the Administrator or complaints against FAA employees acting within the scope of their employment. FAR 13.5(a).

Sincerely,

Monroe P. Balton
Regional Counsel



# CARLSMITH BALL LLP

### A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÅTÑA, GUAM 96932-5027
TELEPHONE (671) 472-6813   FAX (671) 477-4375
WWW.CARLSMITH.COM

September 23, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Federal Aviation Administration
Office of the Chief Counsel
Attention: Enforcement Docket (AGC-10)  800
Independence Avenue, S.W.
Washington D.C. 20591

Re:   **COMPLAINT UNDER 14 C.F.R. 13.5** FOR AN ORDER TO RESCIND
CEASE AND DESIST ORDER ISSUED TO AMERICOPTERS, LLC
ON JUNE 24, 2002

Chief Counsel:

A.   Introduction

We are legal counsel for Americopters, LLC, a limited liability company
operating on Guam. Americopters provides helicopters rides to tourists and operates from
"Chucks Steakhouse" located in Upper Tumon, Guam. Americopters rents office space from
Chucks where general business is conducted and reservations are taken. There is also a waiting
area for customers and a counter for retail souvenir sales. The aircraft takes off from and lands
on the structural concrete roof of Chucks, which while similar to a commercial building or
hospital rooftop landing area, is only a one story building. On June 24, 2002, the FAA served
Americopters with an unauthorized cease and desist order. By this complaint, Americopters
contests that order on the grounds that it constitutes a violation within the meaning of 14 C.F.R.
13.1, 14 C.F.R. 13.20, and other applicable rules, regulations and law.

HONOLULU   ·   KAPOLEI   ·   HILO   ·   KONA   ·   MAUI   ·   GUAM   ·   SAIPAN   ·   LOS ANGELES   ·   WASHINGTON, D.C.   ·   MEXICO

**EXHIBIT** F

B.     Factual allegations common to all claims for relief.

1.     On February 14, 2002, Honolulu Flight Standards District Office (FSDO) conducted pilot checkrides and an inspection of Americopters' operation at Chucks Steakhouse.  Principal Operations Inspector Mr. Clarence Kanae of Honolulu FSDO conducted the checkride and the inspection.

2.     At that time, Mr. Kanae verbally described what he considered to be deficiencies at the Chucks site.  Mr. Kanae did not state his concerns in writing, nor did he subsequently do so despite repeated requests by Americopters.

3.     As a result, on February 18, 2002, to confirm the site improvements Mr. Kanae had requested, Americopters wrote to Mr. Kanae (Exh. A).  Mr. Kanae did not respond in any way.

4.     As a result, on March 3, 2002, Americopters re-faxed the letter to Mr. Kanae.  Again, Mr. Kanae did not respond in any way.

5.     This pattern of "no response" from Mr. Kanae and Honolulu FSDO  continued until April 2, 2002, (and continues to this day) when, for the *fifth* time, Americopters again faxed its February 18th letter to Mr. Kanae. (See handwritten notations on Exh. A). Even then, Honolulu FSDO did not respond in any way.

6.     On June 24, 2002, Mr. Kanae, without authority, legal cause, other justification or prior notice, acted outside the scope of his employment and issued an illegal cease and desist order directing Americopters to "immediately cease the use of the Chucks Steakhouse rooftop for all flight operations." (See Exh. B).  Mr. Kanae did not provide Americopters "with notice prior to issuance" of the order, even though such notice is mandatory under 14 C.F.R. 13.20(b).

7.     Mr. Kanae's unauthorized cease and desist order had, and continues to have, equivalent effect of an authorized and legal cease and desist order issued under 14 C.F.R. 13.20.  That is to say, Americopters' office, reservations center, retail outlet and operations from Chucks remain shut down.

8.     As a result, on August 4, 2002 Americopters wrote a letter of protest to Mr. Peter Beckner, Manager, Honolulu FSDO (Mr. Kanae's boss). (See Exh. C). Americopters also followed up with a phone call to Mr. Beckner, only to be told that neither Mr.

Beckner nor Mr. Kanae "were available to take the call," nor could the person who did take the call comment on Americopters' August 4, 2002 letter.

9.      As a result of the events described above, especially being shut down without prior notice or any opportunity to respond, on August 13, 2002, pursuant to 14 C.F.R. 13.35, Americopters requested a hearing. (Exh. D).

10.      On September 19, 2002, the Office of the Regional Counsel denied Americopters' request for a hearing on quintessential "catch 22" grounds:  since Mr. Kanae had no authority to issue the §13.20 cease and desist order, it is "not really an order" under 14 C.F.R. 13.20, and therefore, Americopters is not entitled to the hearing provided for by 14 C.F.R. 13.35. (See Exh. E).  In other words, Mr. Kanae is unauthorized cop, judge and jury and enforcer, and Americopters has no right to be heard or to a remedy.

**Count I**        Mr. Kanae acted outside the scope of his employment and authority and is subject to a formal complaint under 14 C.F.R. 13.5.

11.      Paragraphs 1 through 10 are incorporated herein by reference.

12.      Mr. Kanae's June 24th 2002  cease and desist order has the equivalent force and effect of, and is otherwise the same in substance, as an authorized cease and desist order pursuant to 14 C.F.R 13.20.  Proof of this is simple and compelling -- Americopters is out of business at Chucks.

13.      Only the Chief Counsel, the Deputy Chief Counsel, and each Assistant Chief Counsel (including Regional and Center Counsels) are authorized to issue orders such as the one Mr. Kanae issued. (See FAA Order 2150.3A, para. 1209(b); see also Exh. E hereto, 2d para.)

14.      Part 13.5 and formal complaints issued thereunder do apply to employees of the FAA who have acted outside the scope of their employment and authority. (See Part 13.5 (a)).

15.      Since Mr. Kanae admittedly had no authority to issue his June 24th cease and desist order to Americopters, his actions were personal and outside the scope of his employment and authority and, accordingly, subject to a formal complaint under 14 C.F.R. 13.5.

**Count II**    Mr. Kanae's unauthorized order violates 14 C.F.R. § 13.20(b)

16.    Paragraphs 1 through 15 are incorporated herein by reference.

17.    The purpose of 14 C.F.R. 13.20(b) is to provide the person subject to a cease and desist order prior notice and an opportunity to respond. Section 13.20(b) states:

> Unless the *Administrator* determines that an emergency
> exists and safety in air commerce requires the immediate
> issuance of an order under this section, the person subject
> to the order *shall be provided with notice prior to issuance.*

18.    Here, the Administrator neither determined that an emergency existed nor that safety in air commerce required the immediate issuance of Mr. Kanae's order.

19.    Mr. Kanae did not provide Americopters with the mandatory notice prior to issuing his cease and desist order on June 24, 2002.

20.    Mr. Kanae's personal acts and omissions constitute a violation of 14 C.F.R. 13.20(b) and a violation within the meaning of 14. C.F.R. 13.1.

21.    Mr. Kanae's unauthorized cease and desist order dated June 24, 2002 constitutes a violation of 14 C.F.R. 13.20(b) and a violation within the meaning of 14. C.F.R. 13.1.

**Count III**    The unauthorized order violates due process.

22.    Paragraphs 1 through 21 are incorporated herein by reference

22.    Mr. Kanae's unauthorized cease and desist order dated June 24, 2002 constitutes a violation of the due process requirement imposed by 14 C.F.R. 13.20(b) and therefore, an illegal taking of Americopters' property.

C.    Relief requested.

1.    An investigation pursuant to 14 C.F.R., Subpart A.

2    A Letter of Correction pursuant to Part 13.11(b)(2) to immediately rescind the unauthorized June 24, 2002 cease and desist order.

3.    Assessment of civil penalties pursuant to Parts 13.15 and 13.16 according to proof.

4.    Actual and consequential damages according to proof.

5.    Attorney's fees and costs.

D.    Service of this Complaint

Pursuant to 14 C.F.R.13.5(d), this complaint should be served on the following person at the address shown:

Mr. Clarence Kanae
Principal Operations Inspector
Federal Aviation Administration
Honolulu Flight Standards District Office
135 Nakalo Place
Honolulu, Hawaii 96819-1845

Submitted by:

David Ledger
Attorney for Americopters LLC

DPL:jmc
3144146.1.051998-00034



# Americopters

**An FAA Approved Air Carrier & Air Ambulance**
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

| | |
|---|---|
| **To:** Clarence K. Kanae / Principal Ops. Inspector | **From:** Rufus Crowe |
| **Co:** FAA | **Page:** 1 of 1 |
| **Re:** Chuck's Heliport | **Date:** February 18, 2002 |

Dear Clarence:

Thank you for your assistance in getting our checkrides taken care of. I wish you had more time to spend with us and could make it out more frequently.

I would like to clarify and confirm with you all of the changes that you would like us to make to the Chuck's Heliports. As per my notes they are as follows:

### East Heliport (where the Enstrom parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Move heliport so that it hangs 4' over the lower roof towards the east, away from the West Heliport (where the 500 parks).
3. Add safety netting along the East side of the heliport and along the rear of the heliport areas that are accessible to passengers.

### West Heliport (where the 500 parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Raise the West Heliport to the same height as that of the East Heliport so as to avoid the air-conditioning ducts on the South end of the building.
3. Move heliport so that it hangs 4' over the lower roof towards the west, away from the East Heliport (where the Enstrom parks) and extend it 4' to the North towards the parking lot.
4. Add safety netting along the North and West sides of the heliport and along the rear of the heliport areas that are accessible to passengers.

REFAXED 3/28/02
NO RESPONSE

**EXHIBIT A**

REFAXED 4/2/02
NO RESPONSE

Miscellaneous

1. Add big red balls to the wires South East of the East Heliport.
2. Add windsock to the telephone pole located to the South East of the East Heliport.
3. Add light to illuminate the windsock.
4. Add reflective material to the boundaries of both heliports.
5. Produce supporting engineering documentation for the building and heliports.

I believe that the above constitutes the changes requested by you on February 14, 2002 (happy belated Valentines day, by the way). Please let me know if you agree with all of the above and that you have no further changes or additions as we would like to have the construction completed before your next trip to Guam.

Sincerely,

Rufus Crowe



U.S. Department
of Transportation

**Federal Aviation
Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

June 24, 2002

**Certified-Return Receipt**

Micronesian Aviation Corporation
DBA Americopters
Attn: Mr. Kenneth R. Crowe
P.O. Box 9099
Tamuning, GU 96931

Dear Mr. Crowe:

This letter is to inform you that the use of the roof top as a helicopter-pad, at Chuck's Steak House, is considered unsafe, and does not meet the Federal Aviation Administration Advisory Circular 150-5390-2A Heliport Design requirements. This AC is Advisory in nature; however, this office feels that FAR 91.13 will apply to this operation if the AC is not followed. Therefore, this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations.

If you have any further questions I may be reached at (808) 837-8311.

Sincerely,

Don Hamilin For CKt

Clarence K. Kanae
Principal Operations Inspector

**EXHIBIT B**



# Americopters

### An FAA Approved Air Carrier & Air Ambulance
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

August 4, 2002

Mr. Peter E. Beckner
Manager
Honolulu FSDO 13
135 Nakolo Place
Honolulu, Hawaii 96819-1850

Dear Mr. Beckner:

We have a serious predicament on our hands that could easily escalate into some very serious, far reaching, and long lasting legal and political entanglements and cause people on Guam to lose jobs, which certainly are hard enough to find already.

After a spending a month in the U. S. and a lot of money looking for assets to improve our business, I returned to Guam yesterday, August 3rd, only to find a disheartening letter from Mr. Clarence K. Kanae dated June 24, 2002, stating that "this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations." In other words, Mr. Kanae wants to shut our business down and put people out of work. For this families would ultimately suffer. For so-called justification, Mr. Kanae mistakenly believes that we are violating FAR 91.13, the old Careless or Reckless catch-all regulation. Our legal counsel, Mr. David Ledger, sees Inspector Kanae's position on this matter as wrong, his reliance on 91.13 misplaced and his decision arbitrary and capricious. I believe Clarence is well acquainted with Mr. Ledger from prior legal proceedings on Guam. Americopters has already put Mr. Ledger on stand-by to assist in continuing lawful operations.

After inspecting our heliport on february 14, 2002, Mr. Kanae recommended improvements to make aircraft operations safer. Although I did not completely agree with Mr. Kanae's safety assessment of our heliports, I did, nevertheless, agree 100% to *each* and *every* change he requested.

# EXHIBIT C

Just four days later, on February 18, 2002, I faxed and mailed a letter to Mr. Kanae which specified and confirmed each change he requested. Unbelievably, Mr. Kanae never responded. I also made many phone calls to Inspector Kanae requesting him to provide me with *any* type of written documentation that confirmed the verbal changes he requested on February 14, 2002. Again, I have not received *any* correspondence or reply from Mr. Kanae, except, of course, for his surprising letter telling us to shut down operations and to quietly go out of business. In light of all the circumstances, Mr. Kanae's actions can not be justified by far 91.13. Indeed, any sustainable motivation for this action is highly questionable.

For example, if Honolulu FSDO would have taken just a couple minutes to give us even the shortest of e-mails to confirm Mr. Kanae's requested changes to our heliport, the changes would have been completed over five months ago! *FIVE MONTHS!* **It is not unreasonable for Americopters to request written confirmation of an inspector's verbal recommendations before spending thousands of dollars to comply.** If Mr. Kanae were truly concerned about safety, then why couldn't he write one single sentence confirming that my written interpretation of his verbal changes was accurate and acceptable?

What's more, Americopters and its legal counsel believe the Honolulu FSDO is not only exceeding it's authority in this matter, but is also attempting to manipulate the local government's aviation policies and cause Americopters and other small aviation companies undue financial and administrative burdens. As an example, I know for a fact that you yourself were trying to persuade local politicians into enacting legislation which limited "off airport" heliports - just like in Hawaii.

Americopters will aggressively and publically pursue every legal and political avenue available to us. We also will seek compensation for loss of business damages from the FAA and, to the extent possible, from each and every individual responsible for unlawful schemes to put Americopters out of business.

Under the circumstances, Americopters believes it is in everyone's best interest if Honolulu FSDO modified it's "immediate" stance on our heliport in order to allow us reasonable time to make the changes Mr. Kanae recommended. Before doing this, all we ask is simple confirmation that a project that will cost thousands of dollars will, in the end, comply with the recommendations. I look forward to your reply by letter, email or phone call.

Sincerely,

K. Rufus Crowe
Director of Operations

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÁTÑA, GUAM 96932-5027
TELEPHONE (671) 472-6813   FAX (671) 477-4375
WWW.CARLSMITH.COM

August 13, 2002

**VIA FACSIMILE [(310) 725-6816]**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
P.O. Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Re:   Americopters, LLC; June 24, 2002 cease operations order regarding
         heli-port at Guam; Request For Hearing under 14 CFR § 13.35.

Dear Regional Counsel:

We are legal counsel for Americopters, LLC, a limited liability company operating on Guam. Americopters provides helicopters rides to tourists and operates from its own heliport located at Chucks Steakhouse, Upper Tumon, Guam.

On June 24, 2002, Honolulu Flight Standards Office issued a cease operations directive to Americopters, a copy of which is attached hereto as Exh. A. Pursuant to 14 CFR § 13.20(c), Americopters hereby contests the directive and, if it proves necessary, requests a hearing on the matter.

1.     Background

On February 14, 2002, Honolulu FSDO conducted pilot checkrides and an inspection of Americopters' heliport. Principal Operations Inspector Clarence Kanae verbally noted what he considered to be deficiencies at the heliport. At the time, Mr. Kanae did not put

HONOLULU · KAPOLEI · HILO · KONA · MAUI · GUAM · SAIPAN · LOS ANGELES · WASHINGTON, D.C. · MEXICO

**EXHIBIT D**   *Also Sent Via Regular Mail. † 08/13/0.



anything in writing, nor did he do so later despite repeated requests. As a result, on February 18, 2002, in order to confirm the heliport improvements Mr. Kanae had requested, Americopters wrote to Mr. Kanae (Exh. B). By March 3, 2002, about two weeks later, Mr. Kanae had not responded, and so Americopters re-faxed the letter. Again, Mr. Kanae did not respond. This "no response" pattern from Honolulu FSDO continued until April 2, 2002, (and continues to this day) when Americopters again faxed its February 18th letter to Mr. Kanae, for the *fifth* time (see handwritten notations on Exh. B). Even then Honolulu FSDO did not respond with even the simplest of letters either confirming the heliport improvements it had requested or not. Then, in early June 2002, Americopters' two owners and pilots went to the U.S. Mainland to look for additional aircraft to purchase (See Declarations of Jon Walker and Rufus Crowe attached hereto). Even by then, months after the initial enquiry from Americopters, Honolulu FSDO had not replied to Americopters' February 18th letter. Mr. Walker and Mr. Crowe returned to Guam July 30, 2002 and on July 31st read, for the first time, Exh. A (see Walker and Crowe Declarations).

2.     <u>FSDO's June 24th 2002 cease operations letter (Exh. A)</u>

As stated in their Declarations, Mr. Walker and Mr. Crowe returned to Guam on July 30, 2002, on July 31st found and read Exh. A and immediately referred it to legal counsel. Americopters also wrote a letter of protest to Mr. Peter Beckner, Manager, Honolulu FSDO, and on August 5th couriered and faxed the letter to Mr. Beckner (Exh. (C). Shortly thereafter, Americopters followed up with a phone call to Mr. Beckner, only to be told that neither Mr. Beckner nor Mr. Kanae were available to take the call, nor could the person who did take the call comment on Americopters August 4, 2002 letter. As of the date of this letter, Honolulu FSDO has not responded to Americopters, and Americopters' heliport remains illegally shut down.

3.     <u>The June 24th cease operations order violates 14 CFR § 13.20(b) and must be rescinded.</u>

The purpose of §13.20(b) is to provide the person subject to an order under § 13.20 prior notice and an opportunity to respond, that is to say, *due process of law*. Specifically, 13.20(b) states:

(b)     Unless the *Administrator* determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order *shall be* provided with notice prior to issuance.

Section 13.20(b) makes prior notice non-discretionary - prior notice *shall be* provided . What's more, a finding of an emergency in air commerce which warrants a cease and desist order

without prior notice is a right reserved to the *Administrator*, not field inspectors. Here, even though the Administrator did not declare an emergency in air commerce, no prior notice of the cease and desist order was given to Americopters. In the circumstances, Americopters was denied due process of law, the June 24th cease and desist order arbitrarily and capriciously violates the law, and therefore must be rescinded.

    4.    <u>Conclusion & relief requested</u>.

    As explained in Americopters' February 18, 2002 letter, Americopters has always stood ready to make improvements to its heliport, without more demonstrating the purpose underlying the prior notice provision of § 13.20(b). The simple fact is that had Honolulu FSDO followed the law, we wouldn't be here.

    In the same vein, before making such capital improvements to the heliport, Americopters only, and understandably, requested confirmation that once made, the requested improvements would in fact be sufficient to meet Mr. Kanae's view of what is required for safe flight operations and, more importantly, to have the heliport deemed in compliance with Federal Aviation Advisory Circular No. 150-5390-2A for heliport design. However, Honolulu FSDO disregarded due process and instead chose to arbitrarily and capriciously refuse to communicate with Americopters, shut down the heliport and ignore the consequences.

    Americopters requests the following relief:

    1.    Immediate recission of the illegal June 24, 2002 cease operations letter and an opportunity to respond to Honolulu FSDO's verbal request for heliport improvements.

    2.    Written confirmation from Honolulu FSDO, or the appropriate authority, that once agreed upon and made, the heliport improvements will be sufficient to have the heliport deemed in compliance with Federal Aviation Advisory Circular No. 150-5390-2A for heliport design and enable Americopters to continue uninterrupted operations from the heliport.

    3.    Once the required heliport improvements are identified and confirmed in writing, Americopters would have 90 days to install the improvements.

4.    In the alternative, Americopters requests a hearing on the earliest possible
       date.

                    Respectfully submitted,

                    David Ledger
                    Attorney for Americopters LLC

DPL:jmc
3144146.1.051998-00034



U.S. Department
of Transportation
**Federal Aviation
Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

June 24, 2002

**Certified-Return Receipt**

Micronesian Aviation Corporation
DBA Americopters
Attn: Mr. Kenneth R. Crowe
P.O. Box 9099
Tamuning, GU 96931

Dear Mr. Crowe:

This letter is to inform you that the use of the roof top as a helicopter-pad, at Chuck's Steak House, is considered unsafe, and does not meet the Federal Aviation Administration Advisory Circular 150-5390-2A Heliport Design requirements. This AC is Advisory in nature; however, this office feels that FAR 91.13 will apply to this operation if the AC is not followed. Therefore, this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations.

If you have any further questions I may be reached at (808) 837-8311.

Sincerely,

Don Hamian For CKK

Clarence K. Kanae
Principal Operations Inspector

## EXHIBIT A



# Americopters

**An FAA Approved Air Carrier & Air Ambulance**
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

| | |
|---|---|
| **To:** Clarence K. Kanae / Principal Ops. Inspector | **From:** Rufus Crowe |
| **Co:** FAA | **Page:** 1 of 1 |
| **Re:** Chuck's Heliport | **Date:** February 18, 2002 |

Dear Clarence:

Thank you for your assistance in getting our checkrides taken care of. I wish you had more time to spend with us and could make it out more frequently.

I would like to clarify and confirm with you all of the changes that you would like us to make to the Chuck's Heliports. As per my notes they are as follows:

### East Heliport (where the Enstrom parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Move heliport so that it hangs 4' over the lower roof towards the east, away from the West Heliport (where the 500 parks).
3. Add safety netting along the East side of the heliport and along the rear of the heliport areas that are accessible to passengers.

### West Heliport (where the 500 parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Raise the West Heliport to the same height as that of the East Heliport so as to avoid the air-conditioning ducts on the South end of the building.
3. Move heliport so that it hangs 4' over the lower roof towards the west, away from the East Heliport (where the Enstrom parks) and extend it 4' to the North towards the parking lot.
4. Add safety netting along the North and West sides of the heliport and along the rear of the heliport areas that are accessible to passengers.

REFAXED 3/28/02
NO RESPONSE

**EXHIBIT B**

REFAXED 4/2/02
NO RESPONSE

Miscellaneous

1. Add big red balls to the wires South East of the East Heliport.
2. Add windsock to the telephone pole located to the South East of the East Heliport.
3. Add light to illuminate the windsock.
4. Add reflective material to the boundaries of both heliports.
5. Produce supporting engineering documentation for the building and heliports.

I believe that the above constitutes the changes requested by you on February 14, 2002 (happy belated Valentines day, by the way). Please let me know if you agree with all of the above and that you have no further changes or additions as we would like to have the construction completed before your next trip to Guam.

Sincerely,

Rufus Crowe

CARLSMITH BALL LLP

DAVID LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Americopters LLC

## DECLARATION OF JON D. WALKER IN SUPPORT OF REQUEST FOR EXTENSION OF TIME TO REQUEST A HEARING

I, JON D. WALKER, hereby declare the following:

1.      I am one of two owners and the Managing Partner of Americopters LLC, a Guam, U.S.A. limited liability company which provides helicopter rides to tourists. Americopters' office and heli-port are located at Chuck's Steakhouse, Upper Tumon, Guam.

2.      Attached as Exhibit 1 is a true and correct copy of a letter dated June 24, 2002 from FAA Inspector Clarence Kanae directing Americopters to immediately cease flight operations. When this letter arrived at our place of business in Guam, I was on a business trip on the U.S. Mainland and did not return to Guam until July 30, 2002, which is when I first saw Mr. Kanae's letter.

3.      No person other than me or my partner in Americopters, Mr. Rufus Crowe, who was with me on the U.S. Mainland and returned to Guam on the same date as I did, would have had authority to open, or reply to, Mr. Kanae's letter after it was delivered to our office.

3144141.1.051998-00034

4.   Americopters forwarded Mr. Kanae's letter to its legal counsel just two days after Mr. Crowe and I returned to Guam and read the letter on July 31, 2002.

5.   Americopters is requesting a hearing to contest Mr. Kanae's order to cease flight operations, and requests an extension of the 30 day time limit stated in 14 CFR § 13.30(c) to submit its Request For A Hearing to the Administrator.

6.   This declaration is submitted pursuant to 28 U.S.C. § 1746(2). I declare under penalty of perjury that the foregoing is true and correct.

Dated this 13th day of August, 2002.

_____
JON D. WALKER

CARLSMITH BALL LLP

DAVID LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Americopters LLC

## DECLARATION OF RUFUS CROWE IN SUPPORT OF REQUEST FOR EXTENSION OF TIME TO REQUEST A HEARING

I, RUFUS CROWE, hereby declare the following:

1.      I am one of two owners and the chief pilot of Americopters LLC, a Guam, U.S.A. limited liability company which provides helicopter rides to tourists. Americopters' office and heli-port are located at Chuck's Steakhouse, Upper Tumon, Guam.

2.      Attached as Exhibit 1 is a true and correct copy of a letter dated June 24, 2002 from FAA Inspector Clarence Kanae directing Americopters to immediately cease flight operations. When this letter arrived at our place of business in Guam, I was on a business trip on the U.S. Mainland and did not return to Guam until July 30, 2002, which is when I first saw Mr. Kanae's letter.

3.      No person other than me or my partner in Americopters, Mr. Jon D. Walker, who was with me on the U.S. Mainland and returned to Guam on the same date as I did, would have had authority to open, or reply to, Mr. Kanae's letter after it was delivered to our office.

3144144.1.051998-00034

4.      Americopters forwarded Mr. Kanae's letter to its legal counsel just two days after Mr. Walker and I returned to Guam on and read the letter on July 31, 2002.

5.      Americopters is requesting a hearing to contest Mr. Kanae's order to cease flight operations, and requests an extension of the 30 day time limit stated in 14 CFR § 13.30(c) to submit its Request For A Hearing to the Administrator.

6.      This declaration is submitted pursuant to 28 U.S.C. § 1746(2).  I declare under penalty of perjury that the foregoing is true and correct.

Dated this 13th day of August, 2002.

RUFUS CROW

3144144.1.051998-00034



# Americopters

**An FAA Approved Air Carrier & Air Ambulance**
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

August 4, 2002

Mr. Peter E. Beckner
Manager
Honolulu FSDO 13
135 Nakolo Place
Honolulu, Hawaii 96819-1850

Dear Mr. Beckner:

We have a serious predicament on our hands that could easily escalate into some very serious, far reaching, and long lasting legal and political entanglements and cause people on Guam to lose jobs, which certainly are hard enough to find already.

After a spending a month in the U. S. and a lot of money looking for assets to improve our business, I returned to Guam yesterday, August 3rd, only to find a disheartening letter from Mr. Clarence K. Kanae dated June 24, 2002, stating that "this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations." In other words, Mr. Kanae wants to shut our business down and put people out of work. For this families would ultimately suffer. For so-called justification, Mr. Kanae mistakenly believes that we are violating FAR 91.13, the old Careless or Reckless catch-all regulation. Our legal counsel, Mr. David Ledger, sees Inspector Kanae's position on this matter as wrong, his reliance on 91.13 misplaced and his decision arbitrary and capricious. I believe Clarence is well acquainted with Mr. Ledger from prior legal proceedings on Guam. Americopters has already put Mr. Ledger on stand-by to assist in continuing lawful operations.

After inspecting our heliport on february 14, 2002, Mr. Kanae recommended improvements to make aircraft operations safer. Although I did not completely agree with Mr. Kanae's safety assessment of our heliports, I did, nevertheless, agree 100% to *each* and *every* change he requested.

## EXHIBIT C

Just four days later, on February 18, 2002, I faxed and mailed a letter to Mr. Kanae which specified and confirmed each change he requested. Unbelievably, Mr. Kanae never responded. I also made many phone calls to Inspector Kanae requesting him to provide me with *any* type of written documentation that confirmed the verbal changes he requested on February 14, 2002. Again, I have not received *any* correspondence or reply from Mr. Kanae, except, of course, for his surprising letter telling us to shut down operations and to quietly go out of business. In light of all the circumstances, Mr. Kanae's actions can not be justified by far 91.13. Indeed, any sustainable motivation for this action is highly questionable.

For example, if Honolulu FSDO would have taken just a couple minutes to give us even the shortest of e-mails to confirm Mr. Kanae's requested changes to our heliport, the changes would have been completed over five months ago! *FIVE MONTHS!* **It is not unreasonable for Americopters to request written confirmation of an inspector's verbal recommendations before spending thousands of dollars to comply.** If Mr. Kanae were truly concerned about safety, then why couldn't he write one single sentence confirming that my written interpretation of his verbal changes was accurate and acceptable?

What's more, Americopters and its legal counsel believe the Honolulu FSDO is not only exceeding it's authority in this matter, but is also attempting to manipulate the local government's aviation policies and cause Americopters and other small aviation companies undue financial and administrative burdens. As an example, I know for a fact that you yourself were trying to persuade local politicians into enacting legislation which limited "off airport" heliports - just like in Hawaii.

Americopters will aggressively and publically pursue every legal and political avenue available to us. We also will seek compensation for loss of business damages from the FAA and, to the extent possible, from each and every individual responsible for unlawful schemes to put Americopters out of business.

Under the circumstances, Americopters believes it is in everyone's best interest if Honolulu FSDO modified it's "immediate" stance on our heliport in order to allow us reasonable time to make the changes Mr. Kanae recommended. Before doing this, all we ask is simple confirmation that a project that will cost thousands of dollars will, in the end, comply with the recommendations. I look forward to your reply by letter, email or phone call.

Sincerely,

K. Rufus Crowe
Director of Operations

CARLSMITH BALL LLP

DAVID P. LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Americopters, LLC

## CERTIFICATE OF SERVICE

I, David P. Ledger, hereby certify and state that:

1.    I am a United States citizen over the age of 18 years;

2.    I am an Attorney of the law firm of Carlsmith Ball LLP.

3.    On the 13th day of August 2002, I caused to be served, a copy of the Request

for Hearing, via regular and certified mail to the following:

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Hearing Docket, Room 924A
Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, D.C. 20591

Federal Aviation Administration
Don M. Hamilton
Clarence Kanae
Western Pacific Region
Honolulu Flight Standards District Office
135 Nakolo Place
Honolulu, Hawaii 96819-1845

Lewis I. Ziegler
Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

DATED this _13th_ day of August 2002.

_____
DAVID P. LEDGER

3144197.1.051998-00034

**COMPLETE THIS SECTION ON DELIVERY**

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

*(Domestic Mail Only; No Insurance Coverage Provided)*

**Receipt 1**

A. Signature
X SRMClain
☐ Agent
☐ Addressee

B. Received by ( Printed Name )
Stephanie McClain 8/21/02
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

Article Addressed to:

Hearing Docket, Room 924A
Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, D.C. 20591

Hansen-Americopters (051998-34)

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

Article Number
(Transfer from service label)
7002 0460 0002 3368 6496

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-0835

---

Hansen-Americopters (051998-00034)

Postage $ 1.29
Certified Fee 2.30
Return Receipt Fee
(Endorsement Required) 1.75
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees $ 5.34

Postmark
BARRIGADA GU
HAGATNA STA
USPS
2002

Sent To  Hearing Docket, Room 924A
Federal Aviation Administration
Street, Apt. No.; or PO Box No.  800 Independence Ave., S.W.
City, State, ZIP+4  Washington, D.C. 20591

PS Form 3800, January 2001     See Reverse for Instructions

---

**Receipt 2**

SENDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X Kevin Hamilton
☐ Agent
☐ Addressee

B. Received by ( Printed Name )
K. HAMILTON
C. Date of Delivery
AUG 19

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

Article Addressed to:

Federal Aviation Administration
Don M. Hamilton
Clarence Kanae
Western Pacific Region
Honolulu Flight Standards District Office
135 Nakolo Place
Honolulu, Hawaii 96819-1845

Hansen-Americopters (051998-34)

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

Article Number
(Transfer from service label)
7002 0460 0002 3368 6502

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-0835

---

Hansen-Americopters (051998-00034)

Postage $ 1.29
Certified Fee 2.30
Return Receipt Fee
(Endorsement Required) 1.75
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees $ 5.34

Postmark
BARRIGADA GU
HAGATNA STA
USPS
2002

Sent To  Federal Aviation Administration
Don M. Hamilton
Clarence Kanae
Western Pacific Region
Street, Apt. No.; or PO Box No.  Honolulu Flight Standards Dist.
City, State, ZIP+4  135 Nakolo Place  Office
Honolulu, Hawaii 96819-1845

PS Form 3800, January 2001     See Reverse for Instructions

---

**Receipt 3**

SENDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X
☐ Agent
☐ Addressee

B. Received by ( Printed Name )
C. Date of Delivery
AUG 19 2002

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

Article Addressed to:

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, Cali. 90009-2007

051998-00034
(Hansen-Americopters)

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

Article Number
(Transfer from service label)
7002 0460 0002 3368 6465

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-0835

---

Hansen Helicopters (051998-00034)

Postage $ 1.29
Certified Fee 2.30
Return Receipt Fee
(Endorsement Required) 1.75
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees $ 5.34

Postmark
BARRIGADA GU
HAGATNA STA
USPS
2002

Sent To  Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Street, Apt. No.; or PO Box No.  Post Office Box 92007
City, State, ZIP+4  Worldway Postal Center
Los Angeles, Cali. 90009-2007

PS Form 3800, January 2001     See Reverse for Instructions

---

**Receipt 4**

SENDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X
☐ Agent
☐ Addressee

B. Received by ( Printed Name )
C. Date of Delivery
AUG 2 0 2002

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

Article Addressed to:

Lewis I. Ziegler
Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Hansen-Americopters (051998-34)

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

Article Number
(Transfer from service label)
7002 0460 0002 3368 6519

PS Form 3811, August     

---

Hansen-Americopters (051998-00034)

Postage $ 1.29
Certified Fee 2.30
Return Receipt Fee
(Endorsement Required) 1.75
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees $ 5.34

Postmark
BARRIGADA GU
HAGATNA STA
USPS

Sent To  Lewis I. Ziegler
Federal Aviation Administration
Western Pacific Region
Street, Apt. No.; or PO Box No.  Office of the Regional Counsel
City, State, ZIP+4  Post Office Box 92007
Worldway Postal Center



Western-Pacific Region
Office of the Regional Counsel

P. O. Box 92007
Los Angeles, CA 90009-2007

U.S. Department
of Transportation
**Federal Aviation
Administration**

**SEP 1 9 2002**

David P. Ledger, Esq.
CARLSMITH BALL LLP
134 West Soledad Avenue, Suite
   401
P.O. Box BF
Hagatna, Guam 96932-5027

Dear Mr. Ledger:

Re:   Requests For Hearings

This is a final response to your requests that the Federal
Aviation Administration (FAA) convene hearings to resolve
the matters raised in your electronic mail (e-mail) to
Lewis Ziegler on August 9, 2002, regarding the operations
of the Philippine registered Caribou owned by your client,
Jans Helicopter Service and your letters to me dated
August 13, 2002, regarding the Caribou and raising another
matter, the letter issued by the Honolulu Flight Standards
District Office to another of your clients, Americopters
LLC, directing them to cease operating from the heliport
located on the roof of Chuck's Steakhouse in Upper Tumon,
Guam.

In support of your requests for hearings in these matters,
you cite to Federal Aviation Regulation (FAR) 13.20(b).
This FAR is part of Subpart C of Part 13.  Subpart C
applies to legal enforcement actions, and FAR 13.20 sets
forth the procedures for requesting a hearing where the
FAA has issued orders of compliance, cease and desist
orders, orders of denial, and other orders.  Only the
following individuals have authority to issue such orders,
the Chief Counsel, the Deputy Chief Counsel, and each
Assistant Chief Counsel (including Regional and Center
Counsels).  See FAA Order 2150.3A, para. 1209(b).  No such
orders were issued with respect to the operations of the
Caribou by Jans Helicopter Service or with respect to
Americopters flights using the Chuck's Steakhouse
heliport.

**EXHIBIT** E

Neither Mr. Ziegler's e-mail to the Guam International
Airport Authority nor Mr. Kanae's letter to Mr. Rufus
Crowe constitutes an order as that term is contemplated by
the Part 13, Subpart C.  Therefore  your requests are
denied.

If you consider filing a formal complaint under FAR 13.5,
you should be aware that that section does not apply to
complaints against the Administrator or complaints against
FAA employees acting within the scope of their employment.
FAR 13.5(a).

Sincerely,

Monroe P. Balton
Regional Counsel

## DECLARATION OF SERVICE

I, Elyze McDonald, hereby declare under penalty of perjury of the laws of the United

States, that on the 18th day of July 2003, I will cause to be served, via hand delivery, a true and

correct copy of **PLAINTIFF AMERICOPTERS, LLC'S OPPOSITION TO DEFENDANT**

**FEDERAL AVIATION ADMINISTRATION'S MOTION TO DISMISS FOR LACK OF**

**JURISDICTION; EXHIBITS A - F ; DECLARATION OF SERVICE** upon Defendant's

Counsel of record as follows:

> Mikel W. Schwab, Esq.
> Office of the United States Attorney
> 108 Hernan Cortez Avenue
> Suite 500, Sirena Plaza
> Hagåtña, Guam 96910

Dated this 18th day of July 2003.

ELYZE McDONALD