DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JAN'S HELICOPTER SERVICE, INC., | Civil Case No. 03-00002 |
| Plaintiff, | |
| vs. | |
| FEDERAL AVIATION ADMINISTRATION, | |
| Defendant. | |
| AMERICOPTERS, LLC | Civil Case No. 03-00005 |
| Plaintiff, | |
| vs. | |
| FEDERAL AVIATION ADMINISTRATION, | MEMORANDUM ORDER |
| Defendant. | |

On August 1, 2003, these cases[1] came before the Court for hearing on motions to dismiss brought by defendant Federal Aviation Administration (the "FAA"). The FAA filed its motions under Fed. R. Civ. P. 12(b)(1) and requested dismissals on the basis that this Court lacked subject matter jurisdiction over the actions. Attorney David Ledger appeared on behalf

---

[1] The above-captioned cases are not consolidated. However, because the issues raised in the pleadings are essentially identical, the Court will consolidate these cases for purposes of the motions to dismiss only.

of Jan's Helicopter Service, Inc. ("Jan's) and Americopters, LLC ("Americopters") (collectively referred to as the "Plaintiffs"). Appearing on behalf of the FAA were Assistant United States Attorney Mikel Schwab, and Kenneth Caplan from the FAA's Office of the Chief Counsel participated telephonically. At the conclusion of the hearing, the Court granted the motions to dismiss. The Court now issues this written Memorandum Order setting forth the basis for its ruling herein.

## FACTS

These cases involve different facts but identical legal issues. Thus, the facts[2] will be described separately, but the legal analysis will be discussed jointly.

### Jan's Helicopter Services

Jan's is the legal and registered owner of a deHavilland Caribou DCH-4A (the "Caribou"), a Vietnam War era transport category twin engine airplane. Jan's uses the Caribou to transport helicopters, also owned by Jan's, to various locations in Micronesia where the helicopters, for compensation, are used to spot fish in support of commercial fishing operations.

On or about July 30, 2002, Mr. Zeigler, an Aviation Safety Inspector with the FAA, received a telephone call from the Guam International Airport Authority (the "GIAA") informing him that a Philippine registered Caribou was using the Guam airport as a base of operations to haul helicopters to other islands in the Pacific. Mr. Ziegler's office – the San Francisco International Field Office ("SFO-IFO") – had responsibility for all foreign air carrier operations in the U.S. from the Asia-Pacific Region. Since no one at the SFO-IFO knew anything about any such foreign operations in Guam, on July 31, 2002, Mr. Zeigler sent an e-mail to Gerard Bautista and Dan San Nicolas of GIAA and requested further information about the Caribou. Since Mr. Zeigler suspected the Caribou to be a foreign operation that had no approval from the FAA, his e-mail stated that the Caribou operator was not authorized to operate from Guam. See Exhibit B to Jan's Complaint (Feb. 4, 2003).

---

[2] The facts set forth herein do not constitute indisputable factual findings by the Court. Rather, the operative facts were taken from the pleadings filed in the cases.

As a result of Mr. Zeigler's July 31, 2002 e-mail, on August 9, 2002, the GIAA grounded the Caribou and denied the aircraft and its crew access to the taxiway and runway.

On August 13, 2002, Mr. Ledger wrote to the Regional Counsel for the FAA Western Pacific Region asserting that Mr. Zeigler disregarded due process and instead chose to arbitrarily and capriciously revoke operating authority. See Exhibit C to Jan's Complaint. Mr. Ledger requested among other things immediate rescission of the July 31, 2002 revocation of authority, actual and consequential damages, and a hearing on the alleged unauthorized grounding order.

On August 23, 2002, Regional Counsel Monroe Balton of the FAA responded to Mr. Ledger's August 13, 2002 letter. See Exhibit C to Jan's Opposition to the Motion to Dismiss (July 18, 2003). Mr. Balton confirmed that Jan's was not authorized to conduct its present operations out of Guam without an additional permit from the Department of Transportation ("DOT"). Mr. Balton stated that although "[t]his was only a preliminary finding based upon the information currently available to the FAA . . . attorneys from DOT, after being apprized of the same information, reached the same conclusion." Id. at 3. Mr. Balton further stated that the FAA was "aware that the [GIAA] on August 13, 2002, temporarily lifted the restriction on the Caribou, allowing it to operate. However, [the FAA would provide] a copy of this letter to officials at the airport." Id.

On August 28, 2002, Mr. Ledger replied to Mr. Balton's letter once again requesting a hearing under 14 C.F.R. § 13.35[3] and partial rescission of the grounding order in Mr. Balton's August 23, 2002 letter. See Exhibit D to Jan's Opposition.

On September 19, 2002, Mr. Balton issued a "final response" to Mr. Ledger's request for a hearing.[4] See Exhibit D to Jan's Complaint. According to Mr. Balton's letter,

///

---

[3] 14 C.F.R. § 13.35 sets forth the requirements for a request for an FAA hearing.

[4] Mr. Balton's September 19, 2002 letter also responded to Mr. Ledger's concerns regarding the cease and desist order issued to Americopters. See discussion *infra*.

3

Section 13.20[5] sets forth the procedures for requesting a hearing where the FAA has issued orders of compliance, cease and desist orders, orders of denial, and other orders. According to Mr. Balton, the only individuals authorized to issue such orders are the Chief Counsel, the Deputy Chief Counsel, and each Assistant Chief Counsel (including Regional and Center Counsels). Since Mr. Zeigler was only a safety inspector without the authority to issue such an order, Mr. Zeigler's e-mail to GIAA did not constitute an "order" as contemplated by 14 C.F.R. § 13.20, and thus Jan's was not entitled to a hearing.

On September 23, 2002, Mr. Ledger filed a formal administrative complaint under

///

///

///

---

[5] In pertinent part, this regulation provides:

§ 13.20 Orders of compliance, cease and desist order, orders of denial, and other orders.

(a) This section applies to order of compliance, cease and desist orders, orders of denial, and other orders issued by the Administrator to carry out the provisions of the Federal Aviation Act of 1958, as amended, . . .

(b) Unless the Administrator determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order **shall be provided with notice prior to issuance.**

(c) Within 30 days after service of the notice, the person subject to the order may reply in writing or request a hearing in accordance with [Section 13.35].
. . .
(e) Failure to request a hearing with the period provided in . . . this section –
(1) constitutes a waiver of the right to appeal and the right to a hearing, and
(2) authorizes the official who issued the notice to find the facts to be as alleged in the notice, or as modified as the official may determine necessary based on any written response, and to issue an appropriate order, without further notice of proceedings.
. . .
14 C.F.R. § 13.20 (emphasis added).

14 C.F.R. § 13.5[6] with the FAA arguing that Mr. Zeigler acted outside the scope of his employment by issuing an order of a type described in 14 C.F.R. § 13.20 when he had no authority to do so. See Exhibit F to Jan's Opposition.

On November 22, 2002, Alan Horowitz, Manager of the FAA's Enforcement Division, responded to the September 23, 2002 administrative complaint. See Exhibit G to Jan's Opposition. Mr. Horowitz concluded that Mr. Zeigler acted within the scope of his employment, and thus the process set forth in Section 13.5 did not apply to the present situation. Mr. Horowitz further stated that nothing in Mr. Zeigler's e-mail could be construed as a "directive" to GIAA to perform any specific act or to refrain from performing any act. Id. at 3.

Thus, on February 4, 2003, Jan's filed its Complaint in this Court asserting four counts: (1) that Mr. Zeigler violated 14 C.F.R. § 13.5 by issuing an unauthorized grounding order; (2) that the grounding order violated 14 C.F.R. § 13.20(b) as it was issued without prior notice and an opportunity to respond; (3) that the grounding order violated due process under 14 C.F.R. § 13.20(b); and (4) that the grounding order violated the due process clause of the Fifth Amendment by failing to follow procedures set forth in the Code of Federal Regulations. The Complaint sought an order rescinding the July 31, 2002 unauthorized grounding order and full restoration of its operating authority, civil penalties, actual and consequential damages, and attorney's fees and costs.

On May 30, 2003, the FAA filed the present Motion to Dismiss on the basis that only the federal appellate courts have jurisdiction over final agency decisions and actions. Therefore, the FAA claimed that this Court lacked jurisdiction under Fed. R. Civ. P. 12(b)(1).

---

[6] In pertinent part, this regulation provides:

Any person may file a complaint with the Administrator with respect to anything done or omitted to be done by any person in contravention of any provision of any Act or any regulation or order issued under it, as to matters within the jurisdiction of the Administrator. **This section does not apply to complaints against the Administrator or employees of the FAA acting within the scope of their employment.** 14 C.F.R. § 13.5(a) (emphasis added).

Americopters, LLC

Plaintiff Americopters, LLC ("Americopters") operates on Guam and provides helicopter rides to tourists. Americopters operates from its heliport located at Chuck's Steakhouse in Upper Tumon.

On February 14, 2002, Principal Operations Inspector Clarence Kanae of the FAA Honolulu Flight Standards District Office ("FSDO") conducted pilot checkrides and an inspection of Americopters' heliport. Inspector Kanae verbally noted what he considered to be deficiencies at the heliport and requested improvements to the site. Inspector Kanae did not put his concerns in written form.

On February 18, 2002, Americopters wrote to Inspector Kanae in order to confirm the heliport improvements Inspector Kanae requested be made. See Exhibit A to Americopters' Complaint (Feb. 18, 2003). Americopters was eager to have the construction completed before Inspector Kanae's next trip to Guam. When Americopters received no response, it re-faxed[7] the letter to Honolulu FSDO, however, the pattern of "no response" continued for many months. See Exhibits C and D to Americopters' Complaint.

Finally, on June 24, 2002, Inspector Kanae wrote to Americopters to inform Kenneth R. Crowe[8] (one of two owners and the chief pilot of Americopters) that the use of the roof top of Chuck's Steak House as a helicopter pad was "considered unsafe, and [did] not meet [FAA] . . . requirements." See Exhibit B to Americopters' Complaint. Inspector Kanae further stated that his letter was "advisory in nature; however, this office feels that FAR 91.13 will apply to this operation if [it] is not followed." Id. Furthermore, Inspector Kanae declared that Americopters

---

[7] Americopters asserts that it re-faxed the letter to Honolulu FSDO on four subsequent dates. See Exhibit A to Americopters' Complaint

[8] Mr. Crowe and his partner Jon Walker were off-island at the time Inspector Kanae's letter was received at the Americopters' office. Messrs. Crowe and Walker were on a business trip to the U.S. Mainland for over one month and did not return until July 30, 2002, which was the first time they saw Inspector Kanae's letter. Messrs. Crowe and Walker were the only ones authorized to open or reply to Inspector Kanae's letter after it was delivered to their office.

6

1  "immediately cease use of Chuck's Steak House rooftop for all flight operations." Id.

2  Americopters asserts that Inspector Kanae's cease and desist order had the equivalent effect of an authorized and legal cease and desist order issued under 14 C.F.R. § 13.20. Thus, Americopters' office, reservations center, retail outlet, and operations were shut down. Americopters contends that Inspector Kanae's letter resulted in a loss of business goodwill, revenue and profit, and future business. Additionally, Americopters claims it incurred substantial expenses as a result of having to move and conduct its flights from another location on Guam.

On August 4, 2002, Americopters wrote a letter of protest to Peter Beckner, Manager, Honolulu FSDO. See Exhibit C to Americopters' Complaint. Americopters attempted to follow up this letter with phone calls, but was told that neither Mr. Beckner nor Inspector Kanae were available to take the call, nor could anyone comment on Americopters' August 4, 2002 letter. See Exhibit D to Americopters' Complaint.

Accordingly, on August 13, 2002, Attorney David Ledger wrote to the Office of the Regional Counsel requesting a hearing pursuant to 14 C.F.R. § 13.35. See id.

On September 19, 2002, Regional Counsel Monroe Balton of the FAA responded to Mr. Ledger and denied the request for a hearing stating that Inspector Kanae had no authority to issue the cease and desist order. See Exhibit E to Americopters' Complaint. Mr. Balton's letter stated that Mr. Kanae's letter was not an "order" as contemplated by 14 C.F.R. § 13.20, and Americopters was not entitled to a hearing.

On September 23, 2002, Mr. Ledger filed a formal administrative complaint with the FAA on behalf of Americopters under 14 C.F.R. § 13.5, seeking to rescind the cease and desist order. Mr. Ledger asserted that Inspector Kanae acted outside the scope of his employment by issuing an order of a type described in 14 C.F.R. § 13.20 when he had no authority to do so.

When Americopters received no response to its administrative complaint, it filed a Complaint in this Court on February 18, 2003. The Complaint raised three causes of action: (1) that the cease and desist order violated 14 C.F.R. § 13.20(b) as it was issued without prior notice and an opportunity to respond; (2) that the grounding order violated due process under

14 C.F.R. § 13.20(b); and (3) that the grounding order violated the due process clause of the Fifth Amendment by failing to follow procedures set forth in the CFRs.[9]

On May 30, 2003, the FAA filed a Motion to Dismiss similar to the one it had filed in the Jan's case. Since the motions raise an identical legal issue, the motions shall be analyzed jointly.

## ANALYSIS

The FAA brought its motions pursuant to Fed. R. Civ. P. 12(b)(1), asserting that this Court lacked subject matter jurisdiction over these actions. More specifically, the FAA contended that the Ninth Circuit Court of Appeals, and not this Court, had jurisdiction over these cases which challenge the actions of the FAA.

Legal Standard for Rule 12(b)(1) Motion to Dismiss

The Plaintiffs[10] contend that when reviewing a motion attacking jurisdiction, the Court "must accept well-pleaded allegations in [the] complaint as true and draw all reasonable inferences in the plaintiff's favor." The Plaintiffs' standard, however, is not the applicable legal standard under the circumstances, which standard will shortly be discussed.

"It is a fundamental principle that federal courts are courts of limited jurisdiction." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S. Ct. 2396, 2403 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) addresses a court's subject matter jurisdiction. "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." Thornhill Publishing Co. v. General Telephone &

---

[9] These claims are similar to the claims raised in the Jan's Complaint. See discussion *supra*.

[10] Jan's and Americopters shall collectively be referred to as the "Plaintiffs."

8

Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).

In a facial attack on the complaint, "the court must consider the allegations of the complaint as true." Mortensen v. First Federal S&L Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977). However, the standards for a Rule 12(b)(1) speaking motion are different. A "speaking motion" attacks the existence of subject matter jurisdiction in fact, rather than attacking the sufficiency of the allegations of the complaint. Therefore, a court is not obligated to take plaintiff's allegations as true. Thornhill Publishing, 594 F.2d at 733. The plaintiff bears the burden of establishing subject matter jurisdiction, and the court must presume that it lacks jurisdiction until the plaintiff demonstrates that jurisdiction exists. Stock West, 873 F.2d at 1225.

In these cases, the FAA's motion is a "speaking motion." The FAA does not challenge the sufficiency of the allegations in the Plaintiffs' complaints. Instead, the FAA contends that the Plaintiffs have failed to establish that the Court, in fact, possesses subject matter jurisdiction. The FAA asserts that jurisdiction properly lies with the Ninth Circuit Court of Appeals, not this Court. The analysis will now turn to the merits of the Motion to Dismiss.

### Merits of Motions to Dismiss on Jurisdictional Grounds

The FAA claims that it "does not necessarily agree that the events described in the [Plaintiffs' Complaints] are factually accurate nor that the decisions are administratively final." Nevertheless, the FAA maintains that if the facts as alleged in the Complaints themselves are true, then pursuant to 49 U.S.C. § 46110,[11] the United States courts of appeal maintain exclusive jurisdiction to review final decisions and actions made by the FAA. The pertinent provision of Section 46110 provides:

> (a) . . . a person disclosing a substantial interest in an order issued by the Secretary of Transportation (. . . or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator) . . . may apply for review of the order by filing a petition for review in the . . . court of appeals for the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable

---

[11] Section 46110(a) was formerly 49 U.S.C. App. § 1486(a) ("Section 1486(a)").

9

grounds for not filing by the 60th day.
. . .
(c) Authority of Court. When the petition is sent to the Secretary, . . . or Administrator, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, . . . or Administrator to conduct further proceedings. 49 U.S.C. § 46110(a) and (c) (2002).

The FAA asserts that in these cases the Plaintiffs are directly challenging the decisions of the FAA – the July 31, 2002 grounding order against Jan's and the June 24, 2002 cease and desist order against Americopters. The FAA thus argues that Section 46110 precludes review in this Court and requires dismissal of the actions for lack of subject matter jurisdiction.

The Plaintiffs, on the other hand, contend that "not all 'orders' and administrative proceedings qualify to bypass review at the district court level and instantly become prime for review by a court of appeals." While this is true, the Plaintiffs are mistaken in their assertion that these cases present situations capable of review by this Court. The Court's subject matter jurisdiction over these cases depends upon whether Mr. Zeigler's July 31, 2002 e-mail and Inspector Kanae's June 24, 2002 letter are considered "orders" under Section 46110(a).

Past decisions of the Ninth Circuit Court of Appeals have not formulated a clear method for determining whether agency action is an "order" within the meaning of Section 1486(a).[12] The Ninth Circuit, however, notes three relevant factors to this determination:

> First, we have observed that the [Administrative Procedure Act] defines "order" broadly as "the whole or part of a final disposition . . . of an agency in a matter other than rulemaking. Second, we have acknowledged that our power to review FAA orders has been judicially restricted to review of final agency orders. Characteristics indicating finality include providing a "definitive" statement of the agency's position, having a "direct and immediate" effect on the day-to-day business of the complaining parties, having the "status of law," and carrying the expectation of "immediate compliance with its terms." By contrast, agency action lacking finality is more in the nature of "a threshold determination that further inquiry is warranted." Third, we have noted . . . that whether agency action is an "order" within the scope of section 1486(a) depends on the adequacy of the administrative record. Southern Cal. Aerial Advertisers' Ass'n v. FAA, 881 F.2d 672, 675-76 (9th Cir. 1989) (internal citations omitted).

Furthermore, the Ninth Circuit has stated that "'order' carries a note of finality, and applies to 'any agency decision which imposes an obligation, denies a right, or fixes some legal relationship.'" Mace v. Skinner, 34 F.3d 854, 857 (9th Cir. 1994).

---

[12] Section 1486(a) is the predecessor to Section 46110(a). See footnote 9 supra.

10

The Plaintiffs contend that there has been no final order issued in either of these cases. In the case of Americopters, the Plaintiffs assert that by the very terms of Inspector Kanae's June 24, 2002 letter, the cease and desist order was merely "advisory in nature" and did not provide a definitive statement of the agency's position. As for the facts of the Jan's case, the FAA continuously asserted that Mr. Zeigler's July 31, 2003 e-mail did not constitute an "order." This was confirmed by the August 23, 2002 letter from Mr. Balton which stated that this was only a "preliminary finding." Essentially, what the Plaintiffs argue is that the FAA cannot have their cake and eat it too. The FAA cannot deny administrative review over "non-orders," and yet argue in its motions that the "orders" are good enough to be reviewed directly by the Ninth Circuit.

Contrary to the Plaintiffs' argument, Mr. Zeigler's July 31, 2002 e-mail, which resulted in the grounding of the Caribou, and Inspector Kanae's June 24, 2002 letter directing that Americopters cease and desist its operations possess the requisite finality. The FAA's actions denied the Plaintiffs a right which they previously enjoyed. As proof of the definitiveness of the FAA's position, on September 19, 2002, Regional Counsel Balton issued a "final response" denying Mr. Ledger's repeated requests for hearings. The Zeigler e-mail and Kanae letter had direct and immediate effects on the day-to-day operations of the Plaintiffs' businesses. In fact, upon receiving the Zeigler e-mail, GIAA immediately complied with its terms by grounding the Caribou and denying the aircraft and its crew access to the taxiway and runway. Additionally, Americopters shut down its operations from Chuck's Steak House and conducted its flight operations from another location on Guam. Clearly the FAA's actions are final orders within the meaning of Section 46110(a).

The Plaintiffs also argue that jurisdiction is proper in this Court since there exists no administrative record upon which the Ninth Circuit can review. The Plaintiffs assert that the record consists of the July 31, 2002 e-mail, the June 24, 2002 cease and desist letter, and the various correspondence described in the facts *supra*. The Plaintiffs point out that there are no investigative data, conclusive findings by the FAA, nor hearing transcripts for the Ninth Circuit to review. Since there is no administrative record to examine, the Plaintiffs contend that the

Ninth Circuit lacks jurisdiction to directly review these cases in their present procedural posture.

The Court disagrees with the Plaintiffs' assertions. While the record may not be as complete as the Plaintiffs would like it to be, this record is sufficient to permit the Ninth Circuit to evaluate the Plaintiffs' claims. See Southern Cal. Aerial Advertisers' Ass'n, 881 F.2d at 676 (entire administrative record, consisting of an FAA letter banning the use of a certain route near LAX by fixed-wing aircraft and the FAA's proposed regulation modification, was sufficient to permit Ninth Circuit review).

Finally, the Plaintiffs contend that even the Ninth Circuit recognizes the distinction between broad challenges to the constitutionality of FAA actions, over which district courts may exercise jurisdiction, and claims that are "inescapably intertwined with a review of the procedures and merits surrounding the FAA's order." Mace, 34 F.3d at 858. The Plaintiffs claim that their Complaints assert broad constitutional challenges to the authority of the FAA's agents to issue the orders they did and assert violations of the Plaintiffs' due process rights. The Plaintiffs argue that since the FAA never addressed the merits of its issues, and because the Complaints challenge the constitutionality of the orders, jurisdiction is proper in this Court.

The Plaintiffs, however, once again mis-characterize the nature of their Complaints. A review of two Ninth Circuit decisions is helpful in this analysis.

In Mace, an aircraft mechanic sued the FAA, NTSB, and DOT and enumerated thirteen separate causes of action.

> In these causes of action, [the plaintiff] alleged that the FAA was not authorized to revoke certificates as a sanction for violating aviation safety regulations, nor was the NTSB authorized to try such revocations; that only fines were authorized as a sanction for safety violations; that the FAA failed to promulgate rules relating to the revocation procedures, to give the public notice of and an opportunity to comment on such rules, and to publish them in the Federal Register; and that the FAA's emergency procedures failed to accord [the plaintiff] adequate notice of the revocation of his certificate. Besides these broad challenges to the legitimacy of the FAA's revocation procedures, [the plaintiff] also argued more specifically in his twelfth cause of action that the FAA's revocation of his certificate was irrational because his use of the certificate posed no threat to air safety or to the public." Mace, 34 F.3d at 856.

The district court dismissed the complaint in Mace on the basis that it lacked subject

matter jurisdiction over the action since jurisdiction over the claims was vested exclusively with the federal appellate courts. The Ninth Circuit reversed the ruling. The Ninth Circuit concluded that the district court had subject matter jurisdiction over the complaint with the exception of the twelfth cause of action, which the Ninth Circuit held was barred by Section 1486(a)) since the claims were not based on the merits of the individual revocation order but constituted broad challenges to allegedly unconstitutional practices and procedures. Id. at 858. The Ninth Circuit noted that the plaintiff's claims did not challenge the actions or conduct of FAA officials in adjudicating a specific individual claim that was under attack. Rather, the plaintiff was asserting broad constitutional challenges to the FAA's revocation procedures. Id.

The Ninth Circuit ruled likewise in Foster v. Skinner, 70 F.3d 1084 (9th Cir. 1995). In Foster, a pilot whose license was revoked by the FAA sued officials of the FAA and DOT for civil rights violations[13] and for specific mistreatment he allegedly experienced during the license revocation process. The Ninth Circuit held that the district court had subject matter jurisdiction over claims one through eleven which asserted broad constitutional challenges, however, the Ninth Circuit had exclusive jurisdiction over the claims which alleged case specific mistreatment regarding the revocation and reinstatement of the plaintiff's flight privileges. Id. at 1087-88.

Unlike Mace and Foster, the Plaintiffs' thinly veiled claims are based on the merits of their individual situation and do not constitute broad constitutional challenges to the FAA's practices. All the claims in the Plaintiffs' Complaints are case specific allegations which challenge the particular actions of Zeigler and Kanae in adjudicating their individual situations. As hard as the Plaintiffs try to assert otherwise, their claims are "inescapably intertwined with a

---

[13] Claims one through eleven asserted claims that the FAA lacked authority to suspend or revoke pilot certificates for safety violations, and failed to delegate such authority to its officers; the NTSB lacked authority to hold hearings to suspend or revoke pilot certificates; that FAA suspensions and revocations deny the rights to a trial by jury and to a civil fine as a penalty; and that the FAA violated the Administrative Procedures Act by not publishing rules regarding suspensions, and not giving the plaintiff notice and an opportunity to comment on the rules. Foster, 70 F.3d at 1087.

13

review of the procedures and merits surrounding the FAA's order[s]." Accordingly, the Court rejects the Plaintiffs' arguments and concludes that subject matter jurisdiction over the Plaintiffs' causes of action is vested exclusively in the Ninth Circuit as mandated by Section 46110(a).

## CONCLUSION

The Plaintiffs have failed to affirmatively establish that this Court has jurisdiction over its claims. Pursuant to 49 U.S.C. § 46110, the Ninth Circuit Court of Appeals has exclusive jurisdiction over the Plaintiffs' causes of action. Accordingly, the Court GRANTS the FAA's Motions to Dismiss.

SO ORDERED this 29th day of December, 2003.

JOHN S. UNPINGCO
District Judge

Notice is hereby given that this document was entered on the docket on 12/30/03.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ 12/30/03
Deputy Clerk       Date