CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Plaintiff
Americopters, LLC



FILED
DISTRICT COURT OF GUAM

FEB 22 2007

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| AMERICOPTERS, LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>FEDERAL AVIATION ADMINISTRATION,<br><br>　　　　Defendant. | CIVIL CASE NO. CV03-00005<br><br>**FIRST AMENDED COMPLAINT** |

On remand from the Ninth Circuit Court of Appeals, 441 F.3d 726 (9th Cir. 2006), Plaintiff alleges the following:

1. The Court has original and exclusive jurisdiction of this action pursuant to 28 U.S.C. § 1331, there being federal and constitutional law questions for this Court to resolve.

2. Americopters, LLC is a corporation organized and existing according to law.

3. The Federal Aviation Administration is an agency of the United States government, that pursuant to the Federal Aviation Act of 1958, as amended, regulates aircraft.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events on which the claims in this Complaint are based occurred in the Territory of Guam.

5. On February 14, 2002, Honolulu Flight Standards District Office (FSDO) conducted pilot checkrides and an inspection of Americopters' operation at Chucks Steakhouse

in Upper Tumon, Guam. FAA employee and Principal Operations Inspector Mr. Clarence Kanae of Honolulu FSDO conducted the checkride and the inspection.

6. At that time, Mr. Kanae verbally described what he considered to be deficiencies at the Chucks site and requested improvements to the site. Mr. Kanae did not state his concerns in writing, nor did he subsequently do so despite repeated requests by Americopters.

7. As a result, on February 18, 2002, to confirm the site improvements Mr. Kanae had requested, Americopters wrote to Mr. Kanae. See **Ex. A**. Mr. Kanae did not respond in any way.

8. As a result, on March 3, 2002, Americopters re-faxed the letter to Mr. Kanae. Again, Mr. Kanae did not respond in any way.

9. This pattern of "no response" from Mr. Kanae and Honolulu FSDO continued until April 2, 2002 when, for the *fifth* time, Americopters again faxed its February 18th letter to Mr. Kanae. See handwritten notations on Ex. A. Even then, neither Mr. Kanae nor other FAA employees at the Honolulu FSDO responded in any way.

10. Nonetheless, on June 24, 2002, the FAA, through its employee Mr. Kanae, without prior notice or allowing Americopters an opportunity to be heard in any manner, wrote to Americopters demanding Americopters to "immediately cease the use of the Chucks Steakhouse rooftop for all flight operations." See **Ex. B**. The FAA did not provide Americopters "with notice prior to issuance" of the cease and desist directive, even though such notice is required by law.

11. Apparently in Mr. Kanae's absence, his superior and fellow FAA employee Don Hamilton, signed the FAA's June 24, 2002 letter to Americopters. Mr. Hamilton signing the letter "for Mr. Kanae" is an endorsement that Mr. Kanae was acting within the scope of his employment at all times pertinent.

12. The FAA's cease and desist directive, issued by its employee Mr. Kanae, constituted an unlawful taking of Americopters' property without due process of law. In particular, Americopters' flight operations, office, reservations center, and retail outlet were shut down. This caused Americopters to lose revenue and profit, business goodwill, future business, and to incur substantial expenses as a result of having to move to and conduct its flights from another location on Guam.

13. As a result, on August 4, 2002 Americopters wrote a letter of protest to Mr. Peter Beckner, Manager, Honolulu FSDO (Mr. Kanae's boss). See **Ex. C**. Americopters also followed up with a phone call to Mr. Beckner, only to be told that neither Mr. Beckner nor Mr. Kanae "were available to take the call," nor could the person who did take the call comment on Americopters' August 4, 2002 letter.

14. Subsequently, the FAA denied each and every one of Americopters' requests to be heard and for due process of law.

15. The FAA determined that Mr. Kanae was acting within the scope of his employment with the FAA at all relevant times.

16. As a result of the events described above, especially being forced to shut down business operations without prior notice and the opportunity to be heard, Americopters' property was unlawfully taken without due process of law.

## COUNT I: VIOLATION OF DUE PROCESS UNDER AMENDMENT V

17. Paragraphs 1 through 16 are incorporated herein by reference.

18. The actions of the FAA, through Mr. Kanae as an employee of the FAA acting within the scope of his employment, constitute violations of due process under Amendment V to the United States Constitution and therefore, an illegal taking of Americopters' property.

WHEREFORE, Americopters prays for the following relief:

1. Judgment in favor of Americopters and against the Federal Aviation Administration.

2. Actual and consequential damages according to proof.

4. Attorneys fees and costs.

5. Such other and further relief as the Court deems proper.

DATED: Hagåtña, Guam, February 21, 2007.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Attorneys for Plaintiff
Americopters, LLC

# EXHIBIT

# "A"



# Americopters

*An FAA Approved Air Carrier & Air Ambulance*
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

| | | | |
|---|---|---|---|
| **To:** | Clarence K. Kanae / Principal Ops. Inspector | **From:** | Rufus Crowe |
| **Co:** | FAA | **Page:** | 1 of 1 |
| **Re:** | Chuck's Heliport | **Date:** | February 18, 2002 |

Dear Clarence:

Thank you for your assistance in getting our checkrides taken care of. I wish you had more time to spend with us and could make it out more frequently.

I would like to clarify and confirm with you all of the changes that you would like us to make to the Chuck's Heliports. As per my notes they are as follows:

### East Heliport (where the Enstrom parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Move heliport so that it hangs 4' over the lower roof towards the east, away from the West Heliport (where the 500 parks).
3. Add safety netting along the East side of the heliport and along the rear of the heliport areas that are accessible to passengers.

### West Heliport (where the 500 parks)

1. Enlarge heliport to a size of 25' X 25'.
2. Raise the West Heliport to the same height as that of the East Heliport so as to avoid the air-conditioning ducts on the South end of the building.
3. Move heliport so that it hangs 4' over the lower roof towards the west, away from the East Heliport (where the Enstrom parks) and extend it 4' to the North towards the parking lot.
4. Add safety netting along the North and West sides of the heliport and along the rear of the heliport areas that are accessible to passengers.

REFAXED 3/28/02
NO RESPONSE

**EXHIBIT A**

REFAXED 4/2/02
NO RESPONSE

Miscellaneous

1. Add big red balls to the wires South East of the East Heliport.
2. Add windsock to the telephone pole located to the South East of the East Heliport.
3. Add light to illuminate the windsock.
4. Add reflective material to the boundaries of both heliports.
5. Produce supporting engineering documentation for the building and heliports.

I believe that the above constitutes the changes requested by you on February 14, 2002 (happy belated Valentines day, by the way). Please let me know if you agree with all of the above and that you have no further changes or additions as we would like to have the construction completed before your next trip to Guam.

Sincerely,

Rufus Crowe

# EXHIBIT

# "B"



U.S. Department of Transportation
Federal Aviation Administration

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

June 24, 2002

**Certified-Return Receipt**

Micronesian Aviation Corporation
DBA Americopters
Attn: Mr. Kenneth R. Crowe
P.O. Box 9099
Tamuning, GU 96931

Dear Mr. Crowe:

This letter is to inform you that the use of the roof top as a helicopter-pad, at Chuck's Steak House, is considered unsafe, and does not meet the Federal Aviation Administration Advisory Circular 150-5390-2A Heliport Design requirements. This AC is Advisory in nature; however, this office feels that FAR 91.13 will apply to this operation if the AC is not followed. Therefore, this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations.

If you have any further questions I may be reached at (808) 837-8311.

Sincerely,

Don Hamilton for CKK

Clarence K. Kanae
Principal Operations Inspector

**EXHIBIT B**

# EXHIBIT

# "C"



# Americopters

*An FAA Approved Air Carrier & Air Ambulance*
P. O. Box 9099 ~ Tamuning, Guam, 96931 ~Tel: (671) 649-4664
Fax: (671) 649-4675 ~ email: americopters@ite.net
P. O. Box 1160 ~ Koblerville, Saipan, MP 96950 ~Tel: (670) 234-1304
Fax: (670) 288-6369 ~ email:americopters@saipan.com

August 4, 2002

Mr. Peter E. Beckner
Manager
Honolulu FSDO 13
135 Nakolo Place
Honolulu, Hawaii 96819-1850

Dear Mr. Beckner:

We have a serious predicament on our hands that could easily escalate into some very serious, far reaching, and long lasting legal and political entanglements and cause people on Guam to lose jobs, which certainly are hard enough to find already.

After a spending a month in the U. S. and a lot of money looking for assets to improve our business, I returned to Guam yesterday, August 3rd, only to find a disheartening letter from Mr. Clarence K. Kanae dated June 24, 2002, stating that "this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations." In other words, Mr. Kanae wants to shut our business down and put people out of work. For this families would ultimately suffer. For so-called justification, Mr. Kanae mistakenly believes that we are violating FAR 91.13, the old Careless or Reckless catch-all regulation. Our legal counsel, Mr. David Ledger, sees Inspector Kanae's position on this matter as wrong, his reliance on 91.13 misplaced and his decision arbitrary and capricious. I believe Clarence is well acquainted with Mr. Ledger from prior legal proceedings on Guam. Americopters has already put Mr. Ledger on stand-by to assist in continuing lawful operations.

After inspecting our heliport on february 14, 2002, Mr. Kanae recommended improvements to make aircraft operations safer. Although I did not completely agree with Mr. Kanae's safety assessment of our heliports, I did, nevertheless, agree 100% to *each* and *every* change he requested.

**EXHIBIT C**

Just four days later, on February 18, 2002, I faxed and mailed a letter to Mr. Kanae which specified and confirmed each change he requested. Unbelievably, Mr. Kanae never responded. I also made many phone calls to Inspector Kanae requesting him to provide me with *any* type of written documentation that confirmed the verbal changes he requested on February 14, 2002. Again, I have not received *any* correspondence or reply from Mr. Kanae, except, of course, for his surprising letter telling us to shut down operations and to quietly go out of business. In light of all the circumstances, Mr. Kanae's actions can not be justified by far 91.13. Indeed, any sustainable motivation for this action is highly questionable.

For example, if Honolulu FSDO would have taken just a couple minutes to give us even the shortest of e-mails to confirm Mr. Kanae's requested changes to our heliport, the changes would have been completed over five months ago! *FIVE MONTHS!* **It is not unreasonable for Americopters to request written confirmation of an inspector's verbal recommendations before spending thousands of dollars to comply.** If Mr. Kanae were truly concerned about safety, then why couldn't he write one single sentence confirming that my written interpretation of his verbal changes was accurate and acceptable?

What's more, Americopters and its legal counsel believe the Honolulu FSDO is not only exceeding it's authority in this matter, but is also attempting to manipulate the local government's aviation policies and cause Americopters and other small aviation companies undue financial and administrative burdens. As an example, I know for a fact that you yourself were trying to persuade local politicians into enacting legislation which limited "off airport" heliports - just like in Hawaii.

Americopters will aggressively and publically pursue every legal and political avenue available to us. We also will seek compensation for loss of business damages from the FAA and, to the extent possible, from each and every individual responsible for unlawful schemes to put Americopters out of business.

Under the circumstances, Americopters believes it is in everyone's best interest if Honolulu FSDO modified it's "immediate" stance on our heliport in order to allow us reasonable time to make the changes Mr. Kanae recommended. Before doing this, all we ask is simple confirmation that a project that will cost thousands of dollars will, in the end, comply with the recommendations. I look forward to your reply by letter, email or phone call.

Sincerely,

K. Rufus Crowe
Director of Operations