CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Plaintiff
Americopters, LLC

FILED
DISTRICT COURT OF GUAM
APR 17 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| AMERICOPTERS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL AVIATION ADMINISTRATION,<br><br>Defendant. | CIVIL CASE NO. CIV03-00005<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, TO TRANSFER; DECLARATION OF RUFUS CROWE; DECLARATION OF DAVID LEDGER; EXHIBITS A-F: DECLARATION OF SERVICE** |

## I. INTRODUCTION

In its Amended motion to dismiss for failure to state a claim, or in the alternative, to transfer, Defendant Federal Aviation Administration ("FAA") fails to provide any grounds upon which a transfer or a dismissal would be appropriate. A transfer of this case to the Court of Federal Claims would be improper because the FAA hotly contests liability for the due process violations alleged against it and likewise contests that the actions of the FAA employee Clarence Kanae were authorized specifically by a money-mandating constitutional provision, statute, or regulation. As jurisdiction in the Federal Court of Claims would only be proper under reversed circumstances, that is, the FAA not contesting liability or Kanae's authority to take the





actions he did, a transfer here would be inappropriate. Second, dismissal of this case is improper because the First Amended Complaint and the record demonstrate overwhelmingly sufficient facts to support a cognizable claim, specifically, that the FAA, by way of Mr. Kanae's authorized and ratified actions, violated Plaintiff Americopters, LLC's ("Americopters") rights to due process of law.

For these reasons and those stated herein, the FAA's amended motion should be denied in its entirety.

## II. FACTUAL DISCUSSION

### A. THE FAA ORDERS AMERICOPTERS TO CEASE AND DESIST ITS OPERATIONS.

Americopters provides sight-seeing helicopter rides to tourists from its location in Upper Tumon, Guam. First Am. Compl. ("Compl."), ¶ 5. On February 14, 2002, FAA employee Clarence Kanae, who is based at the FAA Honolulu Flight Standards District Office, conducted official pilot checkrides and inspections of Americopters' flight operations and facilities. Crowe Decl., ¶ 7; Compl., ¶ 5. From about December of 2000 until about January of 2007, Mr. Kanae was Americopters' designated FAA Principal Operations Inspector working out of the Honolulu Flight Standards District Office. Crowe Decl., ¶ 4. As the designated FAA Principal Operations Inspector, Mr. Kanae would inspect Americopters' flight operations facility in Guam, oversee its operations, issue Operations Specifications and conduct required pilot flight proficiency checks. Crowe Decl., ¶ 4. The FAA, by and through Mr. Kanae, exercised direct authority over Americopters' company operations. Crowe Decl., ¶ 4.[1]

---

[1] On or about April 9, 1998 Mr. William L. Miller served as Supervisor, Operations Unit, at the Honolulu Flight Standards District Office. ***Crowe Decl., ¶ 5.*** In this position Mr. Miller was responsible for the Principal Operations Inspectors within the Honolulu Flight Standards District Office, including Mr. Kanae. ***Crowe Decl., ¶ 5*, Ex. A.**
On or about April 13, 1998, Mr. Miller was promoted to another position within the FAA and was replaced by Mr. Mahlon (Don) Hamilton. ***Crowe Decl., ¶ 6.*** Mr. Miller wrote to Americopters to inform Americopters of his promotion ***(Ex. A)*** and that Mr. Hamilton was taking over as Supervisor of the Honolulu Operations Unit with responsibility and authority over Principal Operations Inspectors within the Honolulu Flight Standards District

During the February 14, 2002 pilot checkrides and facilities inspections, and prior to them, Mr. Kanae displayed his FAA identification. Crowe Decl., ¶ 7. Mr. Kanae verbally expressed concerns regarding deficiencies at the take-off and landing site and directed Crowe to make improvements, but did not state his concerns in writing. Compl., ¶ 6. On February 18, 2002, Americopters' principal owner and chief pilot Rufus Crowe wrote to Mr. Kanae addressing all of his verbal concerns outlined during the February 14 inspection. Crowe Decl., ¶ 7; Compl., ¶ 7. Mr. Kanae failed to respond to Mr. Crowe. Compl., ¶ 7. As a result, on March 3, 2002, Mr. Crowe re-faxed the letter to Mr. Kanae. Compl., ¶ 8. Again, Mr. Kanae did not respond in any way. Compl., ¶ 8. This pattern of "no response" from Mr. Kanae and the Honolulu Flight Standards District Office continued until April 2, 2002, when, *for the fifth time*, Americopters refaxed its February 18 letter to Mr. Kanae. Compl., ¶ 9.

Finally, on June 24, 2002, but without any prior notice whatsoever, the FAA through Kanae issued a formal written statement directing Americopters to immediately cease its flight operations. Compl., ¶ 10. The FAA's June 24th letter stated that:

> use of the roof top as a helicopter-pad, at Chuck's Steak House, is considered unsafe and does not meet the Federal Aviation Administration Advisory Circular 150-5390-2A Heliport Design requirements. This AC is *advisory in nature*; however, this office[2] feels that FAR 91.13 will apply to this operation if the AC is not followed. Therefore, this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations.

Ex. B. In other words, on June 24, 2002 the FAA, through Principal Operations Inspector Clarence Kanae, wrote a letter to Americopters instructing Americopters to stop conducting flights from its operations facility, and Americopters did so. At that time Don Hamilton was Kanae's Operations Unit Supervisor and in that capacity signed the letter for Kanae. Ex. B. Don

Office, ***again including Mr. Kanae. Ex. A.***

[2] Meaning the FAA Honolulu Flight Standards District Office.

Hamilton was then known to Mr. Crowe as described in Ex. A, and also based on official FAA correspondence Hamilton sent to Mr. Crowe in April 2003. *See* Exs. C & D. Again, while acting in his position as Supervisor of the Honolulu Operations Unit with responsibility and authority over Principal Operations Inspectors within the Honolulu Flight Standards District Office, including Mr. Kanae, **Mr. Hamilton signed the FAA June 24, 2002 "stop operations" letter "for" Clarence Kanae**. *See* Ex. B.

As a result of the letter, Americopters' office, reservations center, retail outlet and operations were shut down, causing Americopters to lose revenue and profit, business goodwill, future business, and to incur substantial expenses in relocating its flights to another, far inferior, location in Harmon Industrial Park adjacent to an abandoned auto junk yard. Crowe Decl., ¶ 9. Compl., ¶ 13.

On August 4, Americopters wrote a letter of protest to FAA employee Peter Beckner, another of Mr. Kanae's superiors in the Honolulu Flight Standards District Office. Compl., ¶ 13. The FAA ignored that letter as well, and not surprisingly, did not return Americopters' phone calls. Compl., ¶ 13.

Thereafter, the FAA summarily denied Americopters further and repeated requests to be heard and for due process of law, including denying Americopters administrative review under the FAA's own administrative procedures. Compl., ¶ 14. For example, Americopters requested an administrative hearing with the FAA, which request the FAA denied. Ex. E. In its denial, the FAA advised Americopters that a formal complaint under FAR 13.5 would not be proper for complaints against FAA employees acting within the scope of their employment. Ex. E. Americopters still filed an FAR 13.5 complaint, which went unanswered. This lawsuit ensued.

B. THE FAA DENIES APPELLANTS JUDICIAL RELIEF IN THE DISTRICT COURT OF GUAM

On February 18, 2003, Americopters filed a Complaint with the District Court of Guam.

During the pendency of this lawsuit the FAA, through Americopters' legal counsel David Ledger, requested a settlement meeting, [3] which was agreed to and held at Americopters' facility in Guam. Mr. Kanae and Mr. Hamilton attended on behalf of the FAA. Crowe Decl., ¶ 11. Mr. Crowe and Americopters' legal counsel David Ledger were present. Crowe Decl., ¶ 11. During the meeting it was apparent that Mr. Hamilton was Mr. Kanae's superior/supervisor and that he fully endorsed the actions Mr. Kanae had taken to stop Americopters from operating at Chucks. Crowe Decl., ¶ 11; Ledger Decl., ¶ 7. In particular, Mr. Hamilton stated that Mr. Kanae had conducted a proper inspection of Americopters' facility, that he and Kanae were justified in sending the June 22, 2004 letter, and that Americopters would either have to abide by the letter and correct the deficiencies Mr. Kanae had noted during his inspection or not fly out of the Chuck's location. Crowe Decl., ¶ 11. Mr. Hamilton also confirmed that he signed the FAA's June 24, 2002 letter instructing Americopters to stop flying. Ledger Decl., ¶ 7.

On May 30, 2003, the FAA originally filed a motion to dismiss on the grounds that Mr. Kanae's June 24, 2002 letter was a "final order" under 49 U.S.C. § 46110, depriving the District Court of Guam of jurisdiction over the Complaint and instead vesting jurisdiction in the Ninth Circuit Court of Appeals. The Court heard the motion on August 1, 2003. During the hearing, the FAA's counsel confirmed Mr. Kanae's authority by confirming Americopters had no choice but to abide by Mr. Kanae and Mr. Hamilton's June 24, 2002 letter.[4]

---

[3] The FAA's legal counsel was Kenneth Kaplan. Kaplan contacted Ledger to request the settlement discussions.

[4] Mr. Kaplan was shifty in his attempt to down-play his admission by referring to Kanae as an "official by-stander" of the FAA. Ex. F, 14:25 - 15:1-3.

THE COURT: Well, let me ask you something here, Mr. Kaplan, Let's suppose that this outfit had chosen to violate Balton's letter and whatever other direction that they were given that's not a final order by the FAA, okay, let's suppose that they said, well, forget this, we'll still land anyway; what would happen to them?

MR. CAPLAN: If they chose to violate?

THE COURT: Yes.

MR. CAPLAN: Then they would act at their peril, certainly, because the government, the FAA could certainly take appropriate action to seek either compliance through perhaps a cease and desist order, or perhaps seek an enforcement action to take punitive actions through either certificate action or civil penalty. They would act at their peril certainly.

. . .

MR. CAPLAN: We believe that in this case and under any statute or federal regulations, the persons that are subjected to it have an obligation to obey those regulations, those statutes, and act at their peril when they fail to do so.

Ex. F at 7:17 – 8:7, 8:23 – 9:2. Further confirming Kanae's authority as an FAA inspector and endorsing his actions, FAA counsel Kaplan reiterated that "the plaintiffs have been placed on notice by the federal government that if they engage in this action, it may, ***the opinion of at least knowledgeable officials,*** be inconsistent with the regulations and the statute, and that they act at their peril" and "run the risk of being prosecuted, perhaps, of having a cease and desist order taken against them." Ex. F at 10:22 – 11:2, 11:5-7 (emphasis added).

The District Court granted the FAA's motions to dismiss ruling that Kanae's letter was indeed a final order within the meaning of 49 U.S.C. § 46110 vesting exclusive jurisdiction with the Ninth Circuit. Americopters appealed the District Court's decision. The Ninth Circuit affirmed in part, reversed in part, and remanded Americopters' due process claims, holding that "the district court has jurisdiction to consider constitutional claims for damages." *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 738 (9th Cir. 2006).

On February 22, 2007, Americopters filed its First Amended Complaint, which in accordance with the Ninth Circuit remand, alleged one count: violation of due process. The FAA's Answer **denies** that it violated Americopters' rights to due process. *See* Answer filed March 13, 2007, ¶ 18 (FAA denies that it violated Americopters' due process rights).

On March 13, 2007, the FAA filed an Amended Motion to Dismiss for Failure to State a Claim or, In the Alternative, to Transfer. Americopters noticed the deposition of Don Hamilton in order to discover facts to oppose the FAA's dismissal motion. In particular, facts to show, as it has been able to partially show here through the use of Exhibits and Declarations, that Kanae's actions depriving Americopters of due process were not only FAA-authorized acts, but ratified as well. The FAA then filed a Motion to Suppress Deposition on the grounds that when a motion to transfer an action to the Court of Federal Claims is pending, depositions and all such proceedings are stayed until after the District Court rules on the motion to transfer. Americopters' opposition to the motion to suppress contended that if the Court did not allow the taking of the deposition, that it should stay the hearing on the motion to dismiss until the deposition could be taken. *See* Pl.'s Opp. to Def.'s Mot. To Suppress Deposition of Donald Hamilton, filed Apr. 3, 2007. Acting on the issue, the Magistrate Judge has issued a recommendation that should the Court deny the motion to transfer, that the deposition of Don Hamilton be allowed to proceed before the District Judge reaches the merits of the motion to dismiss.

## III. LEGAL DISCUSSION

### A. THE COURT SHOULD CONSIDER AND DENY THE MOTION TO TRANSFER BEFORE CONSIDERING THE MOTION TO DISMISS.

As stated in Americopters' Opposition to the FAA's Motion to Suppress the deposition of Don Hamilton, the FAA's motion to dismiss must be held in abeyance because, under 28 U.S.C. § 1292, *all* actions must be held in abeyance once a motion to transfer has been filed. Moreover,

the Magistrate has recommended that the District Judge allow the deposition of Mr. Hamilton to proceed if the motion to transfer is denied. Americopters is gratified with the Magistrate's ruling and renews its request to allow the deposition of Mr. Hamilton to proceed should the motion to transfer be denied.[5]

B. THE FEDERAL COURT OF CLAIMS HAS ISSUED RULINGS IN DUE PROCESS CASES SIMILAR TO THIS ONE WHICH SHOW THAT THE COURT OF CLAIMS LACKS JURISDICTION OVER THIS CASE AND THAT THIS CASE MUST REMAIN IN THE DISTRICT COURT.

The Court of Federal Claims is a court of exceptionally limited jurisdiction. In particular, jurisdiction is limited to hear claims in excess of $10,000 and founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States. 28 U.S.C. § 1491. The Little Tucker Act grants jurisdiction, concurrent with the United States Court of Federal Claims, to federal district courts for the same types of claims allowed by the Tucker Act that do not exceed $10,000. 28 U.S.C. § 1346(a)(2).

However, under the Tucker Act and the Little Tucker Act a plaintiff's right to compensation must stem from a substantive right in some other source of law, such as "the Constitution, or any Act of Congress, or any regulation of an executive department," 28 U.S.C. § 1346(a)(2), that "can be fairly interpreted as ***mandating*** compensation by the Federal Government for the damage sustained," *Mitchell II,* 463 U.S. 206, 217 (1983) (emphasis added). In other words, in cases where the only controversy is the ***amount*** of compensation to be paid as opposed to whether or not the Government is liable to pay any compensation.

The Federal Court of Claims has ruled that it does ***not*** have jurisdiction over claims where, as here, the plaintiff asserts violations of due process under the Fifth Amendment, which

[5] Even though here without the benefit of the deposition Americopters has been able to show Kanae and Hamilton acted with authority in their official capacities with the FAA, substantially more and detailed evidence is possible by way of a deposition.

does *not* mandate compensation by itself. *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997). In *Crocker* the Mississippi Sheriff's Department seized currency and savings bonds during a search of the plaintiff's residence, and turned over the currency and bonds to the Drug Enforcement Agency ("DEA"). *Id.* at 1475. DEA then published notices of intended forfeiture, and notified the plaintiff of her right to file a claim. *Id.* at 1475-76. The plaintiff filed a claim, but the DEA alleged that her claim was submitted after the deadline. *Id.* at 1476. It therefore forfeited her bonds. *Id.*

The plaintiff then filed suit in the Court of Federal Claims seeking just compensation for the wrongful seizure and forfeiture without due process. *Id.* The Court ruled that it could ***not*** adjudicate her due process claims, and that in order for her to establish jurisdiction within the Court of Federal Claims, "she would have had ***to concede the lawfulness*** of the seizure and the forfeiture." *Id.* (emphasis added). However, the gravaman of her complaint was in sharp contrast - that is, the ***un***lawfulness of the seizure and her due process rights, which, the Court held, belonged in the district courts of the United States and not the Federal Court of Claims. *Id.* *See also Achenbach v. U.S.*, 56 Fed. Cl. 776, 776 n.1 (Fed. Cl. 2003) (court may only entertain actions based on some substantive provision of law, regulation, or the Constitution which fairly can be construed as ***mandating compensation***; ***due process clause of the Fifth Amendment is not money-mandating, and thus Court of Federal Claims does not have jurisdiction to hear these claims***).

The FAA's cases do not dispute this ruling or point. *Regional Rail Reorganization Act Cases*, 419 U.S. 102 (1074) states: "The taking of private property by an officer of the United States for public use, without being authorized, *expressly or by necessary implication, to do so by some act of Congress*, is not the act of the government, and hence recovery is not available in the Court of Claims." *Id.* at 126-27 n.16. The FAA and *Regional Rail Reorganization Act Cases*

also cite *Hooe v. United States*, 218 U.S. 322, 335 (1910), which states that "[i]t cannot be said that any claim for a specific amount of money against the United States is founded on the Constitution, unless such claim be either expressly or by necessary implication authorized by some valid enactment of Congress."

Here, Americopters' claim against the FAA is based solely on the due process clause of the Fifth Amendment. *See* Compl. The claim relates to violations of due process, namely, the Federal Aviation Administration's failure to afford Americopters any due process before and after its employees Kanae and Hamilton acting in official and authorized capacities caused Americopters to stop flying without prior notice or an opportunity to be heard. The allegations concerning the FAA's violations of Americopters due process rights are adequately stated in the First Amended Complaint. However, this type of claim based on the Fifth Amendment, which ***does not specifically mandate compensation***, does not confer jurisdiction in the Court of Federal Claims, as established in *Crocker*.

Indeed, the FAA has expressly contested liability for the due process violations. *See* Answer filed Mar. 13, 2007.[6] Moreover, Americopters hardly concedes the lawfulness of the FAA's actions. *Crocker*, 125 F.3d at 1476. Should the FAA concede liability as a result of Mr. Kanae's authorized and ratified actions, leaving in controversy only ***the amount*** of compensation due, only then would this case be within Federal Court of Claims exclusive jurisdiction. Absent either party's concession, this disputed issue of whether or not a violation of due process occurred puts this issue squarely before this Court, and clearly precludes any exercise of jurisdiction by the Federal Court of Claims.

---

[6] The FAA claims that the Ninth Circuit agreed that the actions of Mr. Kanae were unauthorized. The Ninth Circuit made no such finding. *See* 441 F.3d 726. The discussion on "authority" is clearly limited to the authority of a select few FAA officers to issue" final orders" within the meaning of 49 U.S.C. 46110. Americopters' due process claim has nothing to do with an FAA "final order" but rather the authorized actions taken by Kanae and Hamilton to stop Americopters from flying.

The FAA blithely yet understandably characterizes Americopters' claim as solely a "takings claim", and also understandably ignores Americopters' assertion that the FAA violated its due process rights. The FAA asserts that because it was an "unauthorized takings", there can be no jurisdiction. While Americopters does seek damages in the form of just compensation, the ***unlawfulness*** of the FAA's conduct – the stopping of income-producing flights without due process - is at issue, not just the issue of what amount of just compensation is due. *See Florida Rock Indus., Inc. v. United States*, 791 F.2d 893, 898-99 (Fed. Cir. 1986) (Tucker Act does not create jurisdiction in the Court of Federal Claims for a party contesting the propriety of a taking). Clearly then, should this case be transferred, the Court of Federal Claims will have no jurisdiction to hear this dispute. Americopters expects that if this case is transferred, the FAA will then move to dismiss on the grounds that it contests liability and that such contest means that the case is not proper before the Federal Court of Claims.[7]

C. SHOULD THE COURT ENTERTAIN THE MOTION TO DISMISS, THIS CASE IS NOT PROPER FOR DISMISSAL.

If the Court proceeds to consider the motion to dismiss, the issue is whether Americopters has sufficiently stated a claim for relief under the Due Process Clause of the Fifth Amendment.[8] Under the Fifth Amendment, due process requires the government to provide notice reasonably calculated to apprise interested parties of the pendency of an action and an opportunity to present their objections. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

---

[7] Though Americopters does not profess to have a crystal ball to predict the FAA's next move, it does have the benefit of hindsight. As noted above, initially at the District Court to win a dismissal the FAA claimed that since Kanae had issued a "final order" jurisdiction was vested exclusively at the Ninth Circuit. Once at the Ninth Circuit, however, the story changed. Again to win a dismissal the FAA (successfully) argued that the Ninth Circuit lacked jurisdiction because no "final order" had ever been issued. Now we are asked to believe that if transferred to a court clearly lacking jurisdiction, the FAA will not again seek dismissal on lack of jurisdiction.

[8] As noted above, Americopters asks that if the motion to dismiss is continued it be allow the deposition of Don Hamilton in order to further prove that Mr. Kanae's actions were authorized and ratified, and that it be offered a further opportunity to supplement this opposition.

The court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally "no," the motion must be denied. *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957); *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978). Thus, a Rule 12(b)(6) dismissal is proper only where there is *either* a "lack of a cognizable legal theory" *or* "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988); *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir. 1995) ("A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim").

In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir. 1996). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Hydrick v. Hunter*, 466 F.3d 676, 686 (9th Cir. 2006). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

The Complaint sufficiently alleges (and the facts show) that the actions of Mr. Kanae were authorized, and that (admittedly) the FAA did not provide notice reasonably calculated to apprise Americopters that its operations were in jeopardy of being closed down.[9] The allegations of the Complaint are also substantially supported by the record which clearly shows that Mr. Kanae had the authority to act on behalf of the FAA in this particular instance and did so, and

[9] It is undisputed that the FAA's June 24, 2002 letter signed by Hamilton for Kanae was the first and only notice to Americopters to stop revenue-producing flights.

that the FAA, in particular Don Hamilton, FAA Counsel Monroe Bolton and Kenneth Kaplan, as well as other FAA officials, ratified his actions.

For a period of approximately seven years Mr. Kanae held himself out to Americopters as an agent of the FAA with authority to conduct pilot checkrides and inspect flight facilities. His authority was confirmed by his superiors, first William Miller and then Don Hamilton, on more than one occasion. Exs. A, B. Don Hamilton - for Mr. Kanae - signed the FAA's June 22 letter stopping Americopters flights. Ex. B. During a settlement meeting Mr. Hamilton conveyed to Americopters' counsel that Mr. Kanae's actions were authorized and that "settlement" required Americopters to comply with fixing the list of deficiencies noted by Kanae. Kanae's actions were furthermore ratified by the FAA counsel Kenneth Kaplan's arguments before this Court during the hearings on the FAA's first motion to dismiss. Specifically, ***Mr. Kaplan admitted to the District Judge that Americopters had no choice but to comply with Mr. Kanae's order, or act at its peril and run the risk of being prosecuted.***

The due process violation is also clearly established. Before providing Americopters with any notice or a hearing pertaining to potential violations, or even responding to Americopters' requests for an elaboration of Mr. Kanae's comments made during his visit to Americopters' site, the FAA through Kanae and Hamilton stated in writing that Americopters had to stop flying revenue producing flights. Consistent with Kanae's admonition, Americopters complied. Americopters tried five times to communicate with Mr. Kanae to address his concerns, but Mr. Kanae never responded until he sent the June 22 letter. Thereafter, Americopters submitted multiple letters of protest and requests for hearings, again to no avail. FAA Regional Counsel, Monroe Balton, for example, informed Americopters its request for a hearing was denied, and also advised Americopters that a formal complaint would be applicable with Mr. Kanae acting within the scope of his employment. When Americopters filed that

administrative complaint, it was ignored and never answered. Americopters' rights to due process of law were therefore violated because it was not afforded any opportunity to comment or be heard. These facts are stated within the Complaint and have support in the record.

## IV. CONCLUSION

Jurisdiction over this case does not lie with the Federal Court of Claims because Americopters asserts a violation of due process against the FAA which the FAA obviously disputes. The Federal Court of Claims can only adjudicate cases in which the right to just compensation is not at issue and where a constitutional provision, statute, or regulation mandates the compensation of money.

Moreover, should this Court entertain the FAA's motion to dismiss, dismissal is not proper because Americopters has sufficiently alleged, and the record amply supports, that the FAA has violated Americopters' rights to due process.

For these reasons, the Court should deny the FAA's motion in its entirety.

DATED: Hagåtña, Guam, April 17, 2007.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Attorneys for Plaintiff
Jan's Helicopters Service, Inc.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Plaintiff
Americopters, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF GUAM

AMERICOPTERS LLC

Plaintiff,

vs.

FEDERAL AVIATION ADMINISTRATION

Defendant.

CIVIL ACTION NO. CV03-0000

**DECLARATION OF KENNETH RUFUS CROWE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; EXHIBITS A-D**

I, KENNETH RUFUS CROWE, pursuant to 28 U.S.C. Section 1746, declare under penalty of perjury that the following statements are true and correct:

1. I have personal knowledge of the facts stated in this declaration.

2. I would testify as to these facts if called by the Court.

3. I am the President, major shareholder and Director of Operations for Micronesian Aviation Corporation dba Americopters.

4. As Director of Operations, I am the direct liaison with the Federal Aviation Administration. It is my responsibility to insure that the company and its aircraft and personnel are in compliance with Federal Aviation Regulations. In addition, I have for 15 years worked

directly with my designated Principal Operations Inspector at the Honolulu Flight Standards District Office to maintain the company's Air Carrier Certificate (FCYA785B) and Operating Certificate (FCYL785B).

4. From about December of 2000 until about January of 2007, FAA employee Mr. Clarence K. Kanae was my Principal Operations Inspector and was based at the Honolulu Flight Standards District Office. As Principal Operations Inspector, Mr. Kanae would inspect our flight operations facilities in Guam and Saipan, oversee our operations, issue Operations Specifications and conduct required pilot flight proficiency checks. Mr. Kanae had direct authority over our company operations.

5. On or about April 9, 1998 Mr. William L. Miller served as Supervisor, Operations Unit, at the Honolulu Flight Standards District Office. In this position Mr. Miller was responsible for the Principal Operations Inspectors within the Honolulu Flight Standards District Office, including Mr. Kanae. See Exhibit A to this Declaration from Americopters' business records.

6. On or about April 13, 1998, Mr. Miller was promoted to another position within the FAA and was replaced by Mr. Mahlon (Don) Hamilton. Mr. Miller wrote to Americopters to inform us of his promotion (Exh. A) and that Mr. Hamilton was taking over as Supervisor of the Honolulu Operations Unit with responsibility and authority over Principal Operations Inspectors within the Honolulu Flight Standards District Office, including Mr. Kanae. Exh. A.

7. On February 14, 2004 Principal Operations Inspector Clarence Kanae of the Honolulu Flight Standards District Office conducted an official inspection of Americopters' flight operations facility, which is located at Chucks Steakhouse in Upper Tumon, Guam. I personally attended this inspection and Mr. Kanae conducted it under his authority as an FAA Principal Operations Inspector. Prior to and during the inspection Mr. Kanae displayed his FAA

identification. Mr. Kanae noted what he considered to be deficiencies and conditions which needed to be corrected. In the following weeks I sent several letters to Mr. Kanae at his FAA office in Honolulu to confirm the deficiencies he had noted and to describe the remedial actions Americopters would take to correct them.

8. On June 22, 2004 the FAA, through Principal Operations Inspector Clarence Kanae, wrote a letter to Americopters instructing Americopters to stop conducting flights from our operations facility. The letter is attached to this Declaration as Exh. B. Don Hamilton was then known to me as described in Exh. A and also based on official FAA correspondence he sent to me in April 2003, see Exhs. C & D. While in his position as Supervisor of the Honolulu Operations Unit with responsibility and authority over Principal Operations Inspectors within the Honolulu Flight Standards District Office, including Mr. Kanae, Mr. Hamilton signed the FAA letter "for" Clarence Kanae.

9. As a result of receiving the FAA letter from Mr. Kanae and Mr. Hamilton, Americopters stopped flights from the Upper Tumon location and began operating from a facility in Harmon, Guam.

10. On February 18, 2003, Americopters filed this lawsuit against the FAA to contest the manner in which the FAA through Mr. Kanae and Mr. Hamilton had stopped Americopters from operating at Chuck Steakhouse.

11. During the time this lawsuit has been pending the FAA through Americopters' legal counsel requested a settlement meeting, which was held at Americopters' facility in Guam. Mr. Kanae and Mr. Hamilton attended on behalf of the FAA. I and Americopters' legal counsel David Ledger were present. During the meeting it was apparent that Mr. Hamilton was Mr. Kanae's superior/supervisor and that he fully endorsed the actions Mr. Kanae had taken to stop Americopters from operating at Chucks. In particular, Mr. Hamilton stated that in his opinion

Mr. Kanae had conducted a proper inspection of Americopters' facility, that he (Kanae) was justified in sending the June 22, 2004 letter and that Americopters would have to abide by the letter or correct the deficiencies Mr. Kanae has seen during his inspection.

12. I declare under penalty of perjury that the foregoing paragraphs 1-11 are true, correct and complete to the best of my knowledge and belief.

Executed this 13th day of April 2007.

KENNETH RUFUS CROWE

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Plaintiff
Americopters, LLC

IN THE DISTRICT COURT OF GUAM

| AMERICOPTERS, LLC<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL AVIATION ADMINISTRATION<br><br>Defendant. | CIVIL ACTION NO. CV03-00005<br><br>**DECLARATION OF DAVID LEDGER IN SUPPORT OF PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, TO TRANSFER** |
|---|---|

I, DAVID LEDGER, pursuant to 28 U.S.C. Section 1746, declare under penalty of perjury that the following statements are true and correct:

1. I have personal knowledge of the facts stated in this declaration.

2. I would testify as to these facts if called by the Court.

3. I am licensed to practice law before all courts in Guam and am admitted to practice in this Court.

4. I am legal counsel for Americopters.

5. On June 22, 2002, the FAA, through Principal Operations Inspector Clarence Kanae, wrote a letter to Americopters instructing Americopters to immediately cease flight

operations from our operations facility. *See* Ex. A. FAA employee Don Hamilton signed the letter "for" Clarence Kanae. As a result of receiving Mr. Kanae and Mr. Hamilton's letter, Americopters ceased operating at the Upper Tumon location and began operating from a facility in Harmon, Guam.

6. On February 18, 2003, Americopters filed this lawsuit against the FAA to contest the manner in which the FAA through Mr. Kanae and Mr. Hamilton had stopped Americopters from operating at Chuck Steakhouse.

7. During the time this lawsuit has been pending the FAA requested a settlement meeting at Americopters' facility in Upper Tumon, Guam. At this meeting Mr. Kanae and Mr. Hamilton introduced themselves to me stating they were from the Honolulu FAA Flight Standards District Office and were on Guam on FAA business. I asked them if they were authorized to settle the case on behalf of the FAA and they said yes and that if Americopters proposed settlement terms they were not authorized to accept that they would relay Americopters' proposal to FAA legal counsel. Americopters' President Kenneth Rufus Crowe was present during the meeting. During our settlement discussions it was apparent that Mr. Hamilton was the top-ranking FAA employee and Mr. Kanae's superior, and that he (Hamilton) fully endorsed the actions Mr. Kanae had taken to stop Americopters from operating at Chucks. Mr. Hamilton also confirmed to me that he had signed the June 22, 2004 letter described in paragraph 5 above.

8. Attached hereto as Exhibit E is a true and correct copy of a letter dated September 19, 2002, from FAA Regional Counsel Monroe Balton to myself.

9. Attached hereto as Exhibit F is a true and correct copy of pertinent pages of the transcript of proceedings before this Court held on August 21, 2003.

Executed this 17th day of April 2007 at Hagåtña, Guam.

DAVID LEDGER

# EXHIBIT

# "A"



U.S. Department of Transportation
**Federal Aviation Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845 USA

Phone: (808)837-8300
FAX: (808)837-8399

April 9, 1998

Micronesian Aviation Corporation
P.O. Box 1160
Saipan, MP 96950

Sir/Madam:

I am pleased to inform you that Inspector Gino D. Rezzonico has recently been promoted and now joins the ranks of our Principal Operations Inspectors (POI's). Many of you know Gino as he has been working as an Aviation Safety Inspector in our unit for about a year. Gino is rated in helicopters and airplanes and came to us from one of the Air Carriers here in Honolulu.

It is a pleasure to have an adequate Inspector staff after being understaffed for so many years. Gino's promotion allows us to readjust the assignments of some of the inspectors who had more than their fair share of responsibilities. I am enclosing a listing of all of the FAR's Part 133 Rotorcraft External Load Operators, Part 135 Air Carrier Operators, Part 137 Agricultural Aircraft Operators and Part 141 Pilot Schools that are managed by our unit. The listing includes both the previously assigned POI and the newly assigned POI which is effective immediately. Please refer to the listing to see if you have a new POI assigned. If so, all future correspondence should be addressed with that inspector.

POI's and their phone number are as follows:

| | |
|---|---|
| Jeffrey T. Weller | (808)837-8361 |
| Charles C. Cantu | (808)837-8367 |
| Kent R. Gibbons | (808)837-8383 |
| Clarence K. Kanae | (808)837-8311 |
| Joel M. Koff | (808)837-8309 |
| Dennis L. Noll | (808)837-8324 |
| Gino D. Rezzonico | (808)837-8385 |

Others assigned to our unit are:

Johannes (Hans) C. Linschoten, Aviation Safety Inspector
Denise H. Mishima, Aviation Safety Technician
Diana M. Tanaka, Aviation Safety Technician
Lei Galang, Aviation Safety Assistant
Elizabeth K. Ontai, Aviation Safety Assistant

I'm also taking this opportunity to say thank you to each of you that I have worked with over the past 8-1/2 years. I bid for and was selected as the Training Program Manager here at the Honolulu FSDO. It is a new position in many of the large offices throughout the FAA. I am looking forward to the challenge. This assignment is effective on Monday, April 13, 1998. Mahlon (Don) Hamilton, who has been the Supervisor for the Geographic Surveillance Unit, will be the new Supervisor, Operations Unit. Don is moving into my office and you will be able to reach him at (808)837-8360.

Again, thanks to each of you for the cooperation you have shown during my tour as Supervisor of the Operations Unit.

Sincerely,

William L. Miller
William L. Miller
Supervisor, Operations Unit

Enclosure

# EXHIBIT

# "B"



U.S. Department of Transportation
**Federal Aviation Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

June 24, 2002

**Certified-Return Receipt**

Micronesian Aviation Corporation
DBA Americopters
Attn: Mr. Kenneth R. Crowe
P.O. Box 9099
Tamuning, GU 96931

Dear Mr. Crowe:

This letter is to inform you that the use of the roof top as a helicopter-pad, at Chuck's Steak House, is considered unsafe, and does not meet the Federal Aviation Administration Advisory Circular 150-5390-2A Heliport Design requirements. This AC is Advisory in nature; however, this office feels that FAR 91.13 will apply to this operation if the AC is not followed. Therefore, this office is requiring that your company immediately cease use of the Chuck's Steak House rooftop for all flight operations.

If you have any further questions I may be reached at (808) 837-8311.

Sincerely,

Don Hamilton for CKK

Clarence K. Kanae
Principal Operations Inspector

EXHIBIT B

# EXHIBIT

# "C"



U.S. Department of Transportation
**Federal Aviation Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

April 24, 2003

Micronesian Aviation Corporation
P.O. Box 501160
Saipan, MP 96950

Gentlemen:

Enclosed is paragraph A002 to your Operations Specifications. This mandatory change is due to:

| HQ Control | HQ Revision | Summary of Changes |
|---|---|---|
| 03/11/03 | 080 | Updated with FDE, RAIM, & WAAS definitions. |

Please sign both the original and the "File Copy" after item 4 in the signature block and include the date in the appropriate spaces provided. Once signed, you acknowledge and agree to comply with the operations specifications. In accordance with 14 CFR part 119.51, if you object to these revised operations specifications, you have 7 days in which to submit written information, views, and arguments on the revisions. Otherwise, please retain the original and return the "File Copy" to the Honolulu Flight Standards District Office within 7 days of receipt of this letter.

Sincerely,

Don Hamilton

Don Hamilton
Supervisor, Operations Unit

INSERTED IN ALL MANUALS 5-10-03 m.g.f.

# EXHIBIT

# “D”



U.S. Department of Transportation
**Federal Aviation Administration**

Western-Pacific Region
Honolulu Flight Standards District Office

135 Nakolo Place
Honolulu HI 96819-1845

Telephone: (808)837-8300
FAX: (808)837-8399

April 29, 2003

Micronesian Aviation Corporation
P.O. Box 501160
Saipan, MP 96950

Gentlemen:

Enclosed is paragraph A003 due to non-mandatory, format changes to your Operations Specifications.

Please sign both the original and the "File Copy" after item 4 in the signature block and include the date in the appropriate spaces provided. Once signed, you acknowledge and agree to comply with the operations specifications. In accordance with 14 CFR part 119.51, if you object to these revised operations specifications, you have 7 days in which to submit written information, views, and arguments on the revisions. Otherwise, please retain the original and return the "File Copy" to the Honolulu Flight Standards District Office within 7 days of receipt of this letter.

Sincerely,

Don Hamilton

Don Hamilton
Supervisor, Operations Unit

Enclosure

INSERTED IN ALL MANUALS 5-16-03 [illegible]

# EXHIBIT

# "E"



U.S. Department
of Transportation
**Federal Aviation
Administration**

Western-Pacific Region
Office of the Regional Counsel

P. O. Box 92007
Los Angeles, CA 90009-2007

SEP 19 2002

David P. Ledger, Esq.
CARLSMITH BALL LLP
134 West Soledad Avenue, Suite
401
P.O. Box BF
Hagatna, Guam 96932-5027

Dear Mr. Ledger:

Re: Requests For Hearings

This is a final response to your requests that the Federal Aviation Administration (FAA) convene hearings to resolve the matters raised in your electronic mail (e-mail) to Lewis Ziegler on August 9, 2002, regarding the operations of the Philippine registered Caribou owned by your client, Jans Helicopter Service and your letters to me dated August 13, 2002, regarding the Caribou and raising another matter, the letter issued by the Honolulu Flight Standards District Office to another of your clients, Americopters LLC, directing them to cease operating from the heliport located on the roof of Chuck's Steakhouse in Upper Tumon, Guam.

In support of your requests for hearings in these matters, you cite to Federal Aviation Regulation (FAR) 13.20(b). This FAR is part of Subpart C of Part 13. Subpart C applies to legal enforcement actions, and FAR 13.20 sets forth the procedures for requesting a hearing where the FAA has issued orders of compliance, cease and desist orders, orders of denial, and other orders. Only the following individuals have authority to issue such orders, the Chief Counsel, the Deputy Chief Counsel, and each Assistant Chief Counsel (including Regional and Center Counsels). See FAA Order 2150.3A, para. 1209(b). No such orders were issued with respect to the operations of the Caribou by Jans Helicopter Service or with respect to Americopters flights using the Chuck's Steakhouse heliport.

Neither Mr. Ziegler's e-mail to the Guam International Airport Authority nor Mr. Kanae's letter to Mr. Rufus Crowe constitutes an order as that term is contemplated by the Part 13, Subpart C. Therefore your requests are denied.

If you consider filing a formal complaint under FAR 13.5, you should be aware that that section does not apply to complaints against the Administrator or complaints against FAA employees acting within the scope of their employment. FAR 13.5(a).

Sincerely,

Monroe P. Balton
Regional Counsel

# EXHIBIT

# "F"

authority from the Department of Transportation, and it wasn't fair, and therefore, Jan's Helicopters could not operate legally under those circumstances. And that -- but it wasn't a final agency decision, it wasn't an order that the agency itself considered to be final.

In fact, I believe it was the September letter from Mr. Balton, who is the regional counsel for the FAA for the Western Pacific Region, that made it very clear to Mr. Ledger that in neither of these cases were the actions of these inspectors to be considered to be final actions of the agency, because those inspectors weren't authorized to make those kinds of decisions, and that only he as the regional counsel or certain other individuals chosen or delegated could do so, and therefore, these were not decisions that were in effect binding on the plaintiffs in these cases.

THE COURT: Well, let me ask you something here, Mr. Caplan. Let's suppose that this outfit had chosen to violate Balton's letter and whatever other direction that they were given that's not a final order by the FAA, okay, let's suppose that they said, well, forget this, we'll still land anyway; what would happen to them?

MR. CAPLAN: If they chose to violate?

THE COURT: Yes.

MR. CAPLAN: Then they would act at their peril, certainly, because the government, the FAA could certainly take appropriate action to seek either compliance through perhaps a cease and desist order, or perhaps seek an enforcement action to take punitive actions through either certificate action or civil penalty. They would act at their peril certainly.

THE COURT: Well, that's the problem. You have just said what is the problem here, they act at their peril, meaning that there are sanctions that can be imposed, court orders that can be imposed, possibly even contempt.

MR. CAPLAN: Yes, sir.

THE COURT: You're saying on the one hand that this is not a final action, you're saying you can't land, but on the other hand, you know, this is not a final order. Yet, if you violate this order I will smack your fingers and crush them. You know, how can you have it both ways? I have a great deal of difficulty with you talking out of both sides of your mouth in this kind of argument.

MR. CAPLAN: Your Honor, we don't believe we're doing so. We believe that in this case and under any statute or federal regulations, the persons that are subjected to it have an obligation to obey those

regulations, those statutes, and act at their peril when they fail to do so. And that it doesn't require the agency to take affirmative action to seek prosecution, because that's part of the prosecutorial discretion here as to whether to act or not to act.

THE COURT: Well, you're side-stepping the issue here. The issue is that that action, regardless of whether you call it a final act, a final order or whatever, that action has consequences when it's violated, okay. But yet, you have issued that order without giving the required requisite hearing that's required under the statute. That's the issue here. You know, it's not -- prosecutorial discretion has nothing to do with it.

The issue here is whether this court has jurisdiction over this case, whether this ruling, or this letter or whatever, however you choose to characterize it, final response or whatever, is an order that should be appealed to the Ninth Circuit, whether this court has jurisdiction over that. That's the nub of the issue here. And it seems to me that you are saying, well, this is not a final order, on the one hand, but the District Court can't touch it because the Court of Appeals is the one with jurisdiction. See where I'm heading here?

MR. CAPLAN: I think I understand, Your Honor. And I, with all due respect to the court, I don't think I agree with that, Your Honor.

THE COURT: Well, you don't have to agree with me, it's just that it seems to me the logic of it is very compelling. And I'm not angry at you, I'm just kind of excited, because I'm following this logic, and it's leading me to a bureaucratic snag.

Where are these people going to go? We're halfway around the world; where are these people going to go for direction? They've got to go to the local FAA person, FAA person shows them this order that has punitive sanctions, even criminal sanctions possibly based on what you have said, yet you maintain that that is not a final order appealable to the Ninth Circuit. What's the logic here?

MR. CAPLAN: Well, I understand what you're saying, Your Honor, but I believe that the answer is that there are times when that is -- in effect the result is that the government is not required to take affirmative action in these cases to resolve an issue. That the, in effect, the litigants here, the plaintiffs have been placed on notice by the federal government that if they engage in this action, it may, the opinion of at least knowledgeable officials, be inconsistent

with the regulations and the statute, and that they act at their peril.

I don't think I can go much beyond that, sir. I understand what you're saying, though, that it places these activities in limbo, that they run the risk of being prosecuted perhaps, of having a cease and desist order taken against them. But, of course, if that happens, Your Honor, they will then have the opportunity to litigate the agency's position, and to argue that what they did was appropriate. It may affect their ability to take action in the meantime. They may take the risk but --

THE COURT: Yeah. Well, the main thing here is that it seems, we're looking at fairness here too, and that is, that for a governmental agency to have so much power and yet to be trying to, on the one hand to try to say, well, it's not really a final decision; on the other hand saying, well, you can't take us to the court in that jurisdiction, you've got to go to the Ninth Circuit. You know, we're out in the Western Pacific in the middle of nowhere.

And that's the other thing troubling me, is that for a governmental agency to be fence sitting, if I may use that term, fence sitting and then choosing the route, tactically choosing the route, when it's

and my submission. I do apologize. When I did look at it and discussed it with Mr. Caplan, he didn't object to my bringing it into court. It doesn't, of course, undermine our underlying argument that we're in the wrong court.

But as to this argument with Jan's Helicopter, everything Your Honor has been saying, I have to express some amusement because I've had the same concerns myself over the last two days of interaction with Mr. Caplan on this. But as to Jan's Helicopter, I think it's a little different than it is as to Americopters. In Jan's Helicopter, the analogy would be as if a policeman came in, saw someone renting a car and said, hey, you don't have a driver's license, he's not pulling them over, he's not giving them a ticket, he's just saying, you don't have a license.

And in Jan's Helicopter case, they've got a commercial airplane that's registered in the Philippines and they're doing business, and they say, hey, you need a license; the airport agrees they need a license, when I look at it I agree they need a license, and they need to go to Department of Transportation to get that. So going back to FAA and putting the hammer on them and saying, give us a final order, give us a hearing, is not appropriate. Go back to DOT. And

we're just bystanders that are certainly official bystanders here saying, you're not supposed to be driving.

THE COURT: But let's take the logic to the other conclusion. What happens if they go to DOT and DOT says, well, we can only do so much for you, the rest is up to FAA because they control the air traffic or they control fines.

MR. SCHWAB: Then we're back at Americopters.

THE COURT: That's right.

MR. SCHWAB: We're in sort of the washing machine where you're spinning.

THE COURT: That's right, and we need to break out of it. That's all I'm looking for is a way to break out of this snag.

MR. SCHWAB: And without getting into the next case, I'll just say that that takes place in the Ninth Circuit.

THE COURT: Yes. So that's your position?

MR. SCHWAB: It is, Your Honor.

THE COURT: Thank you.

MR. SCHWAB: Thank you.

THE COURT: Let's hear from the plaintiffs. Mr. Ledger.

MR. LEDGER: Good morning, Your Honor. Thank

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on April 17, 2007, I will cause to be served, via hand delivery, a true and correct copy of PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, TO TRANSFER; DECLARATION OF RUFUS CROWE; DECLARATION OF DAVID LEDGER; EXHIBITS A-F: DECLARATION OF SERVICE upon the following Counsels of record:

Mikel W. Schwab
Assistant U.S. Attorney
OFFICE OF THE UNITED STATES ATTORNEY
DISTRICT OF GUAM AND CNMI
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagåtña, Guam USA 96910
Attorneys for Plaintiff United States of America

Executed this 17th day of April 2007 at Hagåtña, Guam.

DAVID LEDGER