CLERK'S OFFICE COPY

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### NOTICE OF ENTRY OF
### JUDGMENT ACCOMPANIED BY OPINION

OPINION FILED AND JUDGMENT ENTERED: 04/14/08

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

No costs were taxed in this appeal.

Regarding exhibits and visual aids: Your attention is directed to FRAP 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)


JAN HORBALY
Clerk


cc:    David Ledger
       Kyle E. Chadwick



AMERICOPTERS V FAA, 2007-1411
DCT - GU, 03-CV-00005


RECEIVED
APR 21 2008
DISTRICT COURT OF GUAM
HAGATNA, GUAM

# United States Court of Appeals for the Federal Circuit

2007-1410

JAN'S HELICOPTER SERVICE, INC.,

Plaintiff-Appellant,

v.

FEDERAL AVIATION ADMINISTRATION,

Defendant-Appellee.

------------------------------------------

2007-1411

AMERICOPTERS, LLC,

Plaintiff-Appellant,

v.

FEDERAL AVIATION ADMINISTRATION,

Defendant-Appellee.

David P. Ledger, Carlsmith Ball LLP, of Hagatna, Guam, argued for plaintiff-appellant in Appeal Nos. 2007-1410 and 2007-1411. With him on the briefs was Elyze J. McDonald.

Kyle E. Chadwick, Senior Trial Counsel, Commerical Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee in Appeal Nos. 2007-1410 and 2007-1411. With him on the briefs was Jeanne E. Davidson, Director.

Appealed from: United States District Court for the District of Guam

Chief Judge Frances M. Tydingco-Gatewood

# United States Court of Appeals for the Federal Circuit

2007-1410

JAN'S HELICOPTER SERVICE, INC.,

Plaintiff-Appellant,

v.

FEDERAL AVIATION ADMINISTRATION,

Defendant-Appellee.

------------------------------------

2007-1411

AMERICOPTERS, LLC,

Plaintiff-Appellant,

v.

FEDERAL AVIATION ADMINISTRATION,

Defendant-Appellee.

Appeals from the United States District Court for the District of Guam in case nos. 03-CV-00002 and 03-CV-00005, Chief Judge Frances M. Tydingco-Gatewood.

---

DECIDED: April 14, 2008

---

Before LINN, DYK, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge DYK. Circuit Judge PROST dissents in part.

DYK, Circuit Judge.

Appellants Jan's Helicopter Service, Inc. ("Jan's") and Americopters, LLC ("Americopters"), appeal from decisions of the District Court of Guam transferring their

claims against appellee Federal Aviation Administration ("FAA") to the United States Court of Federal Claims under 28 U.S.C. § 1631 (2000). Appellants are seeking money damages against the United States in excess of $10,000 for alleged regulatory takings. Therefore under the Tucker Act, 28 U.S.C. § 1491(a)(1), the only court that could have subject matter jurisdiction over their claims is the Court of Federal Claims. We affirm the order of the District Court of Guam transferring appellants' claims to that court.

## BACKGROUND

Jan's and Americopters both were engaged in helicopter-related businesses in Guam until 2002. Jan's was in the business of transporting helicopters by airplane from Guam International Airport to rental and lease customers in Micronesia. Americopters provided sightseeing helicopter rides to tourists in Guam, using the roof of a restaurant as a takeoff and landing site. Appellants allege that actions by the FAA in 2002 forced them to cease operations. Jan's alleges that on July 31, 2002, Lewis I. Zeigler, an FAA employee in San Francisco, sent an e-mail message to the Guam International Airport authorities directing the airport to halt Jan's flight operations because its transport aircraft did not have authority to operate. On August 9, 2002, airport authorities denied Jan's transport aircraft access to the airport taxiway, allegedly as a result of Zeigler's e-mail. A second FAA employee, Monroe P. Balton, subsequently informed Jan's that, as "a preliminary finding," "it appears that Mr. Zeigler's conclusion was accurate." Jan's J.A. at 67. Guam airport authorities issued a notice on September 13, 2002, stating that, based on Balton's preliminary finding, the airport would restrict Jan's from using its transport aircraft "for commercial air activity at or out of our Airport." Id. at 70.

Americopters alleges that on June 24, 2002, Clarence Kanae, an FAA employee in Honolulu, issued a formal written statement directing Americopters to cease its flight operations because its rooftop helicopter-pad was unsafe and did not meet applicable design requirements.

Both Jan's and Americopters responded to the FAA's actions by seeking various forms of administrative review, including requesting hearings and filing formal complaints with the FAA. The FAA denied or failed to respond to each of these requests. On September 19, 2002, in a letter sent to appellants' counsel, the FAA explained that appellants were not entitled to hearings under 14 C.F.R. § 13.20(b), because that regulation "sets forth the procedures for requesting hearings where the FAA has issued orders of compliance, cease and desist orders, orders of denial, and other orders," and "[n]o such orders were issued with respect to the operations of [appellants]." Americopters J.A. at 85; Jan's J.A. at 79. This letter also stated that appellants "should be aware that [14 C.F.R. § 13.5] does not apply to complaints against the Administrator or complaints against FAA employees acting within the scope of their employment," id., and suggested that formal complaints filed under that regulation would therefore be unsuccessful. Appellants nonetheless filed formal complaints with the agency under 14 C.F.R. § 13.5 after receiving this letter; appellants allege that these complaints went unanswered.

In February 2003, Jan's and Americopters each filed separate but similar complaints in the District Court of Guam, alleging that the FAA's actions violated its own regulations and "constitute[d] a violation of due process under Amendment V to the United States Constitution and therefore, an illegal taking of [appellants'] property," and

seeking restoration of their operating authority, "civil penalties pursuant to [14 C.F.R. §§ 13.15-.16]," and money damages for the alleged constitutional violations. Complaint at 5, Americopters, LLC v. FAA, No. 03-00005 (D. Guam filed Feb. 18, 2003); see also Complaint at 6-7, Jan's Helicopter Serv., Inc. v. FAA, No. 03-00002 (D. Guam filed Feb. 4, 2003). On motion by the FAA, the district court dismissed the complaints for lack of subject matter jurisdiction. The court held that the claims relating to the FAA's alleged violations of its regulations could only be filed as petitions for review of agency orders with the Ninth Circuit Court of Appeals, pursuant to 49 U.S.C. § 46110(a), and that the constitutional claims were "inescapably intertwined with" the review of the agency orders.

Jan's and Americopters filed original petitions for review of the FAA's orders under section 46110(a) in the Ninth Circuit and also appealed the dismissal of their claims to the Ninth Circuit. The Ninth Circuit criticized both appellants and the government for the procedural confusion. The court stated that Jan's and Americopters "now find themselves in a sort of procedural limbo or netherworld, largely the making of the FAA," because of the agency's inconsistent legal positions as to the availability of review of the administrative actions, but also noted that appellants "contributed to this mess by taking their own wrong turns in litigating this case." Americopters, LLC v. FAA, 441 F.3d 726, 730 (9th Cir. 2006). Addressing the petitions for review, the court held that because the petitions were filed much more than sixty days after the purported final orders were issued, they were therefore untimely. Id. at 733 (finding no reasonable grounds for delay). The Ninth Circuit affirmed the district court's dismissal of the administrative review claims, explaining that "if the Zeigler Email and Kanae Letter are

final orders . . . § 46110 [providing the petition for review procedure] preempts the district court from considering these claims. But if they are not final, then the Administrative Procedure Act ('APA') bars the district court from hearing the case for lack of jurisdiction." Id. at 735 (citing 5 U.S.C. § 704). As to the district court's dismissal of the constitutional claims, however, the court held that the "inescapably intertwined" doctrine, designed to prevent collateral attacks on agency orders and to preserve the jurisdictional limitation of section 46110(a), did not apply in this case. The court explained that "[b]ecause there is no pending FAA order and because there were no previous agency determinations on the merits, no foundation supports the notion of 'intertwining.'" Id. at 738. The Ninth Circuit therefore reversed the dismissal of the constitutional claims and remanded those claims to the district court. Id.

On remand, Jan's and Americopters filed amended complaints, each containing a single claim seeking damages for "violations of due process under Amendment V to the United States Constitution and therefore, an illegal taking of [appellants'] property." Americopters J.A. at 10-11; Jan's J.A. at 11. The FAA filed motions to dismiss the amended complaints under Federal Rule of Civil Procedure 12(b)(6) for failure to state takings claims, because the appellants did not concede the lawfulness of the government's conduct. The FAA also filed motions in the alternative to transfer the cases under 28 U.S.C. § 1631, because appellants were seeking money damages from the United States in excess of $10,000 and therefore the Court of Federal Claims had exclusive jurisdiction under the Tucker Act, 28 U.S.C. § 1491. In separate but nearly identical decisions issued on the same day, the district court did not address the Rule 12(b)(6) motions, because it held that transfer of both actions was proper under section

1631. The court found that Americopters and Jan's were alleging takings claims, based on the Ninth Circuit's description of the constitutional claims as "taking claims" and on the complaints' citation to the Fifth Amendment, and that the damages sought were in excess of $10,000. Because the district court found that it lacked jurisdiction over the claims under the Little Tucker Act, and that jurisdiction would be proper in the Court of Federal Claims under the Tucker Act, the district court granted appellee's motions to transfer the actions under 28 U.S.C. § 1631.

Jan's and Americopters timely appealed the transfer orders to this court. We have jurisdiction pursuant to 28 U.S.C. § 1292(d)(4)(A).

## DISCUSSION

Under 28 U.S.C. § 1631, when a civil action is filed in a federal district court that lacks jurisdiction over the action, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." We review a district court's decision to transfer a case to the Court of Federal Claims without deference. James v. Caldera, 159 F.3d 573, 578 (Fed. Cir. 1998). A case may be transferred under section 1631 only to a court that has subject matter jurisdiction. Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1307 (Fed. Cir. 2007). The propriety of the district court's decision to transfer this case therefore depends on the lack of subject matter jurisdiction in the District Court of Guam and the existence of subject matter jurisdiction in the Court of Federal Claims. See Fisherman's Harvest, Inc. v. PBS & J, 490 F.3d 1371, 1374 (Fed. Cir. 2007).

The statutory provision commonly known as the Tucker Act confers jurisdiction on the Court of Federal Claims "to render judgment upon any claim against the United

States founded either upon the Constitution, or any Act of Congress." 28 U.S.C. § 1491(a)(1). Another provision, known as the Little Tucker Act, grants the district courts concurrent jurisdiction with the Court of Federal Claims for claims against the United States "not exceeding $10,000 in amount" and "founded either upon the Constitution, or any Act of Congress." 28 U.S.C. § 1346(a)(2). The Supreme Court and this court have explained that "the obvious implication of these acts is that Congress intended the Court of Federal Claims to have 'exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000 that is founded either upon the Constitution, or any Act of Congress.'" Christopher Village, L.P. v. United States, 360 F.3d 1319, 1332 (Fed. Cir. 2004) (quoting E. Enters. v. Apfel, 524 U.S. 498, 520 (1998)); see also E. Enters. v. Apfel, 524 U.S. 498, 520 (1998); 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3657 (3d ed. 1998) ("Actions on [Tucker Act] claims exceeding $10,000, except suits in admiralty, must be brought in the Court of Federal Claims.").

Plainly, the District Court of Guam lacked jurisdiction over appellants' amended complaints.[1] The complaints were brought against an agency of the United States and were based entirely on the Fifth Amendment of the U.S. Constitution. As the district

---

[1] Appellants argue that the Ninth Circuit held that the District Court of Guam had subject matter jurisdiction over their constitutional claims, and that the doctrine of law of the case therefore bars us from reconsidering that court's jurisdiction. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988). However, the Ninth Circuit did not address whether the amount of damages sought by appellants required that the case be transferred to the Court of Federal Claims, rather than heard in the district court under the Little Tucker Act; it merely reviewed the district court's application of the "inescapably intertwined" doctrine. Law of the case therefore does not apply to the issue of whether the Court of Federal Claims has exclusive jurisdiction of appellants' claims.

2007-1410
2007-1411                                      7

court noted, appellants each sought well over $10,000 in money damages from the federal government.[2] Therefore, the concurrent district court jurisdiction provided by the Little Tucker Act was not available. See Smith v. Orr, 855 F.2d 1544, 1553 (Fed. Cir. 1988) ("The amount of a claim under the Little Tucker Act, for jurisdictional purposes, is based on the actual recovery sought by a plaintiff pursuant to that claim . . . .").

Because the District Court of Guam lacked jurisdiction over appellants' claims, transfer under section 1631 was proper as long as jurisdiction existed in the Court of Federal Claims. As we noted in Gonzales & Gonzales Bond & Insurance Agency, Inc. v. Dep't of Homeland Sec., 490 F.3d 940 (Fed. Cir. 2007), "we must be satisfied that the transferee court has jurisdiction to hear the case." Id. at 944. The issue therefore is whether appellants' claims fall within the terms of the Tucker Act's waiver of sovereign immunity, even if those claims are frivolous on the merits.[3]

I

---

[2] According to exhibits filed with the FAA's motions to transfer, Americopters was seeking $94,890.37 in damages, and Jan's was seeking at least $30,600 to cover its lease of an alternative aircraft, plus insurance charges on the aircraft.

[3] The dissent appears to suggest that whether Tucker Act jurisdiction requires a nonfrivolous claim on the merits is not presented in this case. We respectfully disagree. Appellants' claims are based on alleged regulatory violations by the government, and our cases have "made clear that a claim premised on a regulatory violation does not state a claim for a taking." Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1369 (Fed. Cir. 2005); see also Rith Energy, Inc. v. United States, 270 F.3d 1347, 1352 (Fed. Cir. 2001) (on petition for rehearing) (stating that "complaints about the wrongfulness of the [government conduct] are . . . not properly presented in the context of [a] takings claim"). Therefore, there is a substantial question here as to the frivolousness of appellants' claims. In light of our disposition we need not decide the issue of whether the claims are frivolous on the merits, which is a determination best left to the Court of Federal Claims in the first instance.

2007-1410
2007-1411                                    8

At the outset, we note that the dissent suggests that a substantial federal question is essential to jurisdiction under Article III, citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998). See Diss. Op. at 2-3. But Steel Co. and other Supreme Court cases recognizing such a requirement involved situations where jurisdiction was founded on the "arising under" language of Article III, U.S. Const. art. III, § 2, cl. 1, which, in turn, is reflected in the "arising under" language of 28 U.S.C. § 1331.[4] There is no such limit on the jurisdiction of the Court of Federal Claims, which does not depend on the "arising under" clause of Article III or section 1331, but rather on a separate clause in Article III that authorizes jurisdiction over all "controversies to which the United States is a party," U.S. Const. art. III, § 2, cl. 1,[5] and on 28 U.S.C. §

---

[4] See Bell v. Hood, 327 U.S. 678, 682-83 (1946) (noting that "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial," but holding that the plaintiff had adequately "show[n] that the matter in controversy arose under the Constitution of the United States") (emphases added); see also Oneida Indian Nation v. Oneida County, New York, 414 U.S. 661, 666-67 (1974) (finding that "the complaint asserted a controversy arising under the Constitution, laws, or treaties of the United States" because its assertion of a federal right "cannot be said to be so insubstantial . . . as not to involve a federal controversy within the jurisdiction of the District Court"); Ex parte Poresky, 290 U.S. 30, 31 (1933) ("In the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented."), quoted in Hagans v. Lavine, 415 U.S. 528, 537 (1974).

Even in this context, the Supreme Court has suggested that the substantial federal question requirement may not, in fact, be compelled. See Rosado v. Wyman, 397 U.S. 397, 404 (1970) (calling "the view that an insubstantial federal question does not confer jurisdiction . . . a maxim more ancient than analytically sound"); Bell, 327 U.S. at 683 ("The accuracy of calling these dismissals jurisdictional has been questioned."); see also Yazoo County Indus. Dev. Corp. v. Suthoff, 454 U.S. 1157 (1982) (Rehnquist, J., dissenting from denial of certiorari) (noting an apparent conflict between the substantiality requirement, when cast as a jurisdictional inquiry, and Fed. R. Civ. P. 12).

[5] Although the Supreme Court in Williams v. United States, 289 U.S. 553 (1933), in finding that the original Court of Claims was not an Article III court, stated that this constitutional grant of jurisdiction applied only when the United States was a

1491(a)(1), which confers jurisdiction on the Court of Federal Claims for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department."[6] We are not aware of any Supreme Court authority that controversies falling under the "founded upon" language of 28 U.S.C. § 1491(a)(1) require a showing of nonfrivolousness. Rather, the jurisdictional requirements of section 1491(a)(1) have evolved differently.

We have explained that, because the Tucker Act itself does not create a substantive cause of action, "in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). The Supreme Court on several occasions has addressed the jurisdictional scope of the Tucker Act, and has clearly defined it. In United States v. Mitchell, 463 U.S. 206 (1983), the Court explained that "[t]he claim must be one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'"

---

plaintiff, in Glidden Co. v. Zdanok, 370 U.S. 530 (1962), Justice Harlan recognized that "only in th[e] sense" that a waiver of sovereign immunity is still required before a suit can be maintained "is Article III's extension of judicial competence over controversies to which the United States is a party ineffective to confer jurisdiction over suits to which it is a defendant." Id. at 563-65 (plurality opinion). Glidden has been interpreted as overruling that aspect of Williams. See Ortiz v. United States, 595 F.2d 65, 69 & n.6 (1st Cir. 1979); see also Richard H. Fallon, Jr., Daniel J. Meltzer & David L. Shapiro, Hart and Wechsler's The Federal Courts and The Federal System 280-81 & n.1 (5th ed. 2003).

[6]    Nearly identical language appears in 28 U.S.C. § 1345(a)(2), which provides concurrent jurisdiction in the district courts for certain money damages suits against the United States.

Id. at 216-17 (internal citation and footnote omitted) (quoting United States v. Testan, 424 U.S. 392, 400 (1976)).

In Mitchell, the Court found that the Court of Federal Claims had jurisdiction because the statutes and regulations at issue "clearly establish[ed] fiduciary obligations of the Government in the management and operation of Indian lands and resources," and therefore concluded that they could "fairly be interpreted as mandating compensation by the Federal Government" for the alleged breach of those fiduciary obligations. 463 U.S. at 226. The Court did not go on to consider whether the plaintiffs had a nonfrivolous claim that such a breach had occurred; rather, it stated that because the plaintiffs had alleged violations of statutes and regulations that could fairly be interpreted as being money-mandating, "[t]he Court of Claims therefore has jurisdiction over [plaintiffs'] claims for alleged breaches of trusts." Id. at 228 (footnote omitted).[7]

In a subsequent case the Court again addressed the standards of jurisdiction under the Tucker Act. In United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003), the Court made clear that "[i]t is enough . . . that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages." Id. at 473. The Court found that a statute requiring the former Fort Apache military post to be held in trust by the United States for the White Mountain Apache Tribe did create such a right. The Court held that "[t]he statutory language . . . expressly defines a fiduciary relationship," and "the fact that the property occupied by

---

[7]     See also United States v. Navajo Nation, 537 U.S. 488, 503 (2003) ("To state a litigable claim, a tribal plaintiff must invoke a rights-creating source of substantive law that 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'") (quoting Mitchell, 463 U.S. at 218).

the United States is expressly subject to a trust supports a fair inference that an obligation to preserve the property improvements was incumbent on the United States as trustee." Id. at 474-75. Having concluded that the plaintiffs alleged a money-mandating source for their claim against the government, the Court determined that the Court of Federal Claims had jurisdiction over that claim. See id. at 479. The Court made clear that the merits of the claim were not pertinent to the jurisdictional inquiry. See id. at 476 n.4.

In Fisher, following White Mountain, the en banc court explicitly overruled our previous approach, set out in Gollehon Farming v. United States, 207 F.3d 1373 (Fed. Cir. 2000). In Gollehon the court held that jurisdiction under the Tucker Act required "a nonfrivolous claim for relief." Id. at 1379. In Fisher we explained that jurisdiction under the Tucker Act exists if the statute, regulation, or constitutional provision that is the basis for the complaint "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained," Mitchell, 463 U.S. at 217, and is "reasonably amenable to the reading that it mandates a right of recovery in damages," White Mountain, 537 U.S. at 473. See Fisher, 402 F.3d at 1173. In Greenlee County, Arizona v. United States, 487 F.3d 871 (Fed. Cir. 2007), we explained that, consistent with the requirement from Mitchell that a source of law be money-mandating "for the damage sustained," 463 U.S. at 217, that source must also be reasonably amenable to the reading that the plaintiff is "within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established." 487 F.3d at 876.[8]

---

[8]    We have previously explained that this requirement is satisfied when a plaintiff makes "a non-frivolous assertion that [plaintiffs] are entitled to relief under the statute." Brodowy v. United States, 482 F.3d 1370, 1375 (Fed. Cir. 2007).

Thus, if the test described in Mitchell and White Mountain is satisfied and the plaintiff has made a nonfrivolous assertion that it is within the class of plaintiffs entitled to recover under the money-mandating source, the Court of Federal Claims has jurisdiction. There is no further jurisdictional requirement that plaintiff make the additional nonfrivolous allegation that it is entitled to relief under the relevant money-mandating source. Rather, as the panel explained in Fisher, "the consequence of a ruling by the court . . . that plaintiff's case does not fit within the scope of the source . . . is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted." 402 F.3d at 1175-76.

This principle was illustrated in In re United States, 463 F.3d 1328 (Fed. Cir. 2006). The plaintiff in that case, a former bankruptcy judge, alleged that his failure to be reappointed was in violation of Judicial Conference regulations, and asserted 28 U.S.C. § 153(a) as the basis for Tucker Act jurisdiction. Id. at 1331. We held that section 153(a) satisfied the money-mandating test of Mitchell and White Mountain. Id. at 1334. Therefore, the Court of Federal Claims had jurisdiction under the Tucker Act even though "it [was] clear from the face of [plaintiff's] complaint that [he] does not come within the reach of section 153(a)." Id. at 1335. Applying our decision in Fisher, we held that the Court of Federal Claims should have dismissed the complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted, rather than under Rule 12(b)(1) for lack of subject matter jurisdiction. Id.; see also Doe v. United States, 463 F.3d 1314, 1325 (Fed. Cir. 2006) (holding that the Court of Federal Claims erred in dismissing for lack of jurisdiction when plaintiffs had identified a money-mandating statute but had not established that they were entitled to relief under that statute).

We reaffirmed this principle as well in <u>Greenlee County</u>. There we affirmed the Court of Federal Claims's dismissal of a Tucker Act claim under Rule 12(b)(6). Although the government argued that the court should have dismissed for lack of jurisdiction, we emphasized:

> [W]hen a claim is brought under the Tucker Act, the Court of Federal Claims must first consider whether the statute or regulation is money-mandating. In doing so, the Court of Federal Claims asks only whether the plaintiff is within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established. If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.
>
> <u>Only after this initial inquiry is completed and the Court of Federal Claims takes jurisdiction over the case does it consider the facts specific to the plaintiff's case to determine "whether on the facts [the plaintiff's] claim f[alls] within the terms of the statutes."</u>

<u>Greenlee County</u>, 487 F.3d at 876 (quoting <u>Fisher</u>, 402 F.3d at 1172) (footnote and internal citations omitted) (emphasis added).  Because the statute at issue was reasonably amenable to a reading that it was money-mandating and the plaintiffs were within the class of plaintiffs entitled to recovery under the statute if a cause of action were established, the Court of Federal Claims properly dismissed the case for failure to state a claim upon which relief may be granted when it determined that plaintiffs could not recover under that statute.  <u>Id.</u> at 880.[9]

---

[9]        The dissent urges that our decision here, and presumably our decisions in <u>In re United States</u> and <u>Greenlee</u>, are inconsistent with <u>Moden v. United States</u>, 404 F.3d 1335 (Fed. Cir. 2005). In light of our en banc decision in <u>Fisher</u>, we decline to read <u>Moden</u>, as the dissent does, as determining that a plaintiff's claim as a whole must be nonfrivolous to establish Tucker Act jurisdiction. Consistent with <u>Fisher</u>, we read <u>Moden</u> as holding that the plaintiff must make a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source of law.

In determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source. There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits. A contrary rule would seriously undermine Congress's decision to vest the Court of Federal Claims with exclusive jurisdiction over claims against the United States seeking money damages exceeding $10,000 and founded on the Constitution or a federal statute. Claims erroneously filed in the district courts could only be transferred to the Court of Federal Claims once the district court had examined the merits to ascertain whether the claim was frivolous or substantial, a task which Congress entrusted exclusively (in the first instance) to a court specially created for that purpose.

II

---

In any event, the court's statements, quoted at page 4 of the dissent, are dicta, and we are not bound by them, because the court did not consider the possibility that under Fisher a nonfrivolous allegation on the merits of the claim was not required. See Brecht v. Abrahamson, 507 U.S. 619, 630-31 (1993) (noting that although the Court had "applied the Chapman standard in a handful of federal habeas cases . . . since [it had] never squarely addressed the issue, and ha[d] at most assumed the applicability of the Chapman standard on habeas, [it was] free to address the issue on the merits"); Nat'l Am. Ins. Co. v. United States, 498 F.3d 1301, 1306 (Fed. Cir. 2007) (stating that when an earlier case had involved a question about a performance bond surety, the court's discussion of a payment bond surety "was unnecessary to the decision," and the Court of Federal Claims correctly treated it as dicta); Boeing N. Am., Inc. v. Roche, 298 F.3d 1274, 1282 (Fed. Cir. 2002) ("Under our established precedent we are not bound by Northrop on the issue of allocability under the CAS standards since the CAS issue was neither argued nor discussed in our opinion."). Indeed, the opinion's failure to consider this issue is not surprising, because the government did not raise it, but simply argued that the plaintiffs' inability to make out a successful inverse condemnation claim on the merits deprived the Court of Federal Claims of jurisdiction.

Appellants' first amended complaints in this case alleged "violations of due process under Amendment V to the United States Constitution and therefore, an illegal taking of [appellants'] property." Americopters J.A. at 10-11; Jan's J.A. at 11. The complaints invoke the Takings Clause of the Fifth Amendment, and both the District Court of Guam and the Ninth Circuit understood appellants to allege takings claims. See Americopters, 441 F.3d at 738 (describing the remaining constitutional claims as "takings claims"); Americopters, LLC v. FAA, No. 03-00005, slip op. at 5 (D. Guam May 11, 2007) ("The Plaintiff is alleging a takings claim."); Jan's Helicopter Serv., Inc. v. FAA, No. 03-00002, slip op. at 5 (D. Guam May 11, 2007) ("The Plaintiff is alleging a takings claim.").[10] It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction. See Moden, 404 F.3d at 1341. Because the Mitchell and White Mountain tests are satisfied, and because appellants, having alleged a taking of their property by the government, are within the class of plaintiffs entitled to recovery if a takings claim is established, the District Court of Guam correctly decided that the Court of Federal Claims had subject matter jurisdiction over appellants' complaints.

Appellants' contentions about the lawfulness or authorization of the government's actions, while relevant to whether appellants' takings claims will be successful on their merits, do not affect the jurisdiction of the Court of Federal Claims to consider those claims. See Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1362 (Fed.

---

[10]     The government argues that the claim for relief should be construed as seeking compensation under the Due Process Clause, rather than the Takings Clause, and that the Due Process Clause is not money-mandating in these circumstances. We need not address this argument because, like the district court, we construe the complaint as asserting a takings claim, despite its infelicitous reference to due process.

Cir. 1998) (analyzing arguments about the authorization of the government actions as an issue of whether plaintiff had stated a taking claim on which relief could be granted, not as an issue of subject matter jurisdiction). Because appellants' complaints contain nonfrivolous allegations that they fall within a protected class under the Fifth Amendment, the Court of Federal Claims has jurisdiction to consider those complaints under the Tucker Act.

III

As explained above, the District Court of Guam plainly lacked jurisdiction over appellants' takings claims. Because appellants are asserting claims against the government based on a money-mandating provision of the Constitution and seeking money damages in excess of $10,000, the Court of Federal Claims has exclusive jurisdiction over those claims. Therefore the District Court of Guam properly transferred the claims to that court under 28 U.S.C. § 1631. We leave it for the Court of Federal Claims in the first instance to address whether appellants have stated regulatory takings claims on which relief may be granted.

## CONCLUSION

For the foregoing reasons, the decision of the District Court of Guam is affirmed.

### AFFIRMED

### COSTS

No costs.

Case 1:03-cv-00005     Document 81     Filed 04/22/2008     Page 19 of 25

# United States Court of Appeals for the Federal Circuit

2007-1410

JAN'S HELICOPTER SERVICE, INC.,

Plaintiff-Appellant,

v.

FEDERAL AVIATION ADMINISTRATION,

Defendant-Appellee.

-------------------------------------------------

2007-1411

AMERICOPTERS, LLC,

Plaintiff-Appellant,

v.

FEDERAL AVIATION ADMINISTRATION,

Defendant-Appellee.

Appeals from the United States District Court for the District of Guam in case nos. 03-CV-00002 and 03-CV-00005, Chief Judge Frances M. Tydingco-Gatewood.

PROST, Circuit Judge, dissenting-in-part.

I join Part III of the majority opinion and concur in the result affirming the transfer from the United States District Court for the District of Guam to the United States Court of Federal Claims. I do not join Parts I and II of the majority opinion, however, because they foreclose dismissal of frivolous claims for lack of jurisdiction if the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation

that it is within the class of plaintiffs entitled to recover under the money-mandating source.[1]

First, resolution of this nonfrivolous question is not required in the present case. The government does not argue that the plaintiffs' takings claims are frivolous or that they should not be transferred to the Court of Federal Claims, as long as the claims are not construed as due process claims.[2] See Oral Arg. at 31:36-50, 33:13-54, available at http://www.cafc.uscourts.gov/oralarguments/mp3/2007-1410.mp3. Additionally, while the parties were questioned about Fisher v. United States at oral argument, this issue was not briefed or raised by either party, nor was it raised before or considered by the district court. 402 F.3d 1167 (Fed. Cir. 2005).

Second, the majority has not satisfactorily explained why the determination of Tucker Act jurisdiction in the Court of Federal Claims differs from that of general federal question jurisdiction under 28 U.S.C. § 1331 relating to the dismissal of frivolous claims for lack of jurisdiction. The Supreme Court has indicated that a district court may lack jurisdiction if a "claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (quoting Bell v. Hood,

---

[1] See Majority Op. at 15 ("In determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source. There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits.").

[2] As explained by the majority, the plaintiffs' claims in the present case are properly construed as takings claims, not due process claims. See Majority Op. at 16 n.10.

327 U.S. 678, 682-83 (1946)). As the Court has explained, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Id. (quoting Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974)); see also Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005) (same). The majority has certainly not shown why, under the Tucker Act, we should foreclose the dismissal of claims for lack of jurisdiction that are so frivolous or insubstantial as to not involve a federal controversy.

Third, as the majority opinion correctly notes, "[i]n Fisher, following White Mountain, the en banc court explicitly overruled our previous approach, set out in Gollehon Farming v. United States, 207 F.3d 1373 (Fed. Cir. 2000)." Majority Op. at 12. Contrary to the suggestion by the majority, however, I do not read Fisher as having resolved the issue of whether a nonfrivolous claim for relief is required for Tucker Act jurisdiction. See id. Rather, I read Fisher as overruling the two step approach, set out in Gollehon, for addressing the issue of whether a source is money-mandating. See Fisher, 402 F.3d at 1172-73. As we explained in Moden, "Fisher addressed how the Court of Federal Claims should determine whether the 'Constitutional provision, statute, or regulation is one that is money-mandating.'" 404 F.3d at 1341. In the present case, as in Moden, however, "the parties do not dispute that the Takings Clause of the Fifth Amendment is money-mandating." Id. Thus, the Fisher issue of the proper approach to determining whether a source is money-mandating is not present here.

Finally, for the Court of Federal Claims to have jurisdiction, the majority would only require a determination that: (1) "the claim is founded upon a money-mandating source," and (2) "the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." Majority Op. at 15. Beyond these two requirements, it concludes that "[t]here is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits." Id. This analysis appears in my view to be inconsistent with the court's decision in Moden. 404 F.3d at 1335. In Moden, decided one month after Fisher, this court provided:

> Here the parties do not dispute that the Takings Clause of the Fifth Amendment is money-mandating. Thus, to the extent the Modens have a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper.
> The government neither argues that the Modens' claim is frivolous nor argues that it is so insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy. And while at oral argument the United States repeatedly refused to concede that jurisdiction is proper in this case, it clearly is.
> . . . In short, we have jurisdiction to address the merits of this case, as did the Court of Federal Claims, because the Modens' claim is neither frivolous nor so insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy.

Id. at 1341-42.

The majority attempts to disregard Moden by (1) "read[ing] Moden as holding that the plaintiff must make a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source of law," and (2) claiming that the relevant statements in Moden "are dicta, and we are not bound by them, because the court did not consider the possibility that under Fisher a nonfrivolous allegation on the

merits of the claim was not required."³ Majority Op. at 15 n.9. First, I simply disagree with the majority's reading of Moden. It does not confine the nonfrivolous claim requirement to a "class of plaintiffs" analysis. Second, contrary to the suggestion by the majority, the Moden court expressly addresses Fisher in the portion of the opinion discussing the nonfrivolous claim requirement for jurisdiction. The Moden court determined that jurisdiction was proper because a nonfrivolous claim was asserted, noting that the Fisher court's jurisdictional discussion addresses another issue (i.e., how to determine whether a source is money-mandating). Moden, 404 F.3d at 1341.

In sum, based on this record, I would not foreclose dismissal for lack of jurisdiction of claims that point to a money-mandating source but are frivolous or "so insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy." Id. Therefore, I respectfully dissent-in-part.

---

³        In support of its claim that the Moden court did not consider whether Fisher changed the nonfrivolous claim requirement, the majority states that "the opinion's failure to consider this issue is not surprising, because the government did not raise it." Majority at 15 n.9. Even if the majority is correct in its claim that the government did not raise this issue in Moden, we note that the same circumstance exists in the present case where neither party raised this issue.

2007-1410, 2007-1411                5

*Questions and Answers*

**Petitions for Panel Rehearing (Fed. Cir. R. 40)**
**and**
**Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

*Q. When is a petition for panel rehearing appropriate?*

A. Petitions for panel rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for panel rehearing is not appropriate. A petition for panel rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant/petitioner has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for panel rehearing to be appropriate. Counsel seeking panel rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

*Q. When is a petition for rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merits panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a petition for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow decisions of the Supreme Court of the United States or Federal Circuit precedential opinions, or that the

merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for panel rehearing granted by merits panels or petitions for rehearing en banc granted by the court?*

A. The data regarding petitions for panel rehearing since 1982 shows that merits panels granted some relief in only three percent of the petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions have been granted less frequently. Historically, the court has initiated en banc review in a few of the appeals decided en banc since 1982.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals.